UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TYSHON EDWARDS,<br><br>*Plaintiff*,<br><br>v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. PK1021618, LLOYD'S SYNDICATE 2987,<br><br>*Defendant*. | Civil A. No. _____ |

## **COMPLAINT**

**I.   Introduction**

1. In 2020, Plaintiff Tyshon Edwards filed an action in this Court against the City of Trenton, among others, captioned *Tyshon Edwards v. City of Trenton, et al.*, 20-cv-13552 (the "Civil Rights Action").

2. That action was eventually resolved via a Settlement Agreement and final Consent Judgment that was approved and entered by the Honorable Douglas E. Arpert, United States Magistrate Judge, pursuant to which Edwards received an assignment of certain rights that the City of Trenton had under an insurance policy, PK1021618 (the "Policy") issued by Certain Underwriters at Lloyd's London Subscribing to PK1021618, Lloyd's Syndicate 2897 ("Underwriters").

3. Underwriters have purported to initiate a non-administered arbitration proceeding (i.e., outside of an administrating agency such as the American Arbitration Association or Judicial Arbitration and Mediation Services, Inc.) against Edwards.

4. Edwards brings this declaratory judgment action to determine certain threshold issues of arbitrability that are reserved for the courts and are not subject to being compelled to any arbitration. Specifically, Underwriters seek to arbitrate that Edwards is not a valid assignee of Trenton's rights under the Policy. In other words, Underwriters purport to invoke a contract against Edwards to hail him into an arbitration while simultaneously asking the arbitrators to find that Edwards is *not* a party to that contract, which would mean the arbitrators have no jurisdiction over him. Underwriters' position presents threshold issues of arbitrability that must, under settled precedent, be decided by this Court.

5. Therefore, Edwards requests that this Court declare that (1) the issue of whether the assignment of interest under the Policy to Edwards is valid and binding upon Underwriters is a threshold question of arbitrability for the Court; and (2) the assignment of interest under the Policy to Edwards in fact is valid and binding upon Underwriters.

## II. The Parties

6. Edwards is a citizen of New Jersey.

7.  Underwriters are an unincorporated association of individuals and/or entities that subscribe to Policy No. PK1021618, Lloyd's Syndicate 2987, which policy was issued to the City of Trenton.

8.  Plaintiff admittedly does not know the identities and citizenships of all individuals and entities whose citizenship is attributable to Underwriters. However, Plaintiff has no reason to believe that any are citizens of New Jersey. Underwriters have previously represented that the sole *corporate* member of Syndicate 2987 is Brit UW Ltd. and that Brit UW Ltd. is based in London, England and is a citizen of the United Kingdom. Plaintiff is not aware of Underwriters having ever alleged that any non-corporate or corporate member of their membership is a citizen of New Jersey.

### III. Jurisdiction and Venue

9.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. The Court has personal jurisdiction over Underwriters because the Policy at issue in this dispute was issued by Underwriters to the City of Trenton, a municipality in New Jersey, the claims in this action relate to this Policy, and exercising jurisdiction comports with notions of air play and substantial justice, as the Underwriters maintain continuous and systematic activities in New Jersey.

11. Venue is proper in this district because a substantial part of the events giving rise to the claims in this Complaint occurred in this district and Underwriters are subject to jurisdiction in this District. 28 U.S.C. § 1391(b)(2)–(3).

## IV. Factual Background

12. In 2020, Edwards filed the Civil Rights Action in this Court.

13. In the Civil Rights Action, Edwards asserted various claims alleging that his civil rights were violated when he was arrested on January 21, 2019, and subsequently jailed for a total of 212 days without a lawful basis. All charges against Plaintiff in connection with that arrest were later dismissed.

14. The Civil Rights Action was vigorously litigated, with the parties to the case engaging in extensive written discovery and depositions of certain parties including Plaintiff, and subpoenas to non-parties.

15. The parties in the Civil Rights Action participated in numerous settlement conferences conducted by Judge Arpert.

16. Underwriters' counsel from the firm Bates Carey, LLP participated in one in-person settlement conference with the parties and Judge Arpert.

17. Underwriters denied coverage to Trenton regarding the Civil Rights Action, in addition to issuing a reservation of rights, under the Policy, attached hereto as Exhibit 4.

18. Counsel for Trenton and counsel for Edwards made several attempts to obtain Underwriters' contributions toward any resolution of the Civil Rights Action.

