# **EXHIBIT 3**

# SETTLEMENT AGREEMENT

This Settlement Agreement ("**Agreement**") is effective as of the date of January 26, 2024 (the "**Effective Date**"), and is made by and between Tyshon Edwards ("**Edwards**") on the one hand and the City of Trenton, New Jersey ("**Trenton**"), on the other hand. Edwards and Trenton may be referred to herein individually as a "**Party**," and collectively, as the "**Parties**".

## BACKGROUND

**WHEREAS**, on or about September 29, 2020, Edwards filed a lawsuit against the Trenton and certain individuals of the City of Trenton Police Department, captioned *Edwards v. City of Trenton, et al.*, 3:20-cv-13552 (United States District Court, District of New Jersey) ("Litigation");

**WHEREAS**, Certain Underwriters at Lloyd's of London ("Underwriters") subscribe to Policy No. PK1021618 (the "Policy"), issued to the City of Trenton, NJ (the "City"), and Trenton sought coverage under the Policy regarding the Litigation;

**WHEREAS**, Underwriters denied coverage to Trenton regarding the Litigation;

**WHEREAS**, the Policy's limit of liability for the Law Enforcement Liability Coverage Section (Section VIII) is $3,000,000.00 each Occurrence and $6,000,000.00 Annual Aggregate of Liability, subject to a $500,000.00 Self Insured Retention (all capitalized terms having the same meaning as those used in the Policy);

**WHEREAS**, in addition to denying coverage under the Policy, Underwriters have contended that Underwriters' liability under the Policy would be further subject to a $500,000.00 corridor deductible pursuant to Endorsement No. 6 to the Policy ("Corridor Deductible"), but Trenton contends that such Corridor Deductible is inapplicable, unenforceable, and/or has been misconstrued by Underwriters;

**WHEREAS**, notwithstanding the denial of coverage by Underwriters, Trenton sought Underwriters' participation in a settlement of the Litigation;

**WHEREAS,** the United States District Court for the District of New Jersey ("Court") ordered Underwriters' counsel's appearance at a settlement conference on May 31, 2023, but such conference was continued to July 18, 2023, at the request of Underwriters' counsel;

**WHEREAS**, Underwriters' counsel appeared on July 18, 2023, at the Court's settlement conference, but such settlement conference was unsuccessful in resolving the Litigation;

**WHEREAS**, on August 17, 2023, Edwards submitted a time-limited demand to Underwriters and offered to settle the Litigation within the limits of the Policy, which demand expired on its own terms on August 24, 2023, at 12 p.m. (eastern), after Underwriters did not respond;

Case 3:24-cv-06529-ZNQ-DEA   Document 62-4   Filed 05/26/24   Page 2 of 18 PageID 231

**WHEREAS**, Underwriters' counsel claimed on or about September 22, 2023, that he did not receive a copy of the August 17, 2023, time-limited demand letter, and Edwards thereafter renewed the time-limited demand on September 22, 2023, with terms set to expire on September 28, 2023, at 5 p.m. (eastern) if not accepted;

**WHEREAS**, Underwriters acknowledged receipt of the time-limited demand letter, but never responded to the demand, and the demand expired on its own terms on September 28, 2023, at 5 p.m. (eastern);

**WHEREAS**, by written letter dated December 5, 2023, Trenton informed Underwriters of its intention to settle the Litigation in a manner that would exhaust the Self Insured Retention and will involve liability to Underwriters under the Policy and for Underwriters' bad faith denial of coverage;

**WHEREAS**, Underwriters has not participated in a settlement of the Litigation;

**WHEREAS**, the Parties vigorously litigated the Litigation, including all claims and defenses asserted therein;

**WHEREAS**, Trenton and Edwards have agreed to settle the Litigation pursuant to the terms and conditions of this Agreement; and

**WHEREAS**, the Parties voluntarily and willingly enter into this Agreement.

**NOW, THEREFORE,** in consideration of the mutual covenants and promises contained herein, the Parties intending to be legally bound hereby agree as follows:

1. **Background.** The Background and all Recitals are incorporated by reference as if fully set forth herein.

