## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TYSHON EDWARDS, | |
| *Plaintiff*, | Civil A. No. 3:24-cv-06029-ZNQ-JBD |
| v. | |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. PK1021618, LLOYD'S SYNDICATE 2987, | **ORAL ARGUMENT REQUESTED** |
| *Defendant*. | |

### Plaintiff Tyshon Edwards' Memorandum in Opposition to
### Defendant's Motion to Compel Arbitration

John S. Stapleton, ID 032622005
Jonathan L. Cochran, ID 028142012
**LeVAN STAPLETON SEGAL COCHRAN LLC**
Four Greentree Centre
601 Route 73 N, Suite 303
Marlton, NJ 08053
856.259.3300
jstapleton@levanstapleton.com
jcochran@levanstapleton.com

Jeffrey L. Nash
**NASH PEREZ LLC**
330 Market Street
Camden, NJ 08102
856.246.1022
jnash@nashperez.com

*Attorneys for Plaintiff Tyshon Edwards*

**Table of Contents**

I.      Introduction ............................................................................................................. 1

II.     Background ............................................................................................................. 2

        A.      Edwards Files a Civil Rights Action Against Trenton, and After Extensive
                Litigation, the Parties Seek this Court's Approval of a "Griggs Settlement." ........ 2

        B.      After Denying Coverage and Refusing to Contribute Toward Any Settlement,
                Lloyd's Suddenly Tries to Intervene .................................................................. 5

        C.      This Court Rejects Lloyd's Arguments and Finds that Plaintiff and Trenton's
                Settlement Was Reasonable and in Good Faith. .................................................... 6

        D.      Lloyd's Then Purports to Commence an Arbitration Against Edwards While
                Contending that Lloyd's is Not Bound By An Assignment. ................................. 7

        E.      The Arbitration Clause of the Policy. .................................................................. 8

        F.      Edwards Files A Narrow Complaint Posing Questions of Arbitrability for this
                Court to Decide. .................................................................................................. 8

III.    Argument ............................................................................................................... 9

        A.      Lloyd's Motion Relies on an Arbitration Clause that is Not in Any Contract
                Relevant to this Dispute. ................................................................................... 12

        B.      Lloyd's Motion Impermissibly Seeks the "Sweet" Without the "Bitter" By
                Trying to Force Arbitration Pursuant To An Agreement It Denies Exists. .......... 12

        C.      Edwards' Complaint is Not Within the Scope of the Arbitration Clause of the
                Policy. ............................................................................................................... 19

IV.     Conclusion ........................................................................................................... 23

# Table of Authorities

Page(s)

## Cases

*Acad. of Sacred Heart of New Orleans v. Certain Underwriters at Lloyd's London*,
  651 F. Supp. 3d 822 (E.D. La. 2023) ........................................................ 21

*Int'l Bhd. of Elec. Workers, AFL-CIO, Loc. 1 v. GKN Aerospace N. Am., Inc.*,
  431 F.3d 624 (8th Cir. 2005) ................................................................... 23

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986) ................................. 9, 18

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1, (2006) .................... 16, 18, 19

*Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513 (3d Cir. 2009) .............. 11

*Certain Underwriters at Lloyd's of London v. Celebrity, Inc.*, 950 S.W.2d 375
  (Tex. App. 1996), *writ dismissed w.o.j.*, 988 S.W.2d 731 (Tex. 1998) ................................. 21

*Consol Pennsylvania Coal Co., LLC v. Mahalaxmi Cont'l Ltd.*, No. 23-1383,
  2024 WL 510518 (3d Cir. Feb. 9, 2024) ............................................................... 10, 17

*Field Intelligence Inc. v. Xylem Dewatering Sols. Inc.*, 49 F.4th 351 (3d Cir. 2022) ........... 14, 17

*Givaudan Fragrances Corp. v. Aetna Cas. & Sur. Co.*, 151 A.3d 576 (N.J. 2017) ................ 8, 13

*Jaludi v. Citigroup*, 933 F.3d 246 (3d Cir. 2019) .................................................. 10, 11

*John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964) ........................................ 9

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156 (3d Cir. 2009) ........................ 11

*Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508 (5th Cir. 2019) ........................... 22

*Malin v. Osprey Underwriting Agency Ltd.*, 595 F. Supp. 3d 861 (D. Alaska 2022) .................. 21

*McLane Co., Inc. v. Certain Underwriters at Lloyd's, London*, 2022 WL 16824523
  (W.D. Okla. Nov. 8, 2022) ........................................................................... 21

*Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44 (3d Cir. 2001) .......... 15

*Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001 (3d Cir. 1980) ...................... 22

*Morgan v. Sundance*, 596 U.S. 411 (2022) ........................................................... 11

*MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386
  (3d Cir. 2020) ................................................................................... 10, 14

*Neff v. Portfolio Recovery Assocs., LLC.*, 2021 WL 4958690 (W.D. Pa. Oct. 26, 2021) ...... 18, 19

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) ..................... 16, 17, 18, 19

*Rite Aid of Pennsylvania, Inc. v. United Food & Com. Workers Union, Loc. 1776*,
  595 F.3d 128 (3d Cir. 2010) ......................................................................... 22

*Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 107 (3d Cir. 2000) .................... 9, 13, 15, 16, 17

*Zirpoli v. Midland Funding, LLC*, 48 F.4th 136 (3d Cir. 2022) ..................................... 18

**Statutes**

9 U.S.C. § 4 .................................................................................................. 12, 16, 19

**Appendix of Exhibits**

**Exh.**     **Title**

1.     Docket, *Edwards v. Trenton*, Civ. A. 3:20-CV-13552-ZNQ-DEA

2.     9/20/2020 Complaint (Civil Rights Dkt. 1)
- Civil Cover Sheet (Civil Rights Dkt. 1-1)
- Incident Report (Civil Rights Dkt. 1-2)
- Complaint/Warrant (Civil Rights Dkt. 1-3)
- Motor Vehicle Summons (Civil Rights Dkt. 1-4)

3.     1/26/2024, Plaintiff's Unopposed Motion for Approval of Settlement Agreement and Entry of Consent Judgment (Civil Rights Dkt. 62)
- Settlement Agreement (Civil Rights Dkt. 62-1)
- Proposed Consent Judgment (Civil Rights Dkt. 62-1)
- Declaration of John S. Stapleton (Civil Rights Dkt. 62-2)
- Declaration of J. Brooks DiDonato (Civil Rights Dkt. 62-3)

