# **EXHIBIT 2**

# **(Part 1)**

9/20/2020 Complaint (Civil Rights Dkt. 1)

**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TYSHON EDWARDS,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF TRENTON, MICHAEL<br>TILTON, JOHNATHON CINCILLA,<br>NICHOLAS MAHAN, ERIC AVALOS,<br>ANTHONY KUBISH, and JOHN DOES<br>1–8,<br><br>    Defendants. | Civ. A. No. 20-13552 |

**Complaint**

> *On my honor, I will never betray my integrity, my character or the public trust. I will always have the courage to hold myself and others accountable for our actions. I will always maintain the highest ethical standards and uphold the values of my community, and the agency I serve.*

Law Enforcement Oath of Honor

## I. Introduction

1. In America, young, black men should not live in fear of lawless police from a lawless department. And the hope that police misconduct was captured by a random video should not be the only defense against lying police who file false reports and false affidavits to justify false arrests. But those are the sad realities for Plaintiff Tyshon Edwards who suffered a chilling and gross depravation of civil rights at the hands of the Trenton Police Department, including being jailed for 212 days on false charges.

2.      In the evening of January 21, 2019, Trenton police swarmed and seized Mr. Edwards, a young, black male, as he was legally parked on a public road. The police ripped Mr. Edwards out of his vehicle and arrested him without basis.

3.      None of the ten or more police personnel in the four different vehicles pouncing upon Mr. Edwards wore body cameras. The police then falsified a police report to justify their false arrest of Mr. Edwards. Then, they falsified affidavits to the court to support a criminal complaint.

4.      Months later, a subpoena brought to light raw video footage of the arrest captured by Trenton's own municipal street cameras. The footage shows the lies of the Trenton police in devastating detail.

5.      After those videos of the arrest were delivered to the prosecution, the prosecution dropped all charges.

6.      Edwards ultimately served 212 days in jail due to the grave misconduct of the Trenton police.

7.      Edwards now files this Complaint against Defendants City of Trenton, New Jersey, and certain detectives of the Trenton Police Department, Michael Tilton, Johnathon Cincilla, Nicholas Mahan, Eric Avalos, Anthony Kubish, and John Does 1–8 ("Individual Defendants") for violations of his federal and state rights.[1]

**II.     The Parties**

8.      Mr. Edwards is a citizen of the United States and resides in New Jersey.

---

[1]      Mr. Edwards reserves the right to add additional defendants to the extent he learns of facts that other individuals participated in the deprivation of his rights.

9. Defendant City of Trenton is a city in Mercer County, New Jersey. It is governed by the mayor-council system under the Faulkner Act, N.J.S.A 40:69A-1, *et seq.*, and its governing body consists of a mayor and a seven-member city council.

10. The City of Trenton Police Department is a department or agency of Trenton, and the Police Director is its chief executive position.

11. Defendant Michael Tilton is a detective, employee, and agent of the Trenton Police Department. At all times Tilton was acting under color of state law and is sued in his individual capacity.

12. Defendant Johnathon Cincilla is a detective, employee, and agent of the Trenton Police Department. At all times Cincilla was acting under color of state law and is sued in his individual capacity.

13. Defendant Nicholas Mahan is a detective, employee, and agent of the Trenton Police Department. At all times Mahan was acting under color of state law and is sued in his individual capacity.

14. Defendant Eric Avalos is a detective, employee, and agent of the Trenton Police Department. At all times Avalos was acting under color of state law and is sued in his individual capacity.

15. Defendant Anthony Kubish is a detective, employee, and agent of the Trenton Police Department. At all times Kubish was acting under color of state law and is sued in his individual capacity.

16. Defendants John Does 1–8 are detectives, officers, personnel, employees, supervisors, policymakers, and/or agents of the Trenton police who

3

participated in, caused, or failed to intervene and prevent the wrongful conduct and harms to Mr. Edwards alleged herein.

## III.  Jurisdiction and Venue

17.    This action arises under the Constitution of the United States and 42 U.S.C. § 1983, as well as the Constitution and the laws of the State of New Jersey.

