# <u>EXHIBIT 3</u>

1/26/2024, Plaintiff's Unopposed Motion for Approval of Settlement Agreement and Entry of Consent Judgment (Civil Rights Dkt. 62)

- o   Settlement Agreement (Civil Rights Dkt. 62-1)
- o   Proposed Consent Judgment (Civil Rights Dkt. 62-1)
- o   Declaration of John S. Stapleton (Civil Rights Dkt. 62-2)
- o   Declaration of J. Brooks DiDonato (Civil Rights Dkt. 62-3)

# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF NEW JERSEY

TYSHON EDWARDS,

       Plaintiff,

v.

CITY OF TRENTON,

       Defendant.

Civ. A. No. 20-13552-ZNQ-DEA

**NOTICE OF UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND ENTRY OF CONSENT JUDGMENT**

PLEASE TAKE NOTICE that on February 20, 2024, or such date and time as counsel may be heard, Plaintiff shall move before the Court for an Order approving of the Settlement Agreement and entry of the Consent Judgment as set forth herein.

PLEASE TAKE FURTHER NOTICE that in further support of the Motion, Plaintiff will rely upon the Declarations of John S. Stapleton and J. Brooks DiDonato, both of which are attached to this Motion.

January 26, 2024

**LeVAN STAPLETON SEGAL COCHRAN LLC**

By: /s/ *John S. Stapleton*
    John S. Stapleton, ID 032622005
Four Greentree Centre
601 Route 73 N, Suite 303
Marlton, NJ 08053
856.259.3300
jstapleton@levanstapleton.com

**NASH PEREZ LLC**

By: /s/ Jeffrey L. Nash
     Jeffrey L. Nash
330 Market Street
Camden, NJ 08102
856.246.1022
jnash@nashperez.com

*Attorneys for Plaintiff Tyshon Edwards*

# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF NEW JERSEY

TYSHON EDWARDS,

      Plaintiff,

v.

CITY OF TRENTON,

      Defendant.

Civ. A. No. 20-13552-ZNQ-DEA

## Unopposed Motion for Approval of Settlement Agreement
## and Entry of Consent Judgment

Pursuant to Rule 58 of the Federal Rules of Civil Procedure, Plaintiff Tyshon Edwards respectfully moves the Court to review and approve the parties' Settlement Agreement attached as Exhibit 1 and enter the Consent Judgment attached as Exhibit 1-A as reasonable and entered into in good faith under *Griggs v. Bertram*, 443 A.2d 163 (N.J. 1982).

On September 29, 2020, Plaintiff commenced this civil action (the "Litigation") against Defendant the City of Trenton ("Trenton") and certain individual members of the City of Trenton Police Department. *See* Complaint, Dkt. 1. The Complaint asserts various claims arising under federal and state law regarding, among other things, Plaintiff's allegation that his civil rights were violated when he was arrested on January 21, 2019, and subsequently jailed for a

total of 212 days without lawful basis. All charges against Plaintiff in connection with that arrest were later dismissed.

Since 2020, the parties have vigorously litigated this dispute. They engaged in substantial discovery, including numerous document requests under Federal Rule of Civil Procedure 34, interrogatories under Federal Rule of Civil Procedure 33, requests for admissions under Federal Rule of Civil Procedure 36, depositions of certain parties including Plaintiff, and subpoenas to non-parties under Federal Rule of Civil Procedure 45, including but not limited to subpoenas served upon the New Jersey State Police and the Mercer County Prosecutor's Office. *See* Declaration of John S. Stapleton, ¶ 3; Declaration of J. Brooks DiDonato, ¶ 3.

The parties also met and conferred at length regarding discovery disputes in this action and appeared and participated in numerous discovery conferences conducted by the Court, which are reflected by numerous docket entries on the docket. *See* Stapleton Decl., ¶ 4; DiDonato Decl., ¶ 4.

The parties also participated in numerous settlement meetings among themselves, as well as in settlement conferences conducted by the Court, which are reflected by numerous docket entries on the docket. *See* Stapleton Decl., ¶ 5; DiDonato Decl., ¶ 5.

Certain Underwriters at Lloyd's of London ("Underwriters") subscribe to Policy No. PK1021618 (the "Policy"), issued to Trenton, and Trenton sought coverage under the Policy regarding the Litigation. *See* DiDonato Decl., ¶ 6.

The Policy's limit of liability for the Law Enforcement Liability Coverage Section (Section VIII) is $3,000,000.00 each Occurrence and $6,000,000.00 Annual Aggregate of Liability, subject to a $500,000.00 Self Insured Retention (all capitalized terms having the same meaning as those used in the Policy). *See* DiDonato Decl., ¶ 7.

Underwriters denied coverage to Trenton regarding the Litigation, in addition to issuing a reservation of rights, and refused to reimburse or indemnify Trenton under the Policy. *See* DiDonato Decl., ¶ 8. Trenton reserved all rights to contest Underwriters' determinations. *Id.* ¶ 8.