19. Underwriters did not contribute toward any resolution of the Civil Rights Action.

20. In consultation with the Court during settlement conferences, the parties explored the possibility of resolving this action through a *Griggs* settlement, *see Griggs v. Bertram*, 443 A.2d 163 (N.J. 1982), whereby Trenton would consent to entry of judgment of a sum certain, assign to Plaintiff all relevant interests it has against Underwriters, and Plaintiff would covenant to not execute upon the Consent Judgment against Trenton above a certain portion of that sum.

21. On December 5, 2023, Trenton informed Underwriters of its intention to settle the Civil Rights Action in a manner that would involve liability to Underwriters under the Policy and for Underwriters' bad faith denial of coverage, and further encouraged counsel for Underwriters to contact counsel for Plaintiff directly. Underwriters still did not participate in a settlement of the Litigation.

22. On January 26, 2024, Trenton and Edwards executed a Settlement Agreement and proposed consent judgment, and Edwards filed a Notice of Unopposed Motion for Approval of Settlement Agreement and Entry of Consent Judgment ("Motion for Approval"). *See* Dkt. 62. The Motion was supported by declarations of John S. Stapleton, counsel for Edwards, and J. Brooks DiDonato,

who led the negotiations for Trenton. *See* Dkt. 62-2 & 62-3. Edwards also served the Motion for Approval upon counsel for Underwriters.

23. By its plain terms, the Settlement Agreement between Edwards and the Trenton was only effective if the Court approved it and the corresponding Consent Judgment. *See, e.g.*, Ex. 3, Settlement Agreement, Dkt. 62-1, ¶¶ 2, 4.

24. Paragraph 4 of the Settlement Agreement specifically states:

> **Assignment of Rights.** To the fullest extent possible under the law, Trenton shall assign to Edwards all of Trenton's rights and claims under the Policy in any manner related to coverage for the Litigation and satisfaction of the Consent Judgment, including but not limited to claims regarding breach of contract and bad faith for, among other things, denying coverage under the Policy, refusing to settle, and refusing to indemnify Trenton ("Assignment"). Edwards shall have sole discretion regarding the prosecution, litigation, and resolution of all such assigned rights and claims; however, Trenton agrees to cooperate in good faith with Edwards regarding any such prosecution and litigation of the same. This Assignment shall not be effective unless and until the Consent Judgment is entered by the Court, but upon such entry of the Consent Judgment, the Assignment shall become immediately effective without need of any further event.

25. Following the Motion for Approval, Underwriters suddenly engaged in the Civil Rights Action and took several voluntary actions before this Court.

26. Among other actions, Underwriters (1) filed an Entry of Appearance of Brian Leinhauser (Dkt. 66), (2) filed a motion to intervene in the Civil Rights Action and supporting brief (Dkt. 67–68), (3) filed a motion for admission pro hac vice of Adrian T. Rohrer of Bates Carey, LLP (Dkt. 69), which was granted, (4) participated

6

in a telephonic conference with the Court on February 20, 2024, (5) filed a reply brief in support of their motion to intervene (Dkt. 72), and (6) filed an opposition to Plaintiff's Motion for Approval of Settlement and Entry of Consent Judgment (Dkt. 76), which was filed without permission and out-of-time but still considered by the Court.

27. In their papers, Underwriters filed the Policy of record with the Court (Dkt. 76-1) and made several arguments asking the Court to interpret the Policy.

28. All parties opposed Underwriters' Motion to Intervene, citing well-established law that where an insurer contests coverage potentially owed to an insured (whether by reservation of rights or otherwise), the insurer's interest in the liability phase of a case is too contingent and remote to support intervention. *E.g.*, Dkt. 71 at 3–8. As Underwriters contested coverage (and still do), they had no right to intervene in the Civil Rights Action.

29. On February 28, 2024, Judge Arpert heard oral argument on the Motion for Approval and Underwriter's Motion to Intervene. Counsel from two different law firms appeared for Underwriters. During oral argument, Judge Arpert permitted counsel for Underwriters to argue at length against the Motion for Approval.

30. On February 29, 2024, Judge Arpert issued a memorandum order granting the Motion for Approval and denying Underwriter's Motion to Intervene

(the "Approval Order"). Ex. 1, Approval Order, Dkt. 78. The Court also entered the Consent Judgment of $5,000,000.00. Ex. 2, Consent Judgment, Dkt. 79.

31.    The Court expressly found the amount of the Consent Judgment "falls easily within [the] realm" of "comparator" cases and was "reasonable and consistent with other similar cases in this State." Ex. 1, Approval Order at 7.