2. **Consent Judgment.** Subject to approval of the Court for reasonableness and good faith under *Griggs v. Bertram* 443 A.2d 163 (N.J. 1982), the Parties shall enter a stipulated consent judgment in the form attached as Exhibit A. Should the Court determine that the Consent Judgment is unreasonable or lacking in good faith, this Agreement and the proposed Consent Judgment shall be null and void and shall not be admissible in any proceeding.

3. **Covenant of Limited Execution and Payment.** Edwards covenants to not execute upon the Consent Judgment directly against Trenton beyond $500,000.00, which sum equals the Self Insured Retention under the Policy, and Trenton agrees to pay to Edwards that sum of $500,000.00 within 30 days of the entry of the Consent Judgment, which shall be paid to the attorney trust account of LeVan Stapleton Segal Cochran LLC.

4. **Assignment of Rights.** To the fullest extent possible under the law, Trenton shall assign to Edwards all of Trenton's rights and claims under the Policy in any manner related to coverage for the Litigation and satisfaction of the Consent Judgment, including but not limited to claims regarding breach of contract and bad faith for, among other things, denying coverage under the Policy, refusing to settle, and refusing to indemnify Trenton ("Assignment"). Edwards shall

have sole discretion regarding the prosecution, litigation, and resolution of all such assigned rights and claims; however, Trenton agrees to cooperate in good faith with Edwards regarding any such prosecution and litigation of the same. This Assignment shall not be effective unless and until the Consent Judgment is entered by the Court, but upon such entry of the Consent Judgment, the Assignment shall become immediately effective without need of any further event.

       5.     **Corridor Deductible.** To the extent any court of a competent jurisdiction in a binding order finds the Corridor Deductible applicable and enforceable regarding Underwriters' liability to satisfy the Consent Judgment, the Corridor Deductible shall be deemed to have the Consent Judgment shall be deemed to have been partially satisfied by the Corridor Deductible and any liability Underwriters have to satisfy the Consent Judgment shall be reduced by the amount of the Corridor Deductible. In other words, in the event of such a finding of the enforceability of the Corridor Deductible, of the $5,000,000.00 Consent Judgment, $500,000.00 will have been satisfied by Trenton's payment to Edwards under section 3 above, $500,000.00 will have been satisfied by virtue of the finding of the enforceability of the Corridor Deductible under the terms of this section, and the Underwriters' liability to satisfy the Consent Judgment shall be reduced to $4,000,000.00 prior to any costs or fees associated with the prosecution of any such claims against Underwriters.

       6.     **Trenton's Defense Costs.** Trenton represents that it has incurred and paid reasonable Defense Costs, as that term is defined by the Policy, that should have eroded the Self Insured Retention of the Policy. If Edwards prevails in obtaining any recovery from Underwriters based on the Assignment, Edwards will reimburse to Trenton such Defense Costs to the extent Underwriters has not and does not reimburse Trenton for such Defense Costs, but only if:

> (i) through a final, non-appealable order, Edwards prevails in the argument that Underwriters must reimburse the Defense Costs to Trenton under Coverage Section VIII Law Enforcement Liability – Exclusion B of the Policy and Edwards actually recovers such Defense Costs from Underwriters;

> (ii) through a final, non-appealable order, Edwards prevails in the argument that the Corridor Deductible is not applicable or enforceable, and Edwards recovers amounts from Underwriters sufficient to reimburse Trenton for such Defense Costs; or

> (iii) Edwards reaches a monetary settlement with Underwriters regarding any assigned claims, in which event Edwards shall pay to Trenton 10% of the actual recovery from the settlement up to the sum of Trenton's Defense Costs.