4.     2/9/2024 Lloyd's Motion to Intervene and Memorandum (Civil Rights Dkts. 67–68)
- 1/13/2023 Koury letter to Claims Resolution / Jose Abo (Civil Rights Dkt. 68-3)

5.     2/16/2024 Officers' Opposition to Motion to Intervene (Civil Rights Dkt. 70)
- Attorney Certification of J. Brooks DiDonato in Support of Opposition to Motion to Intervene on Behalf of Defendants (Civil Rights Dkt. 70-1)
- A- 9/30/2020 Koury letter to Candace Jorden Claims Resolution
- B- 4/18/2023 Koury email to Brooks DiDonato cc Kyle Mitchell
- C- 1/13/2023 Koury letters to Jose Abo, Claims Resolution
- D- 8/23- 8/24/2023 Emails Koury/DiDonato
- E- 1/9/2024 DiDonato email to Koury cc Marc Board
- F- 12/5/2023 DiDonato letter to Koury

6.     2/16/2024 Plaintiff's Brief in Opposition to Motion to Intervene by Lloyd's (Civil Rights Dkt. 71)

7.     2/19/2024 Lloyd's Reply in Support of Motion to Intervene (Civil Rights Dkt. 72)

8.     2/23/2024 Trenton Opposition to Motion to Intervene (Civil Rights Dkt. 75)

9.     2/26/2024 Lloyd's Response to Plaintiff's Motion for Approval of Settlement and Entry of Consent Judgment (Civil Rights Dkt. 76)
- A- Policy (Civil Rights Dkt. 76-1)
  *(Exhibits B-C, Civil Rights Dkt. 76-2 – 76-3 omitted as duplicative of other documents in record)*
- D- Koury Declaration (Civil Rights Dkt. 76-4)

iv

- o 1- 2/16/2023 DiDonato email to Koury cc W. Bridges, J. Abo, R. Williams, C. Simmons, M. Board, E. Frink, L. Shaw
- o 2- 7/17/2023 DiDonato email to Koury cc Wesley Bridges
  *(Exhibit D-3 of Civil Rights Dkt. 76-4 omitted as duplicative of other documents in record)*
  - o E- 4/7/2020 news article: *Hamilton Township settles wrongful arrest lawsuit for almost $1 million* (Civil Rights Dkt. 76-5)

10.    2/27/2024 Officers' Reply in Support of Motion for Approval (Civil Rights Dkt. 77)

11.    2/29/2024 Memorandum Order (Civil Rights Dkt. 78)

12.    2/29/2024 Consent Judgment (Civil Rights Dkt. 79)

Plaintiff Tyshon Edwards respectfully submits this memorandum in opposition to the Motion to Compel Arbitration filed by Certain Underwriters at Lloyd's London Subscribing to PK1021618, Lloyd's Syndicate 2897 ("Underwriters" or "Lloyd's").

## I.    Introduction

This is a narrow declaratory judgment action. Plaintiff Tyshon Edwards seeks two declarations (i) a declaration that this Court, not arbitration, is the proper forum in which to determine the question of whether an assignment between he and the City of Trenton ("Assignment") is binding upon Lloyd's, and (ii) a declaration that the Assignment is in fact binding upon Lloyd's.

Underlying this action is Lloyd's effort to force Edwards to contractual arbitration just so Lloyd's can seek a determination from a panel of arbitrators that Lloyd's has never been bound by any contract to Edwards.

Pursuant to a settlement agreement and consent judgment approved by this Court (over Lloyd's objections), Edwards took the Assignment from Trenton. Lloyd's argues that it is not bound by the assignment, relying upon a so-called "anti-assignment clause" in policy PK1021618 ("Policy") it issued to Trenton. Lloyd's position is wrong under unequivocal New Jersey law that anti-assignment clauses do not prevent such assignments of claims. But rather than follow this clear and binding law and move on to the remainder of Lloyd's kitchen-sink of rationales as to why it never did and never will pay anything under the Policy it issued to Trenton, Lloyd's remains adamant on the threshold issue that it is not bound by the Assignment.

Lloyd's position has consequences. Most fundamentally, if true, it means Lloyd's and Edwards are not bound by contract to each other. And despite its litany of other coverage denials, Lloyd's is not entitled to force contractual arbitration when it refuses to acknowledge at the

1

threshold that it is bound by contract to the very party it seeks to haul into arbitration. Indeed, the Third Circuit has rejected similar efforts by litigants to compel arbitration while simultaneously denying mutual assent to a contract as an impermissible effort to have the "sweet" without the "bitter."

Under settled precedent, Edwards' Complaint presents threshold issues of arbitrability to be decided by this Court. Edwards respectfully submits that Lloyd's Motion to Compel Arbitration should be denied. The parties have already commenced, and should continue with, discovery. And this action should ultimately proceed to summary judgment or trial for a determination that Lloyd's is bound by the Assignment.

## II.    Background

### A.    Edwards Files a Civil Rights Action Against Trenton, and After Extensive Litigation, the Parties Seek this Court's Approval of a "Griggs Settlement."

In 2020, Plaintiff Tyshon Edwards filed an action in this Court against the City of Trenton, among others, captioned *Tyshon Edwards v. City of Trenton, et al.*, 20-cv-13552 (the "Civil Rights Action"). *See* Ex. 1 (Civil Rights Docket); Ex. 2 (Civil Rights Complaint). That action eventually was resolved via a Settlement Agreement and final Consent Judgment that was approved and entered by the Honorable Douglas E. Arpert, United States Magistrate Judge, pursuant to which Edwards received an assignment of certain rights that the City of Trenton had regarding the Policy. *See* Ex. 12 (Consent Judgment); Ex. 3 at Dkt. 62-1 (Settlement Agreement).

In the Civil Rights Action, Edwards asserted various claims alleging that his civil rights were violated when he was arrested and jailed for a total of 212 days in 2019 without a lawful basis. *See* Ex. 2 (Civil Rights Complaint). All charges arising from that arrest were later dismissed.

The Civil Rights Action was vigorously litigated, with the parties to the case engaging in extensive written discovery and depositions of certain parties including Plaintiff, and subpoenas to non-parties. Judge Arpert conducted numerous settlement conferences. *See* Ex. 1 (Docket); Ex. 3 (Mot. for Approval) at 2. Lloyd's counsel participated in one in-person settlement conference with the parties and Judge Arpert. *See* Ex. 3 at Dkt. 62-3 (DiDonato Decl.) ¶ 10; Ex. 11 (Memorandum Order) at 6, n.6.