18.    Venue is proper in this district because a substantial part of the events giving rise to the claims in this Complaint occurred in this district and Trenton is a city located in this district. 28 U.S.C. § 1391(b)(1) & (2).

## IV.  Factual Background

19.    On January 21, 2019, Mr. Edwards was driving his automobile in Trenton and made a left-hand turn from Oakland Street on to Hoffman Avenue.

20.    He used his left turn signal.

21.    He stopped his vehicle along the right-hand side of Hoffman Avenue, slightly above the Hoffman-Oakland intersection.

22.    He parked lawfully and parallel to the curb line.

23.    Within twenty seconds of stopping, he was swarmed by two unmarked vehicles of the Trenton police: Unmarked Car No. 1 and Unmarked Car No. 2.

24.    Cincilla was the driver of Unmarked Car No. 1 and Tilton was in the passenger seat.

25.    Mahan, Avalos, and Kubish were in Unmarked Car No. 2, although how they were seated is not known to Mr. Edwards at this time.

26.     Coming from behind Mr. Edwards' vehicle, Cincilla brought Unmarked Car No. 1 to an abrupt stop diagonally in front of driver side of Mr. Edwards' car, blocking it from moving forward.

27.     Tilton quickly exited Unmarked Car No. 1 and immediately reached for the driver side door of Mr. Edwards' car and opened it.

28.     Tilton removed Mr. Edwards from the vehicle, put him up against the car, patted him down, and arrested him.

29.     As Tilton did so, Cincilla, Mahan, Avalos, and Kubish exited Unmarked Car No. 1 and Unmarked Car No. 2 and descended upon Mr. Edwards' vehicle.

30.     Mr. Edwards asked why he was being arrested. Tilton replied that Mr. Edwards was being arrested because drugs allegedly were found in his car.

31.     Neither Tilton nor any other officer on the scene showed any drugs or evidence of drugs to Mr. Edwards.

32.     Mr. Edwards was not aware of any drugs being in his vehicle and no drugs allegedly found by Trenton police were his. Mr. Edwards previously has demanded that all evidence regarding the alleged drugs be preserved.

33.     Within one minute of Tilton and Cincilla having stopped and seized Mr. Edwards, a third unmarked vehicle, Unmarked Car No. 3, and a marked SUV also arrived. Four detectives exited Unmarked Car No. 3 and assisted on the scene. Mr. Edwards does not know at this time how many police personnel were present in the SUV or their ranks.

34.     Edwards does not know at this time what involvement or knowledge the detectives in Unmarked Car No. 3 or the personnel in the SUV had regarding the improper conduct of the detectives in the first two cars. Edwards expressly reserves the right to add such additional individuals to the extent further information is learned in discovery.

35.     The Trenton police cited Edwards for violations of state laws: 2C:35–10A(1) (possession of heroin); 2C:35–5A(1) (possession of heroin with the intent to distribute); 2C:35–35-7.1A (possession of heroin with the intent to distribute it within 500 feet of public housing); and motor vehicle offenses 39:4–135 (improper parking) and 39:4–49.1 (CDS in a motor vehicle).

36.     Mr. Edwards was jailed overnight and released on January 22, 2019.

37.     On January 21, 2019, Tilton executed and filed an Incident/Investigation Report, together with a Reporting Officer Narrative, a true and correct copy of which is attached as Exhibit A.

38.     Tilton also executed and filed with the Trenton Municipal Court a Complaint-Warrant, together with an Affidavit of Probable Cause, a true and correct copy of which is attached as Exhibit B.

39.     On that same night, Tilton also executed a Motor Vehicle Summons, a true and correct copy of which is attached as Exhibit C.

40.     As set forth more fully below, Exhibits A–C are filled with falsehoods to justify a false arrest and fictional crimes.

41.     Upon information and belief, at least Cincilla, Mahan, Avalos, and Kubish also were aware of, caused, participated in, and failed to intervene to prevent and correct the false statements in Exhibits A–C.