In addition to denying coverage under the Policy, Underwriters have contended that Underwriters' liability under the Policy would be further subject to a $500,000.00 corridor deductible pursuant to Endorsement No. 6 to the Policy ("Corridor Deductible"), but Trenton contends that such Corridor Deductible is inapplicable, unenforceable, and/or has been misconstrued by Underwriters. *See* DiDonato Decl., ¶ 9.

Notwithstanding the denial of coverage by Underwriters, the parties and the Court solicited and welcomed Underwriters' participation in a settlement of the

Litigation. For example, this Court ordered Underwriters' counsel's appearance at a settlement conference on May 31, 2023, which was continued to July 18, 2023, at the request of Underwriters' counsel. Underwriters' counsel appeared on July 18, 2023, at the Court's settlement conference, but that settlement conference was unsuccessful in resolving the Litigation. *See* Stapleton Decl., ¶ 7; DiDonato Decl., ¶ 10.

On August 17, 2023, Plaintiff's counsel submitted a time-limited demand to Underwriters and Plaintiff offered to settle the Litigation within the limits of the Policy, which demand expired on its own terms on August 24, 2023, at 12 p.m. (eastern), after Underwriters did not respond. *See* Stapleton Decl., ¶ 8. Underwriters' counsel claimed on or about September 22, 2023, that he did not receive a copy of the August 17, 2023, time-limited demand letter, and Plaintiff thereafter renewed the time-limited demand on September 22, 2023, with terms set to expire on September 28, 2023, at 5 p.m. (eastern) if not accepted. *See* Stapleton Decl., ¶ 8. Underwriters acknowledged receipt of the time-limited demand letter, but never responded to the demand, and the demand expired on its own terms on September 28, 2023, at 5 p.m. (eastern). *See* Stapleton Decl., ¶ 8.

Trenton privately sought to negotiate with counsel for Underwriters but was unsuccessful in ever obtaining Underwriters' contributions toward any resolution in this action. *See* DiDonato Decl., ¶ 11.

During settlement negotiations, Plaintiff identified and produced information regarding numerous settlements and verdicts in cases concerning claims for pre-conviction, wrongful detentions without any major physical injuries. To approximate an apples-to-apples comparison for value, Plaintiff reduced the damages award in each case to a per diem rate based on number of days detained. When applying the per diem rates from such actions to Plaintiff's 212 days in jail, the average and median awards for such actions was far in excess of the Consent Judgment (i.e., $5,000,000.00) submitted for the Court's approval here. Stapleton Decl., ¶ 9.

Of particular note, while this action was pending, Hamilton Township, Trenton's immediately adjacent neighboring town, settled a wrongful arrest and 11-day detention suit for $950,000.00. If Plaintiff here obtained the same per diem rate, Plaintiff's award would be over $18,000,000.00. Hamilton's resolution was by way of settlement, and not a jury verdict, which very possibly could be a higher rate. Stapleton Decl., ¶ 10.

Plaintiff produced the aforementioned analysis to the Court, Defendants' counsel, and counsel for Underwriters during settlement discussions. Stapleton Decl., ¶ 11.

No litigation outcome is certain. No two civil actions are identical. However, these extremely substantial verdicts and settlements demonstrate that a jury hearing

Plaintiff's claims very possibly could award an eight-figure damages award upon a determination of liability.

Further, in addition to a liability award, if Plaintiff were to prevail in demonstrating a violation of his civil rights under 42 U.S.C. § 1983, Plaintiff would be entitled to pursue attorneys' fees and costs under 42 U.S.C. § 1988(b). To date, Plaintiff's attorneys collectively have expended over 900 hours of attorney time on this action. Stapleton Decl., ¶ 12. It is reasonable to estimate that Plaintiff's attorneys would expend substantially more hours to litigate this action to verdict. Stapleton Decl., ¶ 12. Thus, further litigation exposed Trenton to potential additional liability for a very substantial attorneys' fee award on top of any damages award if the jury were to find in Plaintiff's favor.

In consultation with the Court during settlement conferences, the parties explored the possibility of resolving this action through a *Griggs* settlement, whereby Trenton would consent to entry of judgment of a sum certain, assign to Plaintiff all interests it has against Underwriters, and Plaintiff would covenant to not execute upon the Consent Judgment against Trenton above a certain limit. Stapleton Decl., ¶ 13; DiDonato Decl., ¶ 13.

By written letter dated December 5, 2023, Trenton informed Underwriters of its intention to settle the Litigation in a manner that would exhaust the Self Insured Retention and would involve liability to Underwriters under the Policy and for

Underwriters' bad faith denial of coverage, and further encouraged counsel for Underwriters to contact counsel for Plaintiff directly. *See* DiDonato Decl., ¶ 14. But Underwriters did not participate in a settlement of the Litigation. *See* DiDonato Decl., ¶ 14.