32.    The Court also observed "[f]urther, the Court has no reason to believe, nor is there any evidence that, the parties acted with ill intentions despite Underwriters' suggestions to the contrary." *Id.*

33.    The Court also noted "the timeliness of Underwriters' Motion is suspect" and "that Underwriters had a representative present during settlement discussions in this case and that Underwriters' representative remained completely disinterested in engaging with the Court or the parties in resolving this matter." *Id.* at 6 n.6.

34.    By its terms, the assignment from Trenton to Edwards became effective upon the Court's entry of the Consent Judgment. *See* Ex. 3, Settlement Agreement ¶ 4.

35.    On March 26, 2024, Edwards, as assignee of certain of Trenton's rights, made a written request to Underwriters for indemnification of Trenton's Ultimate Net Loss under the Policy.

36. Edwards' counsel addressed the written request to Mr. Leinhauser, as he understood that was Underwriters' preference for further correspondence regarding the matter.

37. Underwriters never responded to that request for indemnification.

38. Instead, Underwriters' other law firm purported to initiate a non-administered arbitration against Edwards and emailed a copy of the demand to Edwards' counsel on April 16, 2024.

39. The second page of the Policy and the first page of the Certificate Provisions states:

> **4. Service of Suit.** It is agreed that in the event of the failure of Underwriters to pay any amount claimed to be due hereunder, Underwriters, at the request of the Assured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon the firm or person named in item 1 of the attached Declarations, and that in any suit instituted against any one of them upon this Certificate, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.
>
> The Correspondent is authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon request of the Assured to give a written undertaking to the

> Assured that they will enter a general appearance on behalf of Underwriters in the event such a suit shall be instituted.
>
> Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this Certificate, and hereby designate the above-mentioned as the person to whom the said officer is authorized to mail such process or a true copy thereof.

Ex. 4, Policy at 2, ¶ 4.

    40.    Elsewhere, on page 14 of the Policy, it states:

> **Arbitration:** In the event the **ASSURED** and Underwriters are unable to agree as to the amount recoverable by the **ASSURED** from Underwriters under the terms and conditions of this Policy, each party shall name a competent and disinterested arbitrator, and the two so chosen shall, before proceeding further, appoint a competent and disinterested umpire. The arbitrators together shall calculate the indemnity due, and failing to agree, shall submit their differences to the umpire.
>
> The award in writing, duly verified by any two, shall determine the points in question. Both parties shall pay the cost of their arbitrators and equally pro rate the cost of the umpire. The **ASSURED'S** portion of such fee does not accrue to the **ULTIMATE NET LOSS**.
>
> The decision by the arbitrators shall be binding on Underwriters and the **ASSURED,** and that judgment may be entered in any court of competent jurisdiction.

Ex. 4, Policy at 14, ¶ 2.

41. Underwriters assert many arguments in their Arbitration Demand. Among others, Underwriters seek "declaratory relief" that Edwards is not a proper assignee of Trenton's rights under the Policy because Underwriters did not consent to the assignment. *See* Arbitration Demand ¶ 83(b) (seeking declaration that Trenton "improperly assigned its claim for coverage under the Policy to Edwards, in violation of the Policy's terms and conditions regarding assignment."); *id.* ¶ 45 ("The settlement included an assignment by the City to Edwards all causes of action the City believed it had against Underwriters with respect to coverage for the Underlying Lawsuit under the Policy. Again, Underwriters did not consent to the assignment, and were not asked to consent to the assignment."); *id.* ¶ 49 ("Underwriters were also not asked to consent to the City assigning any rights to Plaintiff under the Policy, as required for any assignment to bind Underwriters under Paragraph 3 of the General Policy Conditions to the Policy."); *id.* ¶ 6 (alleging that Trenton "improperly assign[ed] its claim for coverage under the Policy to Edwards, in violation of the Policy's terms and conditions regarding assignment.").

42. In seeking the declaration, Underwriters rely upon page 14, paragraph 3 of the Policy, which states, "**Assignment:** Assignment of interest under this Policy does not bind Underwriters' unless Underwriters consent is endorsed hereon." ("Assignment Consent Clause").

43. Edwards disputes that Underwriters' consent was required for the assignment from Trenton to Edwards to be effective and binding upon Underwriters. Rather, under settled law, an insurance policy may be validly assigned, even if the policy has a "no assignment" clause, when the policy is assigned after the loss has occurred. *Givaudan Fragrances Corp. v. Aetna Cas. & Sur. Co.*, 227 N.J. 322, 345–46, 151 A.3d 576, 590–91 (2017) ("An anti-assignment clause is not a barrier to the post-loss assignment of a claim.").