In no event shall Trenton recover collectively from Underwriters and Edwards more than the total of the Defense Costs, and in no event shall the net total of Trenton's out-of-pocket expenses related to this matter be less than the $500,000.00 Self Insured Retention of the Policy. In other words, Trenton's payment to Edwards under section 3 above, plus its actually paid Defense Costs, minus any reimbursement received from Underwriters or Edwards for such Defense Costs or through the recovery set forth in this section, shall never be less than $500,000.00. It is the intention of this

section and the Agreement that Trenton will at all times fully satisfy and exhaust the Self Insured Retention.

   7. **Representations and Warranties.** Each of the Parties represents that, other than as set forth in this Agreement, he/it has not assigned to any person or entity not a party to this Agreement any of the claims, rights, or obligations that are the subject of this Agreement.

   8. **Advice of Counsel.** Each Party hereby represents that he/it has read this Agreement, has had the provisions fully explained by legal counsel, and is freely and voluntarily signing this Agreement upon advice furnished by such Party's legal counsel.

   9. **Binding Effect.** The terms of this Agreement are intended to be, and shall be, binding upon and inure to the benefit of the Parties hereto and their respective heirs, personal representatives, successors, assigns, attorneys, officers, directors, shareholders, agents, employees, insurers, and all other persons, parties or entities affiliated with or identified in interest with the said Parties.

   10. **Choice of Law/Interpretation of Agreement/Venue.** This Agreement shall be construed and enforced in accordance with the laws of the State of New Jersey, without regard to New Jersey's choice of law rules. This Agreement has been drafted by mutual agreement after negotiation with the participation of all Parties. The Parties agree, therefore, that no Party shall be deemed to have drafted this Agreement or any portion thereof, and that any ambiguity in the Agreement will not be construed against any Party on the basis that such Party drafted the subject language. Edwards and Trenton hereby consent to personal jurisdiction of the state and federal courts in the State of New Jersey for purposes of enforcing this Agreement, and waive any objections to personal jurisdiction or venue in those courts.

   11. **Notices.** All communications between the Parties that are required or contemplated by this Agreement shall be made in writing via email to the following persons:

   (i) As to Edwards:

   John S. Stapleton
   LeVan Stapleton Segal Cochran LLC
   Four Greentree Centre
   601 Route 73 N, Suite 303
   Marlton, NJ 08053
   Email:  jstapleton@levanstapleton.com

   (ii) As to Trenton:

   J. Brooks DiDonato
   Parker McCay P.A.
   9000 Midlantic Drive, Suite 300

Mount Laurel, NJ 08054
Email: bdidonato@parkermccay.com

12. **Entire Agreement.** This Agreement sets forth the entire understanding between the Parties relating to the subject matter contained herein, there being no terms, conditions, warranties, or representations other than those contained in this Agreement. This Agreement fully supersedes any and all prior drafts, proposals, negotiations, agreements, or understandings between the Parties relating to the subject matter contained herein, and the Parties expressly agree that none of the foregoing shall be utilized in any manner in the construction or interpretation of this Agreement or any portion thereof in the event of a dispute arising hereunder. Any modifications of this Agreement, Schedules, or Exhibits, or any of their provisions, must be in writing and signed by the Parties affected thereby.

13. **Counterparts.** This instrument may be executed in counterparts, and any number of duplicate originals, all of which shall constitute one and the same instrument. The executed instrument may be delivered by facsimile or electronic mail. Counterparts and duplicate originals shall be deemed original instruments, and signatures contained on documents delivered by facsimile or electronic mail shall be deemed original signatures.

14. **Authority.** Each person executing this Agreement on behalf of each respective Party expressly warrants and represents that he/she is duly authorized to do so in a manner that is fully binding upon such Party.

\* \* \*

REST OF PAGE INTENTIONALLY LEFT BLANK

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year set forth below.

**Tyshon Edwards**

_____  Date: 1/26/2024

**City of Trenton**

By: _____  Date: _____

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year set forth below.

**Tyshon Edwards**

_____        Date: _____

**City of Trenton**

By: *[signature]*        Date: 1/26/24
A. Wesley Bridges
Law Director, City of Trenton