Lloyd's denied coverage to Trenton regarding the Civil Rights Action, in addition to issuing a reservation of rights, under the Policy. *See* Ex. 3 at 62-3 (DiDonato Decl.) at ¶ 8.[1]

Counsel for Trenton and counsel for Edwards made several attempts to obtain Lloyd's contributions toward any resolution of the Civil Rights Action. Lloyd's Motion to Compel Arbitration and its attached exhibits make several arguments that Lloyd's was supposedly blindsided by settlement of the action. *E.g.*, Lloyd's Mem. at 3. Trenton vociferously refuted Lloyd's claims, detailing for the Court both that Trenton kept Lloyd's informed of all material events in the matter and that Lloyd's always refused to contribute a single cent to settlement. *See* Ex. 5 (Officers' Opp'n to Mot. to Intervene) at 2–5; Ex. 8 (Trenton's Joinder in Officers' Opp'n);

---

[1]    Lloyd's argued that its statement to Trenton "Underwriters do not believe coverage exists for this matter," *See* Ex. 5 (Officer's Opp'n to Mot. to Intervene) at 2-3; *id.* at Dkt. 70-1 (4/18/23 Koury email to DiDonato) at 21 of 38, was not the same as actually denying coverage. *See* Ex. 7 (Lloyd's Reply in Supp. of Mot. to Intervene) at 2. Regardless, there was no dispute that Underwriters did not provide coverage and that it issued a reservation of rights letter, thus implicating "the well-established policy that an insurer who reserves the right to deny coverage cannot control the defense of a lawsuit brought against its insured by an injured party." *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 639 (1st Cir. 1989) (citing *Cay Divers, Inc. v. Raven*, 812 F.2d 866, 870 (3d Cir. 1987) (holding that Lloyd's decision to "reserve[e] the right to contest coverage . . . renounced control of the litigation and thereby thrust the responsibility for the litigation wholly upon the insured and its counsel")).

*see also* Ex. 6 (Plaintiff's Opp'n to Mot. to Intervene) at 11; Ex. 11 (Memorandum Order) at 6, n.6. Lloyd's ultimately did not contribute toward any resolution of the Civil Rights Action.

In consultation with the Court during settlement conferences, the parties explored the possibility of resolving that action through a *Griggs* settlement, *see Griggs v. Bertram*, 443 A.2d 163 (N.J. 1982), whereby Trenton would consent to entry of judgment of a sum certain, assign to Plaintiff all relevant interests it has against Lloyd's, and Plaintiff would covenant to not execute upon the Consent Judgment against Trenton above a certain portion of that sum.

On at least December 5, 2023, Trenton informed Lloyd's of its intention to settle the Civil Rights Action in a manner that would involve liability to Lloyd's under the Policy and for Lloyd's bad faith denial of coverage, and further encouraged counsel for Lloyd's to contact counsel for Plaintiff directly. *See* Ex. 3 at Dkt. 62-3 (DiDonato Decl.) at ¶ 14. Lloyd's still did not participate in a settlement of the Litigation.

Then, over seven weeks later, on January 26, 2024, Trenton and Edwards executed a Settlement Agreement and proposed consent judgment, and Edwards filed a Notice of Unopposed Motion for Approval of Settlement Agreement and Entry of Consent Judgment ("Motion for Approval"). *See* Ex. 3. The Motion was supported by declarations of John S. Stapleton, counsel for Edwards, and J. Brooks DiDonato, who led the negotiations for Trenton. *See* Ex. 3 at Dkt. 62-2 & 62-3. Edwards also served the Motion for Approval upon counsel for Lloyd's. *See* Ex. 3 at Dkt. 62-4 (Cert. of Service).

By its plain terms, the Settlement Agreement between Edwards and the Trenton was only effective if the Court approved it and the corresponding Consent Judgment. *See, e.g.*, Ex. 3 at Dkt. 62-1 (Settlement Agreement) at ¶¶ 2, 4.

Paragraph 4 of the Settlement Agreement specifically states:

**Assignment of Rights.** To the fullest extent possible under the law, Trenton shall assign to Edwards all of Trenton's rights and claims under the Policy in any manner related to coverage for the Litigation and satisfaction of the Consent Judgment, including but not limited to claims regarding breach of contract and bad faith for, among other things, denying coverage under the Policy, refusing to settle, and refusing to indemnify Trenton ("Assignment"). Edwards shall have sole discretion regarding the prosecution, litigation, and resolution of all such assigned rights and claims; however, Trenton agrees to cooperate in good faith with Edwards regarding any such prosecution and litigation of the same. This Assignment shall not be effective unless and until the Consent Judgment is entered by the Court, but upon such entry of the Consent Judgment, the Assignment shall become immediately effective without need of any further event.

Ex. 3 at Dkt. 62-1 (Settlement Agreement) at ¶ 4.

**B.    After Denying Coverage and Refusing to Contribute Toward Any Settlement, Lloyd's Suddenly Tries to Intervene.**

Following the Motion for Approval, Lloyd's suddenly sought to engage in the Civil Rights Action and took several voluntary actions before this Court. Among other actions, Lloyd's (1) filed an Entry of Appearance of Brian Leinhauser (Civil Rights, Dkt. 66), (2) filed a motion to intervene in the Civil Rights Action and supporting brief, *see* Ex. 4, (3) filed a motion for admission pro hac vice of Adrian T. Rohrer of Bates Carey, LLP (Civil Rights Dkt. 69), which was granted, (4) participated in a telephonic conference with the Court on February 20, 2024, (5) filed a reply brief in support of their motion to intervene, *see* Ex. 7, and (6) filed an opposition to Plaintiff's Motion for Approval of Settlement and Entry of Consent Judgment, *see* Ex. 9, which was filed without permission and out-of-time but still considered by the Court. Lloyd's also filed the Policy of record with the Court, *see* Ex. 9 at 76-1 (Policy), and made several arguments asking the Court to interpret the Policy. *See generally* Ex. 9; *see also id.* at 76-1 (Policy).

All parties to the litigation opposed Lloyd's Motion to Intervene, citing, inter alia, well-established law that where an insurer contests coverage potentially owed to an insured (whether by reservation of rights or otherwise), the insurer's interest in the liability phase of a case is too

contingent and remote to support intervention. *E.g.*, Ex. 6 (Plaintiff's Opp'n to Mot. to Intervene) at 3–8. As Lloyd's contested coverage (and still does), it had no right to intervene in the Civil Rights Action.

### C. This Court Rejects Lloyd's Arguments and Finds that Plaintiff and Trenton's Settlement Was Reasonable and in Good Faith.