42.     At the time of the incident, Mr. Edwards was on parole regarding an unrelated conviction from 2007.

43.     Due solely to the documents filed by the Trenton police to describe their bases for arresting him, Mr. Edwards' parole officer cited him for violating a term of his parole prohibiting Mr. Edwards from having any involvement with drugs.

44.     He was jailed due to the suspected parole violation on March 13, 2019. Mr. Edwards would not receive a hearing before the State Parole Board and an opportunity to defend himself against the parole violation charge until months later.

45.     The parole officer subpoenaed Tilton on several occasions to appear for Mr. Edwards' parole revocation hearings before the State Parole Board, but Tilton always failed to comply with the subpoena. Tilton never appeared, let alone testify honestly to correct the falsities of the police reports.

46.     Tilton's refusal to comply with the subpoena further continued Mr. Edwards' unlawful detention.

47.     By subpoena, Mr. Edwards' attorneys obtained video footage from Trenton street cameras located at the corner of Hoffman and Oakland.

48.     The video footage shows a remarkably different incident than the fictional story told by the Trenton police in the Incident/Investigation Report, Complaint, and Affidavit.

7

49.     Tilton wrote: "I observed a gold colored sedan quickly turn left onto Hoffman Avenue from Oakland Street, then abruptly stop alongside the curb line of the odd numbered side of Hoffman Avenue." Incident/Investigative Report at 4. *But*, the video footage shows an ordinary left turn by Mr. Edwards, including the proper use of his left turn signal.

50.     Tilton wrote: "The front end of the vehicle protruded into the roadway, in a way that would cause other vehicles to swerve into oncoming traffic." *Id.* at 4. *But*, the video footage shows Mr. Edwards' car parked legally and parallel to the curb. The front end of his vehicle does not protrude into the roadway. In fact, the video shows that Tilton and Cincilla pass Edwards' parked car without incident or swerving and with plenty of space between the two vehicles.

51.     Below shows a still image from the video footage at 8:48:33 p.m., the time at which Tilton swears Edwards had parked his vehicle in a manner that required oncoming traffic to swerve to avoid hitting Edwards' vehicle.



1/21/2019 8:48:33 PM

8

52.     Tilton wrote: "I advised Detective Cincilla of the potential hazard and advised him to turn around." *Id.* at 4. *But*, the video footage shows there was no hazard caused by Mr. Edwards' vehicle. This is obvious to any individual, including Cincilla and the detectives in Unmarked Car No. 2 as they arrived within 1–2 seconds of Unmarked Car No. 1. Tilton's characterization of his alleged conversation with Cincilla, as reported in the Incident/Investigative Report, certainly must be false.

53.     Tilton wrote: "I activated our emergency lights and we conducted a motor vehicle stop to issue the driver a proper summons for improper parking (39:4–135)." *Id.* at 5. *But*, the video footage shows no evidence that the emergency lights of Unmarked Car No. 1, or even Unmarked Car No. 2, were activated.

54.     Tilton wrote: "I approached the driver side of the vehicle and immediately observed a male, later arrested and identified as Tyshon Edwards seated in the driver seat. Upon observing my Police presence, he quickly leaned forward and motioned his right arm downward towards the floor. I immediately opened the driver side door and noticed he was still reaching." *Id.* at 5. *But*, the video footage shows no evidence of Mr. Edwards reaching anywhere (even if reaching for the floor was unlawful, which clearly it is not). In fact, the video shows Tilton open the passenger side door of Unmarked Car No. 1, and immediately take two steps toward Mr. Edwards' car while already reaching for the handle on Mr. Edwards' door. Tilton's actions take approximately 1 second. He does not pause, flinch, hesitate, or even reach for his weapon as would be expected of an officer allegedly concerned that a driver of a vehicle was reaching within a vehicle in a potentially threatening manner

9

as Tilton's report implies. There is no evidence that Tilton observed anything about Mr. Edwards' conduct that justified opening Mr. Edwards' door.

55. Below shows still images from the video footage at 8:48:50 p.m., as Tilton opened his own door, and one second later, at 8:48:51 p.m., when Tilton had already placed his hand on the driver side door of Mr. Edwards' car and begun opening it.