On January 17, 2024, Council for the City of Trenton voted and authorized the Law Department to enter the Settlement Agreement and execute the corresponding Consent Judgment. DiDonato Decl., ¶ 15.

Under the terms of the Settlement Agreement and Consent Judgment, which are attached to this Motion for the Court's review, Trenton and Plaintiff agreed to, among other things, entry of a consent judgment in the amount of $5,000,000.00 against Trenton only (which is far less than the average and median rates in the comparable cases analysis produced by Plaintiff), a covenant by Plaintiff to execute against Trenton for not more than $500,000.00, an assignment to Plaintiff of all of Trenton's rights against Underwriters including but not limited to any rights to collect upon the Consent Judgment, a provision providing for a $500,000.00 reduction of any liability by Underwriters should the Corridor Deductible be determined to be enforceable in any subsequent litigation, and the reimbursement to Trenton of reasonable Defense Costs (as that term is defined in the Policy) from any subsequent recovery by Plaintiff upon the occurrence of certain conditions (although

in no event will Trenton pay less than $500,000.00 total in settlement and Defense Costs, and will always have exhausted the Self Insured Retention).

Under New Jersey law, where an insurer wrongfully denies coverage to an insured, a consent judgment agreed to by the insured may be enforceable by the third-party against the insurer if the judgment is reasonable in amount and entered into in good faith, regardless of whether the third-party covenants to not collect upon the judgment against the insured. *See, e.g.*, *Griggs*, 443 A.2d at 173–74.

As agreed to by the parties, the Court's review and approval of the Settlement Agreement and Consent Judgment for reasonableness and good faith under *Griggs* is a necessary precondition to the Settlement Agreement and Consent Judgment. In particular, the Court is deeply familiar with the parties' claims and defenses, the vigorousness with which the parties have litigated this action, the parties' extensive efforts to settle this matter, the evidence marshalled to date, and how a reasonable jury or factfinder might value Plaintiff's action, including by way of comparison to other comparable verdicts or settlements, and the Court has functioned as an integral and neutral arbiter between the parties in the settlement discussions that have culminated in the submitted Settlement Agreement and Consent Judgment.

To be clear, Plaintiff does not request the Court's determination of whether Underwriters wrongfully denied coverage to Trenton. However, if, under New Jersey law, the Court finds that the Settlement Agreement and Consent Judgment

are reasonable, including in the amount of the Consent Judgment, and that the Settlement Agreement and Consent Judgment were entered into in good faith, Plaintiff respectfully requests that the Court approve the Settlement Agreement and enter the Consent Judgment attached to this Motion as Exhibit 1-A.[1]

WHEREFORE, Plaintiff respectfully requests that the Court approve the Settlement Agreement and enter the Consent Judgment as reasonable and entered in good faith under New Jersey law and *Griggs v. Bertram*, 443 A.2d 163 (N.J. 1982).

January 26, 2024

**LeVAN STAPLETON SEGAL COCHRAN LLC**

By: *John S. Stapleton*
    John S. Stapleton, ID 032622005
Four Greentree Centre
601 Route 73 N, Suite 303
Marlton, NJ 08053
856.259.3300
jstapleton@levanstapleton.com

**NASH PEREZ LLC**

By: *Jeffrey L. Nash*
    Jeffrey L. Nash
330 Market Street
Camden, NJ 08102
856.246.1022
jnash@nashperez.com

*Attorneys for Plaintiff Tyshon Edwards*

---

[1] As set forth in the attached Certificate of Service, this Motion is being served upon counsel for Underwriters.

9

# EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement ("**Agreement**") is effective as of the date of January 26, 2024 (the "**Effective Date**"), and is made by and between Tyshon Edwards ("**Edwards**") on the one hand and the City of Trenton, New Jersey ("**Trenton**"), on the other hand. Edwards and Trenton may be referred to herein individually as a "**Party**," and collectively, as the "**Parties**".

## BACKGROUND

**WHEREAS**, on or about September 29, 2020, Edwards filed a lawsuit against the Trenton and certain individuals of the City of Trenton Police Department, captioned *Edwards v. City of Trenton, et al.*, 3:20-cv-13552 (United States District Court, District of New Jersey) ("Litigation");

**WHEREAS**, Certain Underwriters at Lloyd's of London ("Underwriters") subscribe to Policy No. PK1021618 (the "Policy"), issued to the City of Trenton, NJ (the "City"), and Trenton sought coverage under the Policy regarding the Litigation;

**WHEREAS**, Underwriters denied coverage to Trenton regarding the Litigation;

**WHEREAS**, the Policy's limit of liability for the Law Enforcement Liability Coverage Section (Section VIII) is $3,000,000.00 each Occurrence and $6,000,000.00 Annual Aggregate of Liability, subject to a $500,000.00 Self Insured Retention (all capitalized terms having the same meaning as those used in the Policy);