44. Here, the assignment to Edwards plainly did not take effect until after entry of the Consent Judgment and Trenton incurred an Ultimate Net Loss under the Policy. *See* Ex. 3, Settlement Agreement ¶ 4 ("This Assignment shall not be effective unless and until the Consent Judgment is entered by the Court."). Accordingly, the Assignment Consent Clause is no barrier to Trenton's assignment to Edwards under paragraph 4 of the Settlement Agreement and the assignment of interests under the Policy is binding upon Underwriters.

45. Edwards also disputes that the determination of the validity of the assignment is subject to arbitration.

46. Threshold issues of arbitrability are decided by judges, not arbitrators. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("[T]he question of arbitrability . . . is undeniably an issue for judicial determination."); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964) ("The duty to arbitrate

12

being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the [contract] does in fact create such a duty. Thus, . . . [a party] cannot be compelled to arbitrate if an arbitration clause does not bind it at all."). That is so, unless "the parties clearly and unmistakably provide otherwise" by delegating issues of arbitrability to the arbitrator. *AT&T Techs.*, 475 U.S. at 649; *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 107 (3d Cir. 2000) ("[A]llow[ing] the arbitrators to determine their own jurisdiction . . . is not permitted in the federal jurisprudence of arbitration, for the question whether a dispute is to be arbitrated belongs to the courts unless the parties agree otherwise.").

47. Here, whether the contract was validly assigned to Edwards, presents a gateway or threshold question of arbitrability, because if there was no valid assignment, Edwards is not bound by the arbitration clause and in effect there would be no contractual agreement between him and Underwriters to arbitrate issues arising under the Policy. *See Sandvik AB*, 220 F.3d at 111 (finding that court, not arbitrators, had to determine whether the contract was binding on the relevant party). In other words, if Underwriters prevail on this argument at arbitration, the arbitrators would be declaring that they had no jurisdiction to hear the dispute in the first instance as there was no binding contract—including an arbitration clause—between Edwards and Underwriters. *Id.* (recognizing that compelling arbitration where arbitrators may decide no valid contract existed between the parties would allow

arbitrators to determine their own jurisdiction, which is not permitted unless the parties clearly agree otherwise).

48. As the Policy's arbitration clause does not plainly, let alone clearly and unmistakably, delegate issues of arbitrability or the specific issue of assignment validity to an arbitrator, it is a question for the Court to determine.

## Count I
## Declaratory Judgment

49. Edwards incorporates all prior paragraphs of this Complaint.

50. Edwards is entitled to a declaration that the issue of whether the assignment of interest under the Policy to Edwards is valid and binding upon Underwriters is a threshold question of arbitrability for the Court.

51. **WHEREFORE**, Edwards demands judgment against Underwriters, and respectfully requests that the Court:

   a. Declare that the issue of whether the assignment of interest under the Policy to Edwards is valid and binding upon Underwriters is a threshold question of arbitrability for the Court;

   b. Award attorneys' fees and costs in the maximum amount allowable under N.J. Ct. R. 4:42-9(a)(6) and other applicable law; and

   c. Afford such other relief as the Court deems just and proper.

## Count II
## Declaratory Judgment

52. Edwards incorporates all prior paragraphs of this Complaint.

53. Edwards is entitled to a declaration that the assignment of interest under the Policy to Edwards in fact is valid and binding upon Underwriters.

**WHEREFORE**, Edwards demands judgment against Underwriters, and respectfully requests that the Court:

a. Declare the assignment of interest under the Policy to Edwards in fact is valid and binding upon Underwriters;

b. Award attorneys' fees and costs in the maximum amount allowable under N.J. Ct. R. 4:42-9(a)(6) and other applicable law; and

c. Afford such other relief as the Court deems just and proper.

May 10, 2024

**LeVAN STAPLETON SEGAL COCHRAN LLC**

By: /s/ *John S. Stapleton*
    John S. Stapleton, ID 032622005
    Jonathan L. Cochran, ID 028142012
    Kali J. Schellenberg, ID 432262023
Four Greentree Centre
601 Route 73 N, Suite 303
Marlton, NJ 08053
856.259.3300
jstapleton@levanstapleton.com
jcochran@levanstapleton.com
kschellenberg@levanstapleton.com

**NASH PEREZ LLC**

By: /s/ *Jeffrey L. Nash*
    Jeffrey L. Nash
330 Market Street

Camden, NJ 08102
856.246.1022
jnash@nashperez.com

*Attorneys for Plaintiff Tyshon Edwards*