On February 28, 2024, Judge Arpert heard oral argument on the Motion for Approval and Lloyd's Motion to Intervene. Counsel from two different law firms appeared for Lloyd's. During oral argument, Judge Arpert permitted counsel for Lloyd's to argue at length against the Motion for Approval.

On February 29, 2024, Judge Arpert issued a Memorandum Order granting the Motion for Approval and denying Underwriter's Motion to Intervene (the "Approval Order"). Ex. 11,. The Court also entered the Consent Judgment of $5,000,000.00. Ex. 12.

Judge Arpert expressly found the amount of the Consent Judgment "falls easily within [the] realm" of "comparator" cases and was "reasonable and consistent with other similar cases in this State." Ex. 11 (Approval Order) at 7. The Court also observed "[f]urther, the Court has no reason to believe, nor is there any evidence that, the parties acted with ill intentions despite Underwriters' suggestions to the contrary." *Id.* The Court also noted "the timeliness of Underwriters' Motion is suspect" and "that Underwriters had a representative present during settlement discussions in this case and that Underwriters' representative remained completely disinterested in engaging with the Court or the parties in resolving this matter." *Id.* at 6 n.6.

By its terms, the Assignment from Trenton to Edwards became effective upon the Court's entry of the Consent Judgment. *See* Ex. 3 at Dkt. 62-1 (Settlement Agreement) ¶ 4.

**D.**    **Lloyd's Then Purports to Commence an Arbitration Against Edwards While Contending that Lloyd's is Not Bound By An Assignment.**

On March 26, 2024, Edwards, as assignee of certain of Trenton's rights, made a written request to Lloyd's for indemnification of Trenton's Ultimate Net Loss under the Policy. Lloyd's never responded to that request for indemnification. Instead, Lloyd's purported to initiate a non-administered arbitration against Edwards and emailed a copy of the demand to Edwards' counsel on April 16, 2024.

In its Demand, Lloyd's asks the arbitrators to award "declaratory relief" that Edwards is not a proper assignee of Trenton's rights under the Policy because Lloyd's did not consent to the assignment. *See* Dkt. 10-4 (Arbitration Demand) ¶ 83(B) (seeking declaration that Trenton "improperly assigned its claim for coverage under the Policy to Edwards, in violation of the Policy's terms and conditions regarding assignment."); *id.* ¶ 45 ("The settlement included an assignment by the City to Edwards all causes of action the City believed it had against Underwriters with respect to coverage for the Underlying Lawsuit under the Policy. Again, Underwriters did not consent to the assignment, and were not asked to consent to the assignment."); *id.* ¶ 49 ("Underwriters were also not asked to consent to the City assigning any rights to Plaintiff under the Policy, as required for any assignment to bind Underwriters under Paragraph 3 of the General Policy Conditions to the Policy."); *id.* ¶ 6 (alleging that Trenton "improperly assign[ed] its claim for coverage under the Policy to Edwards, in violation of the Policy's terms and conditions regarding assignment.").

In seeking the declaration, Lloyd's relies upon page 14, paragraph 3 of the Policy, which states, "**Assignment:** Assignment of interest under this Policy does not bind Underwriters' unless Underwriters consent is endorsed hereon." ("Assignment Consent Clause").

### E.    The Arbitration Clause of the Policy.

Lloyd's present Motion quotes an arbitration clause upon which it moves to compel the claims in Edwards' Complaint to arbitration. Lloyd's Mem. at 2, 6–7, 8–9 (citing purported arbitration clause). However, the clause that Lloyd's quotes is not contained in the Policy.

Instead, on page 14 of the Policy, it states:

> **Arbitration:** In the event the **ASSURED** and Underwriters are unable to agree as to the amount recoverable by the **ASSURED** from Underwriters under the terms and conditions of this Policy, each party shall name a competent and disinterested arbitrator, and the two so chosen shall, before proceeding further, appoint a competent and disinterested umpire. The arbitrators together shall calculate the indemnity due, and failing to agree, shall submit their differences to the umpire.
>
> The award in writing, duly verified by any two, shall determine the points in question. Both parties shall pay the cost of their arbitrators and equally pro rate the cost of the umpire. The **ASSURED'S** portion of such fee does not accrue to the **ULTIMATE NET LOSS**.
>
> The decision by the arbitrators shall be binding on Underwriters and the **ASSURED,** and that judgment may be entered in any court of competent jurisdiction.

Dkt. 1-5 (Policy) at 14, ¶ 2.

### F.    Edwards Files A Narrow Complaint Posing Questions of Arbitrability for this Court to Decide.

Under settled New Jersey law, interests in an insurance policy may be validly assigned after a loss has occurred even if the policy has a "no assignment" or "consent to assignment" clause and the carrier does not consent. *Givaudan Fragrances Corp. v. Aetna Cas. & Sur. Co.*, 151 A.3d 576, 590 (N.J. 2017) ("An anti-assignment clause is not a barrier to the post-loss assignment of a claim.").

Here, the assignment to Edwards plainly did not take effect until after entry of the Consent Judgment and Trenton incurred an Ultimate Net Loss under the Policy. *See* Ex. 3 at Dkt. 62-1

(Settlement Agreement) ¶ 4 ("This Assignment shall not be effective unless and until the Consent Judgment is entered by the Court."). Accordingly, the Assignment Consent Clause is no barrier to Trenton's assignment to Edwards under paragraph 4 of the Settlement Agreement, and the Assignment is binding upon Lloyd's.

However, more immediately, Lloyd's position puts at issue a fundamental question as to whether there is a valid and binding contract between Lloyd's and Edwards. Thus, Edwards filed this narrow action seeking declarations that (i) the question of whether the Assignment "to Edwards is valid and binding upon Underwriters is a threshold question of arbitrability for the Court;" Dkt. 1 at ¶ 50, and (ii) the Assignment "to Edwards in fact is valid and binding upon Underwriters," *id.* at ¶ 53.

Lloyd's thereafter moved to compel arbitration and stay these proceedings. *See* Dkt. 10.

Parallel to litigating this motion, the parties have conferred pursuant to Federal Rule of Civil Procedure 26(f) and exchanged certain discovery requests. Discovery is ongoing.