56.     Tilton wrote: "I quickly grabbed both of Edward's hands to prevent him from further reaching and guided him out of the vehicle. Simultaneously, assisting Street Crime Detectives illuminated the interior of the vehicle. Detective Mahan advised me he observed a black bag partially opened at the top, containing what he immediately recognized as a large quantity of CDS Heroin packaged for distribution. Edwards was placed under arrest without incident, the handcuffs were checked for proper fit and double locked. Detective Mahan retrieved the black bag containing the CDS Heroin from the backseat of the vehicle and secured it on his person." *Id.* at 5. *But*, the video footage shows that upon opening the door, Tilton immediately commenced the process of arresting Mr. Edwards, taking just seconds to remove him from the car, forcing him to stand with his stomach against the rear side door, patting him down, and then handcuffing him. Further, if Mahan retrieved any substance from Mr. Edwards' vehicle, there is no evidence on the video footage of any object being removed from the vehicle.

57.     Mr. Edwards has demanded that the Trenton police preserve all evidence of the bag and alleged drugs allegedly found in his vehicle.

58.     Tilton summarized the same information in the Affidavit of Probable Cause attached to the Complaint-Warrant filed with the Trenton Municipal Court and included many of the same false statements. *See* Exhibit B.

59.     Finally, a final revocation hearing before the State Parole Board was convened. Once again, Tilton again failed to appear.

11

60.     However, during that hearing, the video footage showing the unlawful arrest was played for the hearing officer. The hearing officer then recommended a finding of no violation of parole by Mr. Edwards, which the State Parole Board adopted.

61.     In total, Mr. Edwards was jailed from January 21–22 and March 13–October 9.

62.     After production of the video to the Mercer County Prosecutor's Office, the prosecutor dropped all criminal charges against Mr. Edwards.

63.     All Defendants conspired to deprive Mr. Edwards of his civil rights, including but not limited to engaging in, furthering, and/or causing the stopping, seizing, searching, and arresting of Edwards without lawful justification or probable cause, the falsification of the presence of and/or the planting of evidence upon Mr. Edwards (or committing the same through other persons acting on their behalf), the submission of a false Incident/Investigation Report, Complaint-Warrant, Affidavit of Probable Cause, and traffic summonses, the malicious prosecution of Mr. Edwards including the detention and jailing of Mr. Edwards upon false charges, and the failure to intervene to prevent the deprivation of Mr. Edwards' civil rights.

64.     To the extent Defendants claim as defense to their wrongful conduct that Defendants were acting upon supposed information from a supposed anonymous tip or confidential informant, such information provided no justification for Defendants' conduct. In fact, Defendants acted in concert with the tipster or informant to deprive Mr. Edwards of his civil rights, failed to properly verify and

corroborate the information supposedly reported to them, failed to seek a pre-arrest warrant based upon such supposed information, failed to report or acknowledge the use of a tipster or informant in the Investigative/Incident Report, Complaint, and Affidavit of Probable Cause filed and submitted after the stop and arrest, failed to turn over exculpatory evidence regarding the use of the supposed tipster or informant, and deprived Mr. Edwards of his constitutional right to confront his accusers.

65. All Defendants have acted in concert and conspiracy and are jointly and severally responsible for all harms caused to Mr. Edwards.

66. All Defendants acted willfully, recklessly, and with deliberate disregard for Mr. Edwards' rights under federal and state law.

67. All Defendants, including Trenton and its policymakers, acted willfully, recklessly, and with deliberate disregard to an unreasonable risk that the rights of persons with whom the police come into contact would be deprived and such indifference directly caused the harms to Mr. Edwards alleged herein.

68. Defendants' actions and omissions were the direct and proximate cause of Mr. Edwards' injuries.

69. As a direct and proximate cause of the actions and omissions of Defendants, Mr. Edwards suffered at least violations of his clearly established constitutional rights, privileges, and immunities, loss of his physical liberty and freedom, loss of property (including but not limited to loss of his vehicle and loss of

income), physical pain and suffering and emotional trauma and suffering, some or all of which may be permanent.