**WHEREAS**, in addition to denying coverage under the Policy, Underwriters have contended that Underwriters' liability under the Policy would be further subject to a $500,000.00 corridor deductible pursuant to Endorsement No. 6 to the Policy ("Corridor Deductible"), but Trenton contends that such Corridor Deductible is inapplicable, unenforceable, and/or has been misconstrued by Underwriters;

**WHEREAS**, notwithstanding the denial of coverage by Underwriters, Trenton sought Underwriters' participation in a settlement of the Litigation;

**WHEREAS,** the United States District Court for the District of New Jersey ("Court") ordered Underwriters' counsel's appearance at a settlement conference on May 31, 2023, but such conference was continued to July 18, 2023, at the request of Underwriters' counsel;

**WHEREAS**, Underwriters' counsel appeared on July 18, 2023, at the Court's settlement conference, but such settlement conference was unsuccessful in resolving the Litigation;

**WHEREAS**, on August 17, 2023, Edwards submitted a time-limited demand to Underwriters and offered to settle the Litigation within the limits of the Policy, which demand expired on its own terms on August 24, 2023, at 12 p.m. (eastern), after Underwriters did not respond;

**WHEREAS**, Underwriters' counsel claimed on or about September 22, 2023, that he did not receive a copy of the August 17, 2023, time-limited demand letter, and Edwards thereafter renewed the time-limited demand on September 22, 2023, with terms set to expire on September 28, 2023, at 5 p.m. (eastern) if not accepted;

**WHEREAS**, Underwriters acknowledged receipt of the time-limited demand letter, but never responded to the demand, and the demand expired on its own terms on September 28, 2023, at 5 p.m. (eastern);

**WHEREAS**, by written letter dated December 5, 2023, Trenton informed Underwriters of its intention to settle the Litigation in a manner that would exhaust the Self Insured Retention and will involve liability to Underwriters under the Policy and for Underwriters' bad faith denial of coverage;

**WHEREAS**, Underwriters has not participated in a settlement of the Litigation;

**WHEREAS**, the Parties vigorously litigated the Litigation, including all claims and defenses asserted therein;

**WHEREAS**, Trenton and Edwards have agreed to settle the Litigation pursuant to the terms and conditions of this Agreement; and

**WHEREAS**, the Parties voluntarily and willingly enter into this Agreement.

**NOW, THEREFORE,** in consideration of the mutual covenants and promises contained herein, the Parties intending to be legally bound hereby agree as follows:

1. **Background.** The Background and all Recitals are incorporated by reference as if fully set forth herein.

2. **Consent Judgment.** Subject to approval of the Court for reasonableness and good faith under *Griggs v. Bertram* 443 A.2d 163 (N.J. 1982), the Parties shall enter a stipulated consent judgment in the form attached as Exhibit A. Should the Court determine that the Consent Judgment is unreasonable or lacking in good faith, this Agreement and the proposed Consent Judgment shall be null and void and shall not be admissible in any proceeding.

3. **Covenant of Limited Execution and Payment.** Edwards covenants to not execute upon the Consent Judgment directly against Trenton beyond $500,000.00, which sum equals the Self Insured Retention under the Policy, and Trenton agrees to pay to Edwards that sum of $500,000.00 within 30 days of the entry of the Consent Judgment, which shall be paid to the attorney trust account of LeVan Stapleton Segal Cochran LLC.

4. **Assignment of Rights.** To the fullest extent possible under the law, Trenton shall assign to Edwards all of Trenton's rights and claims under the Policy in any manner related to coverage for the Litigation and satisfaction of the Consent Judgment, including but not limited to claims regarding breach of contract and bad faith for, among other things, denying coverage under the Policy, refusing to settle, and refusing to indemnify Trenton ("Assignment"). Edwards shall

have sole discretion regarding the prosecution, litigation, and resolution of all such assigned rights and claims; however, Trenton agrees to cooperate in good faith with Edwards regarding any such prosecution and litigation of the same. This Assignment shall not be effective unless and until the Consent Judgment is entered by the Court, but upon such entry of the Consent Judgment, the Assignment shall become immediately effective without need of any further event.

5. **Corridor Deductible.** To the extent any court of a competent jurisdiction in a binding order finds the Corridor Deductible applicable and enforceable regarding Underwriters' liability to satisfy the Consent Judgment, the Corridor Deductible shall be deemed to have the Consent Judgment shall be deemed to have been partially satisfied by the Corridor Deductible and any liability Underwriters have to satisfy the Consent Judgment shall be reduced by the amount of the Corridor Deductible. In other words, in the event of such a finding of the enforceability of the Corridor Deductible, of the $5,000,000.00 Consent Judgment, $500,000.00 will have been satisfied by Trenton's payment to Edwards under section 3 above, $500,000.00 will have been satisfied by virtue of the finding of the enforceability of the Corridor Deductible under the terms of this section, and the Underwriters' liability to satisfy the Consent Judgment shall be reduced to $4,000,000.00 prior to any costs or fees associated with the prosecution of any such claims against Underwriters.