## III.    Argument

Standard issues of arbitrability must be decided by judges, not arbitrators unless "the parties clearly and unmistakably provide otherwise" by delegating issues of arbitrability to the arbitrator. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("[T]he question of arbitrability . . . is undeniably an issue for judicial determination."); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964) ("The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the [contract] does in fact create such a duty. Thus, . . . [a party] cannot be compelled to arbitrate if an arbitration clause does not bind it at all."); *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 107 (3d Cir. 2000) ("[A]llow[ing] the arbitrators to determine their own jurisdiction . . . is not permitted in

the federal jurisprudence of arbitration, for the question whether a dispute is to be arbitrated belongs to the courts unless the parties agree otherwise."). To "clearly and unmistakably provide otherwise," contracting parties "can agree that arbitrators, not courts, shall resolve arbitrability issues by including in the contract a so-called 'delegation provision' conferring upon the arbitrators the 'exclusive authority' to decide those gateway matters." *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 399 (3d Cir. 2020).[2]

When ruling on a motion to compel arbitration, a district court applies the motion to dismiss standard if "it is apparent, based on the face of the complaint, and documents relied upon in the complaint that certain of a party's claims are subject to an enforceable arbitration clause." *Consol Pennsylvania Coal Co., LLC v. Mahalaxmi Cont'l Ltd.*, No. 23-1383, 2024 WL 510518, at *4 (3d Cir. Feb. 9, 2024) (quoting *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 767 (3d Cir. 2013)). However,

> if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Id.* (alteration in original).

A party moving to compel arbitration must satisfy "a two-step process: in the first step, the court determines whether 'there is an agreement to arbitrate,' and then in the second step, the court decides whether 'the dispute at issue falls within the scope of that agreement.'" *Jaludi v. Citigroup*,

---

[2]    Here, there is no delegation clause delegating issues of arbitrability to arbitrators; nor does Lloyd's argue one exists. Accordingly, questions of arbitrability are for this Court, and not any arbitration. *Id.*

933 F.3d 246, 254 (3d Cir. 2019) (citations omitted). Lloyd's must satisfy *both* elements to obtain an order compelling Edwards' claims to arbitration. It can satisfy neither.

In a unanimous decision, the United States Supreme Court recently clarified that "the [Federal Arbitration Act]'s 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules. . . . The policy is to make 'arbitration agreements as enforceable as other contracts, but not more so. . . . But a court may not devise novel rules to favor arbitration over litigation. . . . The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance*, 596 U.S. 411, 418 (2022). Further, the Third Circuit has long made clear than any presumption in favor of arbitration does not apply when the question is whether the parties agreed to arbitrate. *E.g., Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) ("[T]his presumption in favor of arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.") (cleaned up); *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 526–527 (3d Cir. 2009).

***

As set forth in more detail below, the Court can and should deny Lloyd's Motion for any of three independent reasons. First, Lloyd's Motion is based on an arbitration clause that is not in any contract relevant to this dispute. *Infra*, § III.A. Second, Lloyd's Motion impermissibly attempts to compel Edwards to contractual arbitration while denying it has ever been bound by contract with Edwards. *Infra*, § III.B. Finally, the claims in Edwards' Complaint do not fall within the scope of the arbitration clause of the Policy. *Infra*, § III.C.

**A.    Lloyd's Motion Relies on an Arbitration Clause that is Not in Any Contract Relevant to this Dispute.**

On three occasions, Lloyd's Motion quotes the arbitration clause upon which it moves to compel the claims in Edwards' Complaint to arbitration. Lloyd's Mem. at 2, 6–7, 8–9 (citing purported arbitration clause). However, the clause that Lloyd's quotes is not contained in the Policy or any other contract relevant to this case, and Lloyd's never explains its relevance. For that reason alone, the Court may deny Lloyd's Motion.

**B.    Lloyd's Motion Impermissibly Seeks the "Sweet" Without the "Bitter" By Trying to Force Arbitration Pursuant To An Agreement It Denies Exists.**

Even when excusing Lloyd's reliance upon an arbitration clause not at issue in this action, Lloyd's Motion still fails. As an initial matter, the Complaint does not seek to resolve all disputes between Edwards and Lloyd's. Rather it seeks simple declaratory relief from this Court that the Assignment is valid and binding upon Lloyd's. *See* Dkt. 1 ¶¶ 51, 53. Lloyd's disputes that the Assignment is valid and binding upon it. As Lloyd's describes its own Demand, "Underwriters assert in the Arbitration Demand that Underwriters were not asked to consent to the City assigning any rights to Edwards under the Policy, as required for any assignment *to actually bind* Underwriters . . . ." Lloyd's Mem. at 10 (emphasis added); *see also* Dkt. 10-3, Rohrer Decl. ¶ 5 ("Underwriters was also not asked to consent to the City assigning any rights to Plaintiff under the Policy, as required for any assignment to bind Underwriters . . . ."). However, rather than this Court determining the threshold question of whether the Assignment "actually bind[s]" Lloyd's, Lloyd's argues that the question may only be answered in arbitration. Lloyd's is wrong for several reasons.

Under section 4 of the FAA, the Court must be "satisfied that the making of the agreement for arbitration . . . is not in issue." 9 U.S.C. § 4. That is an impossible conclusion to reach under

12

Lloyd's argument. While Lloyd's argues Edwards is bound by contract to Lloyd's, Lloyd's simultaneously argues that it has never been bound by any contract to Edwards because it never assented to the Assignment.[3] But any privity between them would exist only through the Assignment as there is no other independent contract that one can point to between Lloyd's and Edwards. And if that Assignment did never "actually bind" Lloyd's as Lloyd's argues, *see* Lloyd's Mem. at 10, Lloyd's and Edwards never mutually agreed upon anything, including whether to arbitrate any differences between them. Thus, to establish the first required factor of the test—an agreement to arbitrate—Lloyd's must first be bound by the Assignment. Lloyd's contradictory demand that it is not bound by the Assignment is fatal to its Motion.

In *Sandvik*, the Third Circuit has expressly rejected eat-cake-and-have-it-too efforts by parties to compel arbitration pursuant to arbitration clauses in contracts that they say are not actually binding on them. *See* 220 F.3d at 108. Rather, before compelling an action to contractual arbitration, the District Court must decide "the question whether the arbitration agreement is valid when the party asserting the right to arbitrate denies the broader agreement." *Id.* at 107.

There, like here, Advent sought to compel arbitration and argued the Court should bypass the threshold issue of whether Advent was bound by the overall contract because its adversary,

---

[3]    To be clear, it is Lloyd's choice to argue that it is not bound by the Assignment and that it never assented to the Assignment. But it must do so in Court, not arbitration. The parties have commenced discovery, which should be allowed to continue, and Edwards looks forward to demonstrating at summary judgment or trial that the Assignment is in fact binding upon Lloyd's. Indeed, New Jersey law is clear that the Assignment is valid and binding. *Givaudan*, 151 A.3d at 590–91 (analyzing similar anti-assignment clause and holding "[a]n anti-assignment clause is not a barrier to the post-loss assignment of a claim."); *id.* at 586 n.6 (noting that "claim assignment can serve a 'salutary purpose'" and "[t]ransferring the claim against the insurer to a party more willing and able to prosecute the action prevents insurance companies from avoiding honoring claims of less affluent or able policy holders"). But that is not the question for this stage as the Court must only determine *who* should eventually decide that issue—the Court or arbitrators.