### Count I
### 42 U.S.C. § 1983 (Violation of Fourth and Sixth Amendments)
### Against All Individual Defendants

70.     Edwards incorporates all prior paragraphs of this complaint.

71.     Edwards has clearly established constitutional rights under the Fourth, Sixth, and Fourteenth Amendments, including but not limited:

      a.     to be free from unreasonable stops, seizures, and searches;

      b.     to be free from wrongful and false arrests;

      c.     to receive due process of law;

      d.     to confront his accusers;

      e.     to receive exculpatory evidence;

      f.     to not be subject to false police reports and false allegations by government actors;

      g.     to not be prosecuted based upon false evidence;

      h.     to not be prosecuted based upon false charges;

      i.     to not be maliciously prosecuted; and

      j.     to not be arrested, detained, jailed, or imprisoned based upon such wrongful conduct.

72.     The Individual Defendants, individually and in concert, deprived Edwards of these rights without due process of law, through their actions and omissions and by failing to intervene to stop the same despite their duty to do so.

14

73.     The Individual Defendants' actions and omissions shock the conscience, and are fraudulent, dishonest, unlawful, malicious, conducted in bad faith, and intended to injure in a manner unjustified by any government interest, and/or were conducted with reckless disregard of the risk that they would deprive Mr. Edwards of his civil rights.

WHEREFORE, Mr. Edwards demands judgment against the Individual Defendants, and respectfully requests that the Court:

    a.     Declare that the Individual Defendants violated Mr. Edwards' civil rights;

    b.     Award all damages, including but not limited to compensatory, nominal, and punitive damages, in the maximum amount allowable by law;

    c.     Award attorneys' fees and costs in the maximum amount allowable by law; and

    d.     Afford such other relief as the Court deems just and proper.

## Count II
### 42 U.S.C. § 1983 (Violation of Substantive Due Process Rights)
### Against All Individual Defendants

74.     Edwards incorporates all prior paragraphs of this Complaint.

75.     Edwards has clearly established substantive due process rights under the Fourteenth Amendment to not be deprived of life, liberty, or property without due process of law, which rights the Individual Defendants violated by the conduct alleged.

76.     The Individual Defendants' actions shock the conscience, and are fraudulent, dishonest, unlawful, malicious, conducted in bad faith, and intended to

injure in a manner unjustified by any government interest, and/or were conducted with reckless disregard of the risk that they would deprive Mr. Edwards of his substantive due process rights.

WHEREFORE, Mr. Edwards demands judgment against the Individual Defendants, and respectfully requests that the Court:

a.   Declare that the Individual Defendants violated Mr. Edwards' substantive due process rights;

b.   Award all damages, including but not limited to compensatory, nominal, and punitive damages, in the maximum amount allowable by law;

c.   Award attorneys' fees and costs in the maximum amount allowable by law; and

d.   Afford such other relief as the Court deems just and proper.

**Count III**
**42 U.S.C. § 1983 (*Monell* Liability)**
**Against Trenton**

77.   Mr. Edwards incorporates all prior paragraphs of this Complaint.

78.   Trenton has a custom, policy, practice, and pattern of allowing its agents, including the Individual Defendants, to engage in the wrongful conduct alleged herein.

79.   Trenton has a duty to adequately train, supervise, monitor, and discipline their agents, including the Individual Defendants, to protect members of the public from the wrongful conduct alleged herein.

80.   Trenton and its policymakers, including but not limited to supervising officers and the Police Director of the Trenton Police  Department, City Council, and

the Mayor, acted deliberately indifferent to an unreasonable risk that the rights of persons with whom Trenton police come into contact would be deprived and such indifference directly caused the harms to Mr. Edwards alleged herein.