6. **Trenton's Defense Costs.** Trenton represents that it has incurred and paid reasonable Defense Costs, as that term is defined by the Policy, that should have eroded the Self Insured Retention of the Policy. If Edwards prevails in obtaining any recovery from Underwriters based on the Assignment, Edwards will reimburse to Trenton such Defense Costs to the extent Underwriters has not and does not reimburse Trenton for such Defense Costs, but only if:

(i)      through a final, non-appealable order, Edwards prevails in the argument that Underwriters must reimburse the Defense Costs to Trenton under Coverage Section VIII Law Enforcement Liability – Exclusion B of the Policy and Edwards actually recovers such Defense Costs from Underwriters;

(ii)     through a final, non-appealable order, Edwards prevails in the argument that the Corridor Deductible is not applicable or enforceable, and Edwards recovers amounts from Underwriters sufficient to reimburse Trenton for such Defense Costs; or

(iii)    Edwards reaches a monetary settlement with Underwriters regarding any assigned claims, in which event Edwards shall pay to Trenton 10% of the actual recovery from the settlement up to the sum of Trenton's Defense Costs.

In no event shall Trenton recover collectively from Underwriters and Edwards more than the total of the Defense Costs, and in no event shall the net total of Trenton's out-of-pocket expenses related to this matter be less than the $500,000.00 Self Insured Retention of the Policy. In other words, Trenton's payment to Edwards under section 3 above, plus its actually paid Defense Costs, minus any reimbursement received from Underwriters or Edwards for such Defense Costs or through the recovery set forth in this section, shall never be less than $500,000.00. It is the intention of this

section and the Agreement that Trenton will at all times fully satisfy and exhaust the Self Insured Retention.

7.     **Representations and Warranties.** Each of the Parties represents that, other than as set forth in this Agreement, he/it has not assigned to any person or entity not a party to this Agreement any of the claims, rights, or obligations that are the subject of this Agreement.

8.     **Advice of Counsel.** Each Party hereby represents that he/it has read this Agreement, has had the provisions fully explained by legal counsel, and is freely and voluntarily signing this Agreement upon advice furnished by such Party's legal counsel.

9.     **Binding Effect.** The terms of this Agreement are intended to be, and shall be, binding upon and inure to the benefit of the Parties hereto and their respective heirs, personal representatives, successors, assigns, attorneys, officers, directors, shareholders, agents, employees, insurers, and all other persons, parties or entities affiliated with or identified in interest with the said Parties.

10.     **Choice of Law/Interpretation of Agreement/Venue.** This Agreement shall be construed and enforced in accordance with the laws of the State of New Jersey, without regard to New Jersey's choice of law rules. This Agreement has been drafted by mutual agreement after negotiation with the participation of all Parties. The Parties agree, therefore, that no Party shall be deemed to have drafted this Agreement or any portion thereof, and that any ambiguity in the Agreement will not be construed against any Party on the basis that such Party drafted the subject language. Edwards and Trenton hereby consent to personal jurisdiction of the state and federal courts in the State of New Jersey for purposes of enforcing this Agreement, and waive any objections to personal jurisdiction or venue in those courts.

11.     **Notices.** All communications between the Parties that are required or contemplated by this Agreement shall be made in writing via email to the following persons:

      (i)     As to Edwards:

           John S. Stapleton
           LeVan Stapleton Segal Cochran LLC
           Four Greentree Centre
           601 Route 73 N, Suite 303
           Marlton, NJ 08053
           Email: jstapleton@levanstapleton.com

      (ii)     As to Trenton:

           J. Brooks DiDonato
           Parker McCay P.A.
           9000 Midlantic Drive, Suite 300

Mount Laurel, NJ 08054
Email: bdidonato@parkermccay.com

12. **Entire Agreement.** This Agreement sets forth the entire understanding between the Parties relating to the subject matter contained herein, there being no terms, conditions, warranties, or representations other than those contained in this Agreement. This Agreement fully supersedes any and all prior drafts, proposals, negotiations, agreements, or understandings between the Parties relating to the subject matter contained herein, and the Parties expressly agree that none of the foregoing shall be utilized in any manner in the construction or interpretation of this Agreement or any portion thereof in the event of a dispute arising hereunder. Any modifications of this Agreement, Schedules, or Exhibits, or any of their provisions, must be in writing and signed by the Parties affected thereby.

13. **Counterparts.** This instrument may be executed in counterparts, and any number of duplicate originals, all of which shall constitute one and the same instrument. The executed instrument may be delivered by facsimile or electronic mail. Counterparts and duplicate originals shall be deemed original instruments, and signatures contained on documents delivered by facsimile or electronic mail shall be deemed original signatures.