Sandvik, sought to enforce that contract. *Id.* at 104. Thus, according to Advent, Sandvik should have been bound to Advent by the arbitration clause within the very contract that Advent argued was not binding. *Id.* But the Third Circuit saw through this paradoxical litigation position and rejected the effort to "concede a consequence of Sandvik's fundamental position in the controversy without accepting the bitter with the sweet." *Id.* at 108–09. Judge Becker explained that "[f]or there to be a binding contract [for purposes of Section 4 of the FAA], it is not enough that Advent and Sandvik each agree at independent points in time that arbitration would occur; there must be a contract to do. It is not enough to ask that the District Court 'assume' that such an agreement exists; the language of the FAA affirmatively requires the court to be 'satisfied' that the arbitration agreement's existence is not at issue." *Id.* at 109; *see also MZM Constr. Co., Inc.*, 974 F.3d at 401 ("Indeed, it can hardly be said that contracting parties clearly and unmistakably agreed to have an arbitrator decide the existence of an arbitration agreement when one of the parties has put the existence of that very agreement in dispute.").

Similarly, in *Field Intelligence Inc. v. Xylem Dewatering Sols. Inc.*, the Third Circuit reinforced that when "the parties' mutual assent [is] directly at issue," the issue is for the court, not an arbitrator, to decide. 49 F.4th 351, 357 (3d Cir. 2022). *Field Intelligence* concerned two contracts between the same two parties: a first contract with a broad arbitration clause and a broad delegation clause and a second contract with no arbitration clause. *Id.* at 354, 356. The parties disputed whether the second contract superseded the first and rendered the arbitration clause no longer enforceable. *Id.* at 356. Judge Ambro explained that, even in the face of the broad arbitration clause with a broad delegation of arbitrability clause (neither of which are present in the Policy at issue here), it was for the Court—not an arbitrator—to decide if the second contract superseded the first before referring a case to arbitration. *Id.* at 357–59. This is because "[t]he Federal

Arbitration Act requires courts to compel arbitration only when 'satisfied that the making of the agreement for arbitration . . . is not in issue,' [and courts]—rather than arbitrators—must 'decide questions about the formation or existence of an arbitration agreement, namely the element of mutual assent.'" *Id.* at 357 (citations omitted).

Here, Lloyd's paradoxically argues that it is not bound by the Assignment because it did not assent to it while also relying upon that Assignment to supposedly bind Edwards to Lloyd's. Similarly, Lloyd's vehemently argues that this Court has no business addressing whether the Assignment is binding *upon Lloyd's* yet begins its Memorandum by asking the Court to address the validity of the Assignment *as to Edwards*. *See* Lloyd's Mem. at 6 (arguing the effect of the Assignment on Edwards).[4] Lloyd's cannot have the "sweet" without the "bitter." *Sandvik*, 220 F.3d at 108. If Lloyd's wants to maintain the position that it is not bound by the Assignment, it must litigate that threshold issue in this Court because only if Lloyd's actually is bound by the

---

[4]    Despite citing *Medtronic*, Lloyd's Mem. at 6, Lloyd's ignores *Medtronic*'s teaching that "'[A]n assignment is intended to change only who performs an obligation, not the obligation to be performed.' 'An assignee obtains only the right, title and interest of his assignor at the time of his assignment, and no more.'" *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 60 (3d Cir. 2001) (citations omitted). Lloyd's position on the merits in this action is at odds with this law. Lloyd's argument is that the Assignment changed more than "who performs an obligation"; according to Lloyd's, it directly affected the "obligation to be performed" because any rights against Lloyd's that Trenton sought to assign to Edwards immediately prior to the Assignment somehow are not the same rights Edwards received via the Assignment. According to Lloyd's logic, Trenton gave up all of its rights and Edwards acquired none because Trenton's act of assigning its rights vitiated those rights after they started to leave Trenton's hands but before they landed in Edwards'. Conveniently for Lloyd's, it is the only entity or person to actually benefit from the Assignment—all liabilities it would have to anybody (Trenton or Edwards) are cured and Lloyd's can even compel Edwards to an arbitration via the Assignment while somehow maintaining that it is no way bound by that Assignment. This is not how assignments work, and Edwards will demonstrate at summary judgment or at trial that the Assignment is binding on Lloyd's.

Assignment may the Court possibly be "satisfied that the making of the agreement for arbitration . . . is not in issue," 9 U.S.C. § 4, and that "mutual assent" exists between Lloyd's and Edwards.[5]

Lloyd's reliance upon the *Prima Paint* severability doctrine and its progeny is misplaced. The *Prima Paint* severability doctrine holds that, where the parties formed a contract and a dispute between them raises issues of arbitrability that are otherwise delegated to arbitration in the clause of the contract, a party's effort to rescind the overall contract will not avoid arbitration unless the challenge is also to the arbitration clause itself. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400, 406 (1967); *Sandvik*, 220 F.3d at 100–101. That doctrine and the cases relied upon by Lloyd's do not apply here for at least three reasons.

First, the dispute presented by Edwards' Complaint is one of contract formation (including of the arbitration clause itself) and whether a binding agreement has ever existed between Lloyd's and Edwards. *Prima Paint* and its progeny make clear that issues of contract formation remain for the Court to decide. For example, *Buckeye Check Cashing, Inc. v. Cardegna*, relied upon by Lloyd's, expressly states that it does not disturb *Sandvik*:

> The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses only the former, and does not speak to the issue decided in . . . cases . . . which hold that it is for courts to decide whether the alleged obligor ever signed the contract, *Chastain v. Robinson–Humphrey Co.*, 957 F.2d 851 (C.A.11 1992), whether the signor lacked authority to commit the alleged principal, *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99 (C.A.3 2000); *Sphere Drake Ins. Ltd. v. All American Ins. Co.*,

---

[5]    Because the legal status of the arbitration clause is unresolved, Advent's desire to arbitrate, separate from the contract, appears as a desire, floating in the legal ether untethered by either reciprocal promises or other sufficient consideration. Only a ruling on the effect of Huep's signature can ground Advent's wishes in the firmament. Otherwise, Advent's desire to go to arbitration is little more than an offer to resolve the underlying dispute in a forum other than the District Court.