WHEREFORE, Mr. Edwards demands judgment against Trenton, and respectfully requests that the Court:

      a.    Declare that Trenton is liable for the violations of Mr. Edwards' rights;

      b.    Award all damages, including but not limited to compensatory and nominal damages, in the maximum amount allowable by law;

      c.    Award attorneys' fees and costs in the maximum amount allowable by law; and

      d.    Afford such other relief as the Court deems just and proper.

**Count IV**
**Violation of New Jersey Civil Rights Act (N.J.S.A. 10:6–2(c))**
**Against All Individual Defendants**

81.    Mr. Edwards incorporates all prior paragraphs of this Complaint.

82.    The actions and omissions of Individual Defendants as described above, violated Plaintiff's substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, and/or Plaintiff's substantive rights, privileges or immunities secured by the Constitution or laws of the State of New Jersey, and, as such, all Individual Defendants are liable to Mr. Edwards under the New Jersey Civil Rights Act. N.J.S.A. 10:6–2(c).

WHEREFORE, Mr. Edwards demands judgment against the Individual Defendants, and respectfully requests that the Court:

a. Declare that the Individual Defendants violated Mr. Edwards' rights, privileges, and immunities protected by the Constitution and the laws of the United States and the Constitution and the laws of the State of New Jersey;

b. Award all damages, including but not limited to compensatory, nominal, and punitive damages, in the maximum amount allowable by law;

c. Award all penalties in the maximum amount permitted by N.J.S.A. 10:6–2(e);

d. Award attorneys' fees and costs in the maximum amount allowable by law; and

e. Afford such other relief as the Court deems just and proper.

**Count V**
**Violation of New Jersey Civil Rights Act (N.J.S.A. 10:6–2(c))**
**<u>Against Trenton</u>**

83. Mr. Edwards incorporates all prior paragraphs of this Complaint.

84. Trenton and its policymakers, including but not limited to supervising officers and the Police Director of the Trenton Police Department, City Council, and the Mayor, acted deliberately indifferent to an unreasonable risk that the rights, as protected by the New Jersey Civil Rights Act, of persons with whom the police come into contact would be deprived and such indifference directly caused the harms to Mr. Edwards alleged herein.

WHEREFORE, Mr. Edwards demands judgment against Trenton, and respectfully requests that the Court:

a. Declare that Trenton is liable for the violation of Mr. Edwards' rights;

18

b.  Award all damages, including but not limited to compensatory and nominal damages, in the maximum amount allowable by law;

c.  Award all penalties in the maximum permitted N.J.S.A. 10:6–2(e);

d.  Award attorneys' fees and costs in the maximum amount allowable by law; and

e.  Afford such other relief as the Court deems just and proper.

**Count VI**
**Malicious Prosecution (Common Law)**
**Against All Defendants**

85.  Mr. Edwards incorporates all prior paragraphs of this Complaint.

86.  All Defendants, acting on their own, in concert, and/or vicariously through their agents, caused to be instituted legal proceedings against Mr. Edwards.

87.  Such legal proceedings were instituted with malice, without probable cause, caused harm to Mr. Edwards, and were terminated in Mr. Edwards' favor.

WHEREFORE, Mr. Edwards demands judgment against Defendants, and respectfully requests that the Court:

a.  Award all damages, including but not limited to compensatory and nominal damages, in the maximum amount allowable by law;

b.  As against the Individual Defendants, award punitive damages in the maximum amount allowable by law;

c.  Award attorneys' fees and costs in the maximum amount allowable by law; and

d.  Afford such other relief as the Court deems just and proper.

19

LeVAN MUHIC STAPLETON LLC

September 29, 2020

By: /s/ *John S. Stapleton*
    John S. Stapleton, ID 032622005
    Peter A. Muhic, ID 041051994
Four Greentree Centre
601 Route 73 N, Suite 303
Marlton, NJ 08053
856.259.3300
jstapleton@levanmuhic.com
pmuhic@levanmuhic.com

THE NASH LAW GROUP LLC

By: /s/ Jeffrey L. Nash
    Jeffrey L. Nash
330 Market Street
Camden, NJ 08102
856.246.1022
jnash@thenashlawgroup.com

*Attorneys for Plaintiff Tyshon Edwards*