14. **Authority.** Each person executing this Agreement on behalf of each respective Party expressly warrants and represents that he/she is duly authorized to do so in a manner that is fully binding upon such Party.

\*   \*   \*

REST OF PAGE INTENTIONALLY LEFT BLANK

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year set forth below.

**Tyshon Edwards**

_____        Date: ___1/26/2024___

**City of Trenton**

By: _____        Date: _____

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year set forth below.

**Tyshon Edwards**

_____      Date: _____

**City of Trenton**

By: _____      Date: 1/26/24

A. Wesley Bridges
Low Director, City of Trenton

# **Exhibit A**

# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| TYSHON EDWARDS, | |
| Plaintiff, | Civ. A. No. 20-13552 |
| v. | |
| CITY OF TRENTON, | **Consent Judgment** |
| Defendant. | |

Plaintiff Tyshon Edwards and Defendant City of Trenton hereby consent to entry of judgment in this matter as follows:

Judgment shall be entered for Plaintiff on Count III of the Complaint in the amount of $5,000,000.00. Such sum is inclusive of any and all attorneys fees and costs allowable by law.

Plaintiff and Defendant City of Trenton stipulate that $0.00 of this judgment is attributable to punitive damages, statutory penalties, or fines, and that Defendant City of Trenton and its agents did not knowingly or intentionally violate or deprive Plaintiff of any rights protected by any federal, state, or local laws, or commit any acts not reasonably related to the execution and/or enforcement of the law, or commit any acts with the knowledge and intent to cause injury or damage or which could reasonably be expected to cause injury or damage.

All other claims versus Defendant City of Trenton are dismissed with prejudice.

Dated January 26, 2024

LeVAN STAPLETON SEGAL
COCHRAN LLC

By: *John S. Stapleton*
      John S. Stapleton
Four Greentree Centre
602 Route 73 N, Suite 303
Marlton, NJ 08503

CITY OF TRENTON

By: *Wesley Bridges*
      Wesley Bridges
319 East State Street
Trenton, NJ 08608
609-989-3011
wbridges@trentonnj.org

856-259-3300                                    *Counsel for Defendant, City of Trenton*
jstapleton@levanstapleton.com
*Counsel for Plaintiff Tyshon Edwards*


NASH PEREZ LLC

By:  *Jeffrey L. Nash*
        Jeffrey L. Nash
330 Market Street
Camden, NJ 08102
856.246.1022
jnash@nashperez.com
*Counsel for Plaintiff Tyshon Edwards*



        The Court having heard from the parties and having previously found [on the record on

_____ OR by order dated _____] that the parties' settlement agreement and the

terms of this Consent Judgment are reasonable and entered in good faith under *Griggs v. Bertram*

443 A.2d 163 (N.J. 1982), the Court hereby APPROVES this Consent Judgment.

IT IS SO ORDERED.


_____
The Honorable Douglas E. Arpert
United States Magistrate Judge

# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF NEW JERSEY

TYSHON EDWARDS,

         Plaintiff,

v.

CITY OF TRENTON,

         Defendant.

Civ. A. No. 20-13552-ZNQ-DEA

**DECLARATION OF JOHN S. STAPLETON**

I, John S. Stapleton, being duly sworn and deposed, upon personal knowledge, state as follows:

1.     I am a partner of the law firm LeVan Stapleton Segal Cochran LLC, and I am lead counsel to Plaintiff Tyshon Edwards in the above-captioned matter.

2.     On September 29, 2020, Plaintiff commenced this civil action (the "Litigation") against Defendants the City of Trenton ("Trenton") and certain individual members of the City of Trenton Police Department. *See* Complaint, Dkt. 1. The Complaint asserts various claims arising under federal and state law regarding, among other things, Plaintiff's allegation that his civil rights were violated when he was arrested on January 21, 2019, and subsequently jailed for a total of 212 days without lawful basis. All charges against Plaintiff in connection with that arrest were later dismissed.

3.     Since 2020, the parties have vigorously litigated this dispute. They engaged in substantial discovery, including numerous document requests under

Federal Rule of Civil Procedure 34, interrogatories under Federal Rule of Civil Procedure 33, requests for admissions under Federal Rule of Civil Procedure 36, depositions of certain parties including Plaintiff, and subpoenas to non-parties under Federal Rule of Civil Procedure 45, including but not limited to subpoenas served upon the New Jersey State Police and the Mercer County Prosecutor's Office.

4. The parties also met and conferred at length regarding discovery disputes in this action and appeared and participated in numerous discovery conferences conducted by the Court, which are reflected by numerous docket entries on the docket.

5. The parties also participated in numerous settlement meetings among themselves, as well as in settlement conferences conducted by the Court, which are reflected by numerous docket entries on the docket.