*Sandvik*, 220 F.3d at 109.

256 F.3d 587 (C.A.7 2001), and whether the signor lacked the mental capacity to assent, *Spahr v. Secco*, 330 F.3d 1266 (C.A.10 2003).

546 U.S. 440, 444 n.1, (2006); *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d at 101 ("Even under the severability doctrine, there may be no arbitration if the agreement to arbitrate is nonexistent."). As the Third Circuit recently explained, "[The defendant] contends even if contract formation between the parties is in dispute, that issue must be resolved in arbitration. This view is mistaken. District courts have the authority to adjudicate contract formation challenges 'unless the parties have clearly and unmistakably referred formation issues to arbitration in a written contract whose formation is not in issue.'" *Consol Pennsylvania Coal Co.*, 2024 WL 510518, at *4 n.8 (citations omitted).

Further, in *Field Intelligence*, the Third Circuit found that the issue of whether the second contract superseded the first contract (and its broad arbitration and delegation clauses) did not squarely present an issue of contract formation, yet it still held that supersession was an arbitrability issue for the court because it went to the issue of "mutual assent" between the parties. *Field Intel. Inc.*, 49 F.4th at 358. The court expressly rejected the argument that *Prima Paint* severability controlled because "we have held that this doctrine 'presumes an underlying, existent[] agreement.' It does not apply where, as here, the existence of the parties' arbitration agreement has been challenged." *Id.* at 357 (quoting *Sandvik*, 220 F.3d at 106); *see also Sandvik*, 220 F.3d at 105–107 (explaining that *Prima Paint* applies to arguments regarding contract recission and not where the parties dispute whether a binding contract existed in the first place). Again, as the justiciable controversy in the Complaint is whether Lloyd's is bound by the Assignment to Edwards (which Lloyd's disputes), the parties' dispute goes to a threshold issue of contract

17

formation and mutual assent that must be determined by this Court, not an arbitrator, even under *Prima Paint*.

Second, Lloyd's relies upon cases concerning broad delegation clauses expressly delegating gateway questions of arbitrability to arbitrators. *See Buckeye*, 546 U.S. at 442 (construing clause stating in relevant part: "Any claim, dispute, or controversy . . . arising from or relating to . . . the validity, enforceability, or scope of this Arbitration Provision or the entire Agreement (collectively 'Claim'), shall be resolved . . . by binding arbitration."); *Neff v. Portfolio Recovery Assocs., LLC.*, 2021 WL 4958690, at *6 (W.D. Pa. Oct. 26, 2021) (describing the applicable arbitration clause as "an arbitration provision containing a delegation clause requiring the parties to submit to arbitration all threshold issues pertaining to enforceability").[6] Such delegation clauses overcome the default rule that questions of arbitrability are reserved for the courts *unless* "the parties clearly and unmistakably provide otherwise." *AT&T Techs.*, 475 U.S. at 649. However, here, there is no delegation of threshold questions of arbitrability to arbitration, thus questions of arbitrability remain for this Court to decide.

---

[6]       *Neff* is an unpublished decision that apparently has not been cited by any judicial opinion in any jurisdiction. And after compelling gateway issues to arbitration, the arbitrator determined that the arbitration provisions were not enforceable by the defendant and the matter was sent back to federal court. *See Neff v. Portfolio Recovery Assocs., LLC.*, Civ. A. No. 2:19-cv-1028 (W.D. Pa.), Dkt. 52, ¶ 4 & 52-2 at 1–2. In *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 145 (3d Cir. 2022), which Lloyd's does not rely upon, the Third Circuit addressed similar facts as *Neff* in determining whether a plaintiff's consumer protection claims could be compelled to arbitration, notwithstanding the plaintiff's challenge to the defendant's assignment. In holding that the plaintiff's claims could be compelled the arbitration, the Court heavily relied upon the plaintiff's agreement to (i) a broad delegation clause, (ii) a broad arbitration clause, and (iii) a contractual term that "explicitly extend[ed]" the delegation and arbitration clauses to assignees, as well as (iv) the fact that the defendant seeking to compel arbitration agreed it was bound by the assignment. *Id.* at 139, 145. Every one of those elements is missing here. For example, there is no broad delegation clause, no broad arbitration clause, and the party invoking the arbitration clause is the party challenging whether it is bound by the assignment.

Third, Lloyd's cited cases also concern broad arbitration clauses in addition to delegation clauses. *See Buckeye*, 546 U.S. at 442 (construing arbitration clause covering, among other things, "[a]ny claim, dispute, or controversy . . . arising from or relating to this Agreement"); *Neff*, 2021 WL 4958690, at *3 (analyzing arbitration clause covering, among other things, "any Claim" which means "means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us"). As set forth *infra*, § III.C., Edwards' Complaint does not fall within the scope of the arbitration clause of the Policy, which is narrower than the clauses at issue in those cases. The severability doctrine of *Prima Paint* is wholly inapplicable where the parties' dispute is not even within the scope of the arbitration clause.

***

Because Lloyd's Motion presents a record upon which this Court cannot be "satisfied that the making of the agreement for arbitration . . . is not in issue," 9 U.S.C. § 4, Lloyd's Motion should be denied.[7]

### C.    Edwards' Complaint is Not Within the Scope of the Arbitration Clause of the Policy.

Lloyd's Motion should be denied for the independent reason that the issues presented by the Complaint are not within the scope of the arbitration clause. This requires an analysis of both the issues presented by the Complaint and the text of the arbitration clause.

While Lloyd's attached its Arbitration Demand and its litany of liability arguments to its Motion to Compel, Edwards has not sought from this Court a determination that all of Lloyd's

---

[7]    To be clear, denial of Lloyd's Motion does not end the parties' overall controversy in this forum. A justiciable controversy still remains between the parties as to whether the Assignment is binding upon Lloyd's. That narrow question will be subject to determination upon summary judgment or trial.

extensive coverage denials are wrongful. The issue joined in this litigation is whether the Assignment is valid and binding upon Lloyd's.

As for the scope of the arbitration clause, it is only "In the event the **ASSURED** and Underwriters are unable to agree as to the amount recoverable by the **ASSURED** from Underwriters . . . ." *See* Ex. 9 at Dkt. 76-1 (Policy) at 14, ¶ 2. It conspicuously does *not* delegate threshold issues of arbitrability to the arbitrator. Nor does the clause use expansive language such as "any and all claims" or "all differences."

By its plain text, the clause only applies to certain types of disputes between the "ASSURED and Underwriters." But Lloyd's disputes that Edwards is an "ASSURED" because Lloyd's did not assent to the Assignment. If Lloyd's is correct that Edwards is not an "ASSURED," then the clause can have no application to him.