6. Certain Underwriters at Lloyd's of London ("Underwriters") subscribe to Policy No. PK1021618 (the "Policy"), issued to Trenton.

7. Notwithstanding the denial of coverage to Trenton by Underwriters, the parties and the Court solicited and welcomed Underwriters' participation in a settlement of the Litigation. For example, this Court ordered Underwriters' counsel's appearance at a settlement conference on May 31, 2023, which was continued to July 18, 2023, at the request of Underwriters' counsel. Underwriters' counsel

appeared on July 18, 2023, at the Court's settlement conference, but that settlement conference was unsuccessful in resolving the Litigation.

8.      On August 17, 2023, I submitted a time-limited demand to Underwriters and Plaintiff offered to settle the Litigation within the limits of the Policy, which demand expired on its own terms on August 24, 2023, at 12 p.m. (eastern), after Underwriters did not respond. Underwriters' counsel claimed on or about September 22, 2023, that he did not receive a copy of the August 17, 2023, time-limited demand letter, and Plaintiff thereafter renewed the time-limited demand on September 22, 2023, with terms set to expire on September 28, 2023, at 5 p.m. (eastern) if not accepted. Underwriters acknowledged receipt of the time-limited demand letter, but never responded to the demand, and the demand expired on its own terms on September 28, 2023, at 5 p.m. (eastern).

9.      During settlement negotiations, Plaintiff identified and produced information regarding numerous settlements and verdicts in cases concerning claims for pre-conviction, wrongful detentions without any major physical injuries. To approximate an apples-to-apples comparison for value, Plaintiff reduced the damages award in each case to a per diem rate based on number of days detained. When applying the per diem rates from such actions to Plaintiff's 212 days in jail, the average and median awards for such actions would be far in excess of the Consent Judgment (i.e., $5,000,000.00) submitted for the Court's approval here.

10.     Of particular note, while this action was pending, Hamilton Township, Trenton's immediately adjacent neighboring town, settled a wrongful arrest and 11-day detention suit for $950,000.00. If Plaintiff here obtained the same per diem rate, Plaintiff's award would be over $18,000,000.00. Hamilton's resolution was by way of settlement, and not a jury verdict, which very possibly could be a higher rate.

11.     Plaintiff produced the aforementioned analysis to the Court, Defendants' counsel, and counsel for Underwriters during settlement discussions.

12.     The Complaint also demands all attorneys' fees and costs recoverable under law. To date, Plaintiff's attorneys collectively have expended over 900 hours of attorney time on this action. I reasonably estimate that Plaintiff's attorneys would expend substantially more hours to litigate this action to verdict.

13.     In consultation with the Court during settlement conferences, the parties explored the possibility of resolving this action through a *Griggs* settlement, *see Griggs v. Bertram*, 443 A.2d 163 (N.J. 1982), whereby Trenton would consent to entry of judgment of a sum certain, assign to Plaintiff all interests it has against Underwriters, and Plaintiff would covenant to not execute upon the Consent Judgment against Trenton above a certain limit.

14.     On January 26, 2024, the parties executed the Settlement Agreement and corresponding Consent Judgment.

4

15.   As agreed to by the parties, the Court's review and approval of the Settlement Agreement and Consent Judgment for reasonableness and good faith under *Griggs* is a necessary precondition to the Settlement Agreement and Consent Judgment.

16.   In particular, the Court is deeply familiar with the parties' claims and defenses, the vigorousness with which the parties have litigated this action, the parties' extensive efforts to settle this matter, the evidence marshalled to date, and how a reasonable jury or factfinder might value Plaintiff's action, including by way of comparison to other comparable verdicts or settlements, and the Court has functioned as an integral and neutral arbiter between the parties in the settlement discussions that have culminated in the submitted Settlement Agreement and Consent Judgment.

17.   To be clear, Plaintiff does not request the Court's determination of whether Underwriters wrongfully denied coverage to Trenton.

18.   However, if, under New Jersey law, the Court finds that the Settlement Agreement and Consent Judgment are reasonable, including in the amount of the Consent Judgment, and that the Settlement Agreement and Consent Judgment were entered into in good faith, Plaintiff respectfully requests that the Court approve the Settlement Agreement and enter the Consent Judgment.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


January 26, 2024                                    *John S. Stapleton*
                                                   John S. Stapleton

# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF NEW JERSEY

TYSHON EDWARDS,

               Plaintiff,

v.

CITY OF TRENTON,

               Defendant.

Civ. A. No. 20-13552-ZNQ-DEA

**DECLARATION OF J. BROOKS DIDONATO**

I, J. Brooks DiDonato, being duly sworn and deposed, upon personal knowledge, state as follows:

1.     I am a partner of the law firm Parker McCay P.A., and I am lead counsel to Defendants Johnathon Cincilla, Nicholas Mahan, Eric Avalos, and Anthony Kubish in the above-captioned matter.