In addition, Edwards' Complaint does not present a dispute as to the "amount recoverable by the ASSURED." The Court is not tasked with determining any "amount" or how much is "recoverable." For example, if it is determined that Edwards and Lloyd's are *both* bound by the Assignment and they later proceed to arbitration, that arbitration *might* include resolution of the issue of the applicability of the $500,000.00 Corridor Deductible and whether and how it *may* be applied to potentially reduce any "amount recoverable." That *may*, in turn, result in the arbitrators "calculat[ing] the indemnity due" within the scope of the arbitration clause. However, none of those issues are presented by the Complaint in this action.

Lloyd's argument that the Policy is an indemnity policy and therefore everything automatically falls within the scope of the arbitration clause makes the text of the arbitration clause meaningless. Lloyd's Mem. at 8–9. The argument renders the key phrase "as to the amount recoverable by the ASSURED from Underwriters" into non-existence and converts the clause into

"In the event the ASSURED and Underwriters are unable to agree [on anything]." But that is not what the clause says and not the words that Lloyd's chose to put in its own clause in its own Policy.

Lloyd's certainly knows how to write broad arbitration clauses, including in indemnity contracts—something it chose to *not* do here. For example, in an excess indemnity policy dispute, Lloyd's sought to invoke an arbitration clause that read: "Should any difference of opinion arise between the Underwriters and the insured which cannot be resolved in the normal course of business with respect to the interpretation of this Policy of the performance of the respective obligations of the parties under this Policy, the differences shall be submitted to arbitration." *Certain Underwriters at Lloyd's of London v. Celebrity, Inc.*, 950 S.W.2d 375, 377–78 (Tex. App. 1996 (noting that Lloyd's argued the phrase "*of* the performance" was a typographical error and should have read "*or* the performance"), *writ dismissed w.o.j.*, 988 S.W.2d 731 (Tex. 1998); *see also Malin v. Osprey Underwriting Agency Ltd.,* 595 F. Supp. 3d 861, 865 (D. Alaska 2022) (as reinsurer, seeking to compel arbitration of maritime protection and indemnity policy stating "Notwithstanding anything else to the contrary, . . . any dispute under or in connection with this insurance is to be referred to Arbitration in London"); *see also Acad. of Sacred Heart of New Orleans v. Certain Underwriters at Lloyd's London*, 651 F. Supp. 3d 822, 826 (E.D. La. 2023) (addressing Lloyd's arbitration clause referring to "all matters in difference in relation to the coverages under the Policy"); *McLane Co., Inc. v. Certain Underwriters at Lloyd's, London*, 2022 WL 16824523, at *1 (W.D. Okla. Nov. 8, 2022) ("This clause provides: 'Disputes or controversies between [McLane Company, Inc.] and [Underwriters at Lloyd's, London] under this Policy may be settled by binding arbitration at the sole discretion of [Underwriters at Lloyd''s, London].'") (alteration in original).

Lloyd's invites error by disregarding its own choice of language in the Policy. *See, e.g.,* *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1010 (3d Cir. 1980) (noting the "sanctity of the written words of the contract" and affirming that "[a] court is not authorized to construe a contract in such a way as to modify the plain meaning of its words, under the guise of interpretation.") (citation omitted).

Finally, Lloyd's argument that an ultimate declaration in this action that Lloyd's is bound by the Assignment would knock out one of its purported coverage denials does not turn this threshold question of arbitrability into a question for arbitrators. *See* Lloyd's Mem. at 11–13. To the contrary, the Third Circuit and other courts have routinely held that where issues of arbitrability and the merits are intertwined, a court still must determine such issues because to hold otherwise would run counter to the court's obligation to first determine if a contract exists. *See Rite Aid of Pennsylvania, Inc. v. United Food & Com. Workers Union, Loc. 1776*, 595 F.3d 128, 136 (3d Cir. 2010) ("The Union additionally argues that the District Court impermissibly considered the merits of its grievance in making its arbitrability determination. We cannot agree. Decisions of the Supreme Court and Courts of Appeals have made clear that where the merits and arbitrability questions are inextricably intertwined, a court's arbitrability decision may, of necessity, touch incidentally on the merits."). Therefore, Lloyd's cannot avoid questions of arbitrability in this Court merely by unilaterally declaring such questions as potentially foreclosing some of Lloyd's "merit-based affirmative defense[s]." *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 515–16 (5th Cir. 2019) ("Underwriters cannot avoid this outcome by calling the subrogation issue a 'merits-based affirmative defense' to its claims against FloaTEC. . . . FloaTEC argues Underwriters were not parties to the Contract at all and so could not invoke the Contract's delegation provision in the first place. This is not a dispute about the 'merits' of Underwriters'

claims; it is 'a simpler type of dispute which, we have held, is for the courts and not the arbitrator to decide in the first instance: a dispute over whether the parties entered into any arbitration agreement in the first place.'"); *see also Int'l Bhd. of Elec. Workers, AFL-CIO, Loc. 1 v. GKN Aerospace N. Am., Inc*., 431 F.3d 624, 628 (8th Cir. 2005) ("[J]udicial responsibility to determine arbitrability takes precedence over the general rule to avoid consideration of the merits of a grievance . . . 'If the court must, to decide the arbitrability issue, rule on the merits, so be it.'") (quoting *Indep. Lift Truck Builders Union v. Hyster Co*., 2 F.3d 233, 236 (7th Cir.1993)).

***

Accordingly, the Court can and should deny Lloyd's Motion for the independent reason that it fails to demonstrate that the claims of Edwards Complaint are within the scope of any arbitration agreement.

## IV.    Conclusion

For the foregoing reasons, Edwards respectfully submits that Lloyd's Motion to Compel Arbitration should be denied. Alternatively, Edwards respectfully requests leave to amend.

Respectfully submitted,

August 20, 2024

**LeVAN STAPLETON SEGAL COCHRAN LLC**

By: /s/ *John S. Stapleton*
    John S. Stapleton, ID 032622005
    Jonathan L. Cochran, ID 028142012
Four Greentree Centre
601 Route 73 N, Suite 303
Marlton, NJ 08053
856.259.3300
jstapleton@levanstapleton.com
jcochran@levanstapleton.com

**NASH PEREZ LLC**

By: /s/ *Jeffrey L. Nash*
    Jeffrey L. Nash
330 Market Street
Camden, NJ 08102
856.246.1022
jnash@nashperez.com

*Attorneys for Plaintiff Tyshon Edwards*