2.     I have also represented the City of Trenton concerning its interests in seeking insurance coverage regarding this Litigation.

3.     Since 2020, the parties have vigorously litigated this dispute. They engaged in substantial discovery, including numerous document requests under Federal Rule of Civil Procedure 34, interrogatories under Federal Rule of Civil Procedure 33, requests for admissions under Federal Rule of Civil Procedure 36, depositions of certain parties including Plaintiff, and subpoenas to non-parties under Federal Rule of Civil Procedure 45, including but not limited to subpoenas served upon the New Jersey State Police and the Mercer County Prosecutor's Office.

4.      The parties also met and conferred at length regarding discovery disputes in this action and appeared and participated in numerous discovery conferences conducted by the Court, which are reflected by numerous docket entries on the docket.

5.      The parties also participated in numerous settlement meetings among themselves, as well as in settlement conferences conducted by the Court, which are reflected by numerous docket entries on the docket.

6.      Certain Underwriters at Lloyd's of London ("Underwriters") subscribe to Policy No. PK1021618 (the "Policy"), issued to Trenton, and Trenton sought coverage under the Policy regarding the Litigation.

7.      The Policy's limit of liability for the Law Enforcement Liability Coverage Section (Section VIII) is $3,000,000.00 each Occurrence and $6,000,000.00 Annual Aggregate of Liability, subject to a $500,000.00 Self Insured Retention (all capitalized terms having the same meaning as those used in the Policy).

8.      Underwriters denied coverage to Trenton regarding the Litigation, in addition to issuing a reservation of rights, and refused to reimburse or indemnify Trenton under the Policy. Trenton reserved all rights to contest Underwriters' determinations.

9.     In addition to denying coverage under the Policy, Underwriters have contended that Underwriters' liability under the Policy would be further subject to a $500,000.00 corridor deductible pursuant to Endorsement No. 6 to the Policy ("Corridor Deductible"), but Trenton contends that such Corridor Deductible is inapplicable, unenforceable, and/or has been misconstrued by Underwriters.

10.     Notwithstanding the denial of coverage by Underwriters, the parties and the Court solicited and welcomed Underwriters' participation in a settlement of the Litigation. For example, this Court ordered Underwriters' counsel's appearance at a settlement conference on May 31, 2023, which was continued to July 18, 2023, at the request of Underwriters' counsel. Underwriters' counsel appeared on July 18, 2023, at the Court's settlement conference, but that settlement conference was unsuccessful in resolving the Litigation.

11.     Trenton privately sought to negotiate with counsel for Underwriters but was unsuccessful in ever obtaining Underwriters' contributions toward any resolution in this action.

12.     During settlement negotiations, Plaintiff identified and produced information regarding numerous settlements and verdicts in cases concerning claims for pre-conviction, wrongful detentions without any major physical injuries. Plaintiff produced the aforementioned analysis to the Court, Defendants' counsel, and counsel for Underwriters.

13.     In consultation with the Court during settlement conferences, the parties explored the possibility of resolving this action through a *Griggs* settlement, *see Griggs v. Bertram*, 443 A.2d 163 (N.J. 1982), whereby Trenton would consent to entry of judgment of a sum certain, assign to Plaintiff all interests it has against Underwriters, and Plaintiff would covenant to not execute upon the Consent Judgment against Trenton above a certain limit.

14.     By written letter dated December 5, 2023, Trenton informed Underwriters of its intention to settle the Litigation in a manner that would exhaust the Self Insured Retention and would involve liability to Underwriters under the Policy and for Underwriters' bad faith denial of coverage, and further encouraged counsel for Underwriters to contact counsel for Plaintiff directly. But Underwriters did not participate in a settlement of the Litigation.

15.     On January 17, 2024, Council for the City of Trenton voted and authorized the Law Department to enter the Settlement Agreement and execute the corresponding Consent Judgment.

16.     On January 26, 2024, the parties executed the Settlement Agreement and corresponding Consent Judgment.

17.     As agreed to by the parties, the Court's review and approval of the Settlement Agreement and Consent Judgment for reasonableness and good faith

4

under *Griggs* is a necessary precondition to the Settlement Agreement and Consent Judgment.

    I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


January 26, 2024                                                    *J. Brooks DiDonato*_____
                                                                   J. Brooks DiDonato

5

## **Certificate of Service**

I, John S. Stapleton, certify that on this date, I caused the foregoing Motion to be served upon all counsel of record through the Court's ECF system. In addition, I caused a copy of the foregoing Motion to be served upon the following:

### **Via Certified Mail and Email**

David L. Koury
BatesCarey LLP
191 N. Wacker, Suite 2400
Chicago, IL 60606
Direct 312.762.3226
dkoury@batescarey.com

*Counsel for Underwriters*

January 26, 2024                   *John S. Stapleton*
                                    John S. Stapleton