# **EXHIBIT 4**

2/9/2024 Lloyd's Motion to Intervene and Memorandum (Civil Rights Dkts. 67–68)

- o   1/13/2023 Koury letter to Claims Resolution / Jose Abo (Civil Rights Dkt. 68-3)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

TYSHON EDWARDS,                          :
                                     :
                          Plaintiff,  :     Case No. 3:20-CV-13552
                                     :
             v.                        :
                                     :
CITY OF TRENTON, MICHAEL                  :
TILTON, JOHNATHON CINCILLA,              :
NICHOLAS MAHAN, ERIC AVALOS,             :
ANTHONY KUBISH, and JOHN DOES 1-         :     **MOTION TO INTERVENE OF**
8,                                       :     **CERTAIN UNDERWRITERS OF**
                                     :     **LLOYD'S LONDON PURSUANT TO**
                         Defendants.  :     **F.R.C.P. 24**

PLEASE TAKE NOTICE that on February 20, 2024, or such date and time as counsel may be heard, Intervenor, Certain Underwriters of Lloyd's London ("Intervenor" or "Underwriters") shall move before the Court for an Order granting Underwriters to intervene in the above-referenced matter pursuant to Federal Rule of Civil Procedure 24, as set forth herein.

PLEASE TAKE FURTHER NOTICE that in support of this Motion, Intervenor will rely upon the accompanying Brief.

PLEASE TAKE FURTHER NOTICE that Intervenor requests oral argument and that this Motion be determined prior to Plaintiff, Tyshon Edwards's Motion for Approval of Settlement Agreement and Entry of Consent Judgment (ECF 62).

Respectfully submitted,

**MacMain Leinhauser PC**

Dated: <u>February 9, 2024</u>        By:    <u>*/s/ Brian H. Leinhauser*</u>
                                           Brian H. Leinhauser
                                           Brian C. Conley
                                           Attorney I.D. Nos. 038102006 / 129782014
                                           433 W. Market Street, Suite 200
                                           West Chester, PA 19382
                                           *Attorneys for Intervenor*

## **CERTIFICATE OF SERVICE**

I, Brian H. Leinhauser, Esquire, hereby certify that on this 9th day of February, 2024, a

copy of the foregoing was served upon the following via ECF notification:

Jeffrey L. Nash, Esquire
Cozen & O'Connor
Libertyview Building – Suite 300
457 Haddonfield Road
P.O. Box 5459
Cherry Hill, NJ 08002-2220
*Attorney for Plaintiff*

John S. Stapleton, Esquire
Levan Stapleton Segal Cochran LLC
Four Greentree Centre
601 Route 73 N, Suite 303
Marlton, NJ 08053
*Attorney for Plaintiff*

Rashaan Sharif Williams, Esquire
City of Trenton
319 East State Street
Trenton, NJ 08611
*Attorney for Defendant, City of Trenton*

Charles R.G. Simmons, Esquire
Simmons Law LLC
28 Washington Street
Suite 104
East Orange, NJ 07717
*Attorney for Defendant, Michael Tilton*

J. Brooks Didonato, Esquire
Parker, Mc Cay
9000 Midlantic Drive
Suite 300
P.O. Box 5054
Mount Laurel, NJ 08054
*Attorney for Defendants Cincilla, Mahan, Avalos and Kubish*

**MacMAIN LEINHAUSER PC**

Date: <u>February 9, 2024</u>      By:    <u>*/s/ Brian H. Leinhauser*</u>

                                               Brian H. Leinhauser
                                               Attorney I.D. No. 038102006
                                                 433 W. Market Street, Suite 200
                                               West Chester, PA 19382
                                               *Attorney for Intervenor*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TYSHON EDWARDS, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:20-CV-13552 |
| | : | |
| v. | : | |
| | : | |
| CITY OF TRENTON, MICHAEL | : | |
| TILTON, JOHNATHON CINCILLA, | : | |
| NICHOLAS MAHAN, ERIC AVALOS, | : | **BRIEF IN SUPPORT OF** |
| ANTHONY KUBISH, and JOHN DOES 1- | : | **INTERVENOR, CERTAIN** |
| 8, | : | **UNDERWRITERS OF LLOYD'S** |
| | : | **LONDON'S MOTION TO INTERVENE** |
| Defendants. | : | **PURSUANT TO F.R.C.P. 24** |

Intervenor, Certain Underwriters of Lloyd's London ("Underwriters"), by and through

their attorneys, MacMain Leinhauser PC, respectfully submit this Brief in Support of their

Motion to Intervene pursuant to Rule 24(a) of the Federal Rules of Civil Procedure.

## I.      INTRODUCTION AND PROCEDURAL POSTURE

On September 29, 2020, Plaintiff, Tyshon Edwards, initiated the above-referenced matter

by filing a Complaint against the City of Trenton, Michael Tilton, Johnathon Cincilla, Nicholas

Mahan, Eric Avalos, Anthony Kubish, and John Does 1-8 (ECF 1). Underwriters insures

Defendant, City of Trenton (the "City") under a Public Entity Package Policy ("Policy") in

connection with this litigation and, pursuant to the Policy, has no duty to defend, but instead only

a duty to indemnify the City for certain net losses arising from it that the City may become

"legally obligated to pay." Pursuant to the Policy, the City had and still has a duty to inform

Underwriters of the status of the litigation and any developments associated therewith, inclusive

of developments regarding settlement.

Though Underwriters was informed in early January 2024 that the City intended to settle

the case with Plaintiff, Underwriters' counsel outlined to Brooks DiDonato (defense counsel for

the individual Defendants Cincilla, Mahan, Avalos and Kubish, who nevertheless took the lead

on settling the matter for the City) in response that there were coverage issues to be discussed

and sorted out in connection with the Claim given the indemnity-only nature of the Policy, and

requested to speak to Mr. DiDonato. Underwriters was not informed that a settlement of the

instant litigation had been reached – or would be consummated – until Plaintiff filed a Motion

for Approval of Settlement and Entry of Consent Judgment (ECF 62), which includes a copy of a

Settlement Agreement executed by the City. If approved, Underwriters may be obligated to

indemnify the City. Failing to inform Underwriters ahead of the ultimate settlement of this

matter and crafting the settlement in a manner to compel coverage, the Motion to Approve

Settlement and Entry of Consent Judgment appears to be an attempt to avoid confronting the

coverage issues raised by Underwriters under the reservation of rights communication

transmitted on January 13, 2023. The City is attempting to avoid the coverage issues raised,

interfere with Underwriters' rights to seek declaratory relief under the Policy, and deflect

indemnity from the City to Underwriters without Underwriters' consent or approval.

Accordingly, in order to protect their interests in response to the instant fait accompli

settlement, Underwriters now timely moves for intervention pursuant to Rule 24(a) and

respectfully request that this Honorable Court grant the instant Motion to Intervene, approving

Underwriters as an intervenor in the instant litigation.

## II.    <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 24 permits a non-party to intervene either as of right

under Rule 24(a) or by permission under Rule 24(b). Underwriters respectfully moves to

intervene as of right pursuant to Rule 24(a), under which, on timely motion, intervention must be

granted to any party who has an interest relating to the property or transaction involved in the

lawsuit and where disposing of the action might impair or impede the movant's ability to protect

its interest. F.R.C.P. 24. Rule 24(a) states, in pertinent part:

> (a)  Intervention as of Right. Upon timely application, the court
> must permit anyone to intervene who:
>         (2) claims an interest relating to the property or transaction
> that is the subject of the action, and is so situated that disposing of
> the action may as a practical matter impair or impede the movant's
> ability to protect its interest, unless existing parties adequately
> represent that interest.

F.R.C.P. 24(a)(2).

The Third Circuit employs a four-factor test to determine an intervening party's right to

intervene under Rule 24(a). Specifically, intervention must be granted where there is (1) a timely

application for leave to intervene, (2) a sufficient interest in the underlying litigation, (3) a threat

that the interest will be impaired or affected by the disposition of the underlying action, and (4)

that the existing parties to the action do not adequately represent the prospective intervenor's

interests. *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005).

## III.     <u>LEGAL ARGUMENT</u>

### A.     <u>The Motion is Timely</u>

The timeliness of a motion to intervene is "determined from all the circumstances" in the

sound discretion of the trial court. *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir.

1982). In determining the circumstances of timeliness, the factors to consider include "(1) [h]ow

far the proceedings have gone when the movant seeks to intervene, (2) the prejudice which

resultant delay might cause to other parties, and (3) the reason for the delay." *Id*. The mere

passage of time is insufficient to render a motion to intervene untimely and the "critical inquiry"

is the stage of the proceedings and what proceedings of substance on the merits have occurred.

*Choike v. Slippery Rock Univ. of Pennsylvania*, 297 F.App'x 138, 141 (3d Cir. 2008).

In this case, the motion is timely because until such time as the Motion for Approval of Settlement was filed on January 26, 2024, Underwriters' interests had not been implicated and Underwriters were operating under the assumption that its insured, Defendant, the City, was protecting its interests in settlement negotiations with Plaintiff. Indeed, until the City inexplicably settled the case for $5 million, the City had conveyed Plaintiff's settlement demands, the latest of which was $1.2 million, and had counseled against acceptance, advising Underwriters that the value of case was less than $1 million. Critically, the recommended settlement values communicated to Underwriters did not eclipse the combined $500,000 self-insured retention and $500,000 Corridor Retention. As such, based upon the information provided, Underwriters interests were unlikely to be implicated and intervention was therefore unnecessary.

Moreover, there is no indication that any other party will be prejudiced by the intervention of Underwriters, nor by the timing of this Motion. To the contrary, the proposed settlement agreement reached between the Plaintiff and the City suggests each parties' awareness that Underwriters' rights would be implicated and explicitly contemplates further judicial intervention to determine Underwriters' involvement. *See* ECF 62 at p. 8-11 (relating to the City's assignment of rights against Underwriters and litigation related to the Corridor Retention). Intervention at this time, addressing the issues raised herein, not only is timely but also conserves resources for the parties and the Court.

**B.**    **Underwriters has a Sufficient Legal Interest to Intervene that is Threatened**

In order to satisfy the interest requirement of Rule 24(a)(2), the interest in the litigation must be "capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought" in the underlying litigation. *Kleissler v. United States Forest Service*, 157 F.3d

964, 972 (3d Cir. 1998). While it must be capable of definition, the Third Circuit cautions that

the analysis is not to be inflexible. *Id.* The intervening party must demonstrate that its interest is

related to the subject of the underlying proceeding. *Donaldson v. United States*, 400 U.S. 517,

531 (1971). The interest must be "cognizable," meaning that it cannot simply be an interest "of a

general and indefinite character." *Brody ex. Rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1116 (3d

Cir. 1992) (*quoting Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987)). However, the interest

need not be a legal interest, provided that the intervenor "will be practically disadvantaged by the

disposition of the action." As explained by the Third Circuit:

> [T]he polestar for evaluating a claim for intervention is always
> whether the proposed intervenor's interest is direct or remote. Due
> regard for efficient conduct of the litigation requires that
> intervenors should have an interest that is specific to them, is
> capable of definition, and will be directly affected in a
> substantially concrete fashion by the relief sought. The interest
> may not be remote or attenuated. The facts assume overwhelming
> importance in each decision.

*Kleissler*, 157 F.3d at 972.

Moreover, while a general economic interest – such as a third party's ability to recover in

a separate suit – does not normally rise to the level of a sufficient legal interest, sufficiency will

be found where a specific fund is at issue and that fund is the very property that is the subject of

the suit. *Treesdale*, 419 F.3d at 221 (*citing Mountain Top Condominium Assoc. v. Dabe Stabbert

Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995)).

In order to determine whether an intervenor's legal interest is threatened, the intervenor

must demonstrate that its legal interests "may be affected or impaired, as a practical matter, by

the disposition of the action." *Harris v. Pernsely*, 820 F.2d 592, 596 (3d Cir. 1987).

Underwriters' legal interest in the underlying litigation is evident in a number of ways

and is threatened by the proposed settlement and consent judgment. First, the proposed

settlement implicates a specific fund – the indemnity loss reserve payable by Underwriters for covered losses incurred by the City. The proposed Settlement Agreement and Consent Judgment between the City and Plaintiff would compel Underwriters to indemnify the City (indirectly through the assignment of rights to the Plaintiff) on a claim for which coverage may not exist on the liability purportedly consented to without regard to the Self-Insured Retention and Loss Corridor deductible. The proposed settlement seeks to limit the City's contribution to the settlement it negotiated, attempts to compel Underwriters to waive the Corridor Deductible, and brazenly seeks to bind Underwriters to a settlement payment to Plaintiff that was neither negotiated with Underwriters in good faith or even communicated to Underwriters. While the issue is monetary, it relates to a specific fund – the insurance policy covering the City – in which Underwriters has an interest (i.e., whether that fund will be impacted and/or disbursed). Accordingly, Underwriters has a specific and sufficient legal interest to intervene. *See Mountain Top*, 72 F.3d at 366.

Second, Underwriters has a sufficient and definite legal interest in avoiding further litigation in the nature of an anticipated bad faith claim under the Policy. The proposed settlement agreement assigns a purported, but meritless, bad faith claim against Underwriters.[1] Any bad faith claim would lack merit because Underwriters did not deny coverage but rather reserved its rights to deny coverage under certain provisions of the Policy (see, the January 13, 2023 Reservation of Rights Letter, attached hereto as Exhibit "A"). In fact, Underwriters never had a chance to "deny" coverage because the Policy at issue is a "Reimbursement" policy,

---

[1] Underwriters notes that the City has attempted to assign its rights to Plaintiff despite the fact that the General Policy Conditions of the Policy make clear that "[a]ssignment of interest under this Policy does not bind Underwriters unless Underwriters' consent is endorsed hereon." As noted, Underwriters has not consented to either the settlement reached, or the City's purported assignment of any rights under the Policy to Plaintiff by virtue of the settlement.

requiring the insured to request reimbursement for sums it contends are covered. This has not

happened. To the contrary, after reporting to Underwriters that Plaintiff's demand was $1.2

million, the City recommended against settlement in excess of $1 million as recently as

September 2023. Now, the City remarkably has consented to judgment against it in the amount

of $5 million, contingent on limiting the City's individual exposure to $500,000.00.

Although Underwriters asserts that such a claim is meritless and merely an effort to

coerce its reluctant acquiescence in the settlement, the threat of bad faith litigation itself,

notwithstanding potential exposure thereto, is a sufficient and definite legal interest. Unless

intervention is granted so that this Court has an opportunity to hear the information omitted from

Plaintiff's Motion for Approval (with attachments) and resolve the proposed settlement

accordingly, Underwriters will be confronted with litigation, including the costs, time and energy

expended to defend the same.

Third, the settlement seeks to bypass Underwriters and deprive it of its rights under the

Policy to evaluate and, if necessary, dispute whether there is coverage for the City's alleged loss

or seek declaratory judgment regarding its obligations under the Policy.

It is well settled that the proper construction of an insurance policy is a matter of law

determined in accordance with the Declaratory Judgment Act, N.J.S.A., 2A:16-50, et seq. *See In

re Ass'n of Trial Lawyers*, 549 A.2d 446 (App Div.), *cerif. denied*, 113 N.J. 660, 552 A.2d 180

(1988) (the statute "empowers the courts to declare rights, status and other legal relations to

afford litigants relief from uncertainty and insecurity.") The purpose of the statute is to "end

uncertainty concerning the legal rights and relations of parties before they have suffered

ineradicable damage or injury for which only a compensatory or coercive remedy can provide

redress." *Ibid*., *citing N.J. Ass'n for Retarded Citizens v. Human Services*, 89 N.J. 234, 242

(1982). Underwriters' right to enforce the Policy, and if necessary, seek declaratory relief to do so, are a sufficient and cognizable legal interest that compels intervention. *Cnty. Hall Ins. Co. v. Mt. View Transportation, LLC*, 2023 U.S. App.LEXIS 15009, at *4-5 (3d Cir., June 16, 2023) (finding that an assignment of rights and the potential for state-court declaratory relief altered the interest upon which the underlying court previously denied intervention).

Accordingly, for the foregoing reasons, Underwriters has a cognizable legal interest in the instant matter that is threatened by the proposed settlement and intervention is appropriate.

## C.     The Existing Parties do not Represent Underwriters' Interests

The final evaluation is whether the existing parties can act to appropriately represent the interests of Underwriters in this matter. Inadequacy of representation is sufficiently demonstrated "if the applicant shows that representation of his interest may be inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *see also Kleissler*, 157 F.3d at 974. In the instant matter, the conduct of the City, its inconsistent statements on the settlement value of this claim, and the assignment of claims against Underwriters, while insulating itself from collection on an admittedly disputed $500,000 Corridor of payment obligation is more than adequate information to demonstrate that the City is incapable of representing Underwriters' interests here. The City and its decision to advocate for this Settlement serves the interests of the City, but not Underwriters. As such, we request that the intervention sought herein be approved.[2]

---

[2] Underwriters reserves the right to argue the merits of the claims related to the Corridor, the appropriateness of the Settlement, and the applicability of its Reservation of Rights in a merits hearing to be held upon grant of its intervention in this matter. Nothing herein, including statements of representations by the City or Plaintiff are to be construed as adoption of those positions or waiver of any right by Underwriters.

IV.    <u>**CONCLUSION**</u>

For all the foregoing reasons, Underwriters requests that this Court approve the

Intervention, schedule a conference to address the merits of the issues presented before the

Court, and allow appropriate time for Underwrites to prepare for said hearing.


   Respectfully submitted,

**MacMain Leinhauser PC**

Dated: <u>February 9, 2024</u>     By:   <u>*/s/ Brian H. Leinhauser*        </u>
                Brian H. Leinhauser
                Brian C. Conley
                Attorney I.D. Nos. 038102006 / 129782014
                433 W. Market Street, Suite 200
                West Chester, PA 19382
                *Attorneys for Intervenor*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TYSHON EDWARDS, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:20-CV-13552 |
| | : | |
| v. | : | |
| | : | |
| CITY OF TRENTON, MICHAEL | : | |
| TILTON, JOHNATHON CINCILLA, | : | |
| NICHOLAS MAHAN, ERIC AVALOS, | : | |
| ANTHONY KUBISH, and JOHN DOES 1- | : | **ORDER** |
| 8, | : | |
| | : | |
| Defendants. | : | |

AND NOW, this _____ day of _____, 2024, upon consideration of

Intervenor, Certain Underwriters of Lloyd's of London's Motion to Intervene, and any response

thereto, it is hereby ORDERED and DECREED that the Motion is GRANTED. Intervenor,

Certain Underwriters of Lloyd's of London is granted party status in the above-captioned matter.


BY THE COURT


_____

## CERTIFICATE OF SERVICE

I, Brian H. Leinhauser, Esquire, hereby certify that on this 9th day of February, 2024, a copy of the foregoing was served upon the following via ECF notification:

Jeffrey L. Nash, Esquire
Cozen & O'Connor
Libertyview Building – Suite 300
457 Haddonfield Road
P.O. Box 5459
Cherry Hill, NJ 08002-2220
*Attorney for Plaintiff*

John S. Stapleton, Esquire
Levan Stapleton Segal Cochran LLC
Four Greentree Centre
601 Route 73 N, Suite 303
Marlton, NJ 08053
*Attorney for Plaintiff*

Rashaan Sharif Williams, Esquire
City of Trenton
319 East State Street
Trenton, NJ 08611
*Attorney for Defendant, City of Trenton*

Charles R.G. Simmons, Esquire
Simmons Law LLC
28 Washington Street
Suite 104
East Orange, NJ 07717
*Attorney for Defendant, Michael Tilton*

J. Brooks Didonato, Esquire
Parker, Mc Cay
9000 Midlantic Drive
Suite 300
P.O. Box 5054
Mount Laurel, NJ 08054
*Attorney for Defendants Cincilla, Mahan, Avalos and Kubish*

**MacMAIN LEINHAUSER PC**

Date: <u>February 9, 2024</u>     By:     <u>*/s/ Brian H. Leinhauser*          </u>
                                  Brian H. Leinhauser
                                  Attorney I.D. No. 038102006
                                  433 W. Market Street, Suite 200
                                  West Chester, PA 19382
                                  *Attorney for Intervenor*



David L. Koury
312.762.3226 Direct
dkoury@batescarey.com

January 13, 2023

**VIA E-MAIL**

Jose Abo
Claims Resolution Corporation, Inc.
323 S. Pitney Road, Suite 200
Galloway, NJ 08205
E-Mail: JAbo@crctpa.com

|     | Re: | Assured: | **City of Trenton, NJ** |
| --- | --- | --- | --- |
|     |     | Policy No.: | **PK1021618** |
|     |     | Policy Period: | **March 1, 2018 to July 1, 2019** |
|     |     | Matter: | **Tyshon Edwards v. City of Trenton, et al., Case No. 3:20-cv-13552 (U.S. District Court for the District of New Jersey)** |
|     |     | CRC File No.: | **16136** |
|     |     | Claim No.: | **1015692** |
|     |     | Our File No.: | **19143** |

Dear Mr. Abo:

As you know, we represent Certain Underwriters at Lloyd's of London ("Underwriters") that subscribe to the above-referenced Public Entity Package Policy, Policy No. PK1021618 (the "Policy"), issued to the City of Trenton, NJ (the "City"), in connection with the above-referenced matter. This letter supplements, and does not replace, all other correspondence Underwriters, or anyone on Underwriters' behalf, have issued to the City, including our letter to you dated September 30, 2020.

Please note that we are providing this letter to you in your capacity as the representative designated to receive such correspondence on behalf of all **ASSUREDS**[1] under the Policy. If that is incorrect, please so advise, and provide us with the correct contact information, and we will provide a copy of this letter to the proper representative(s).

As you know, on September 29, 2020, Plaintiff, Tyshon Edwards, filed a Complaint, styled *Tyshon Edwards v. City of Trenton, et al.*, Case No. 3:20-cv-13552, in the United States District Court for the District of New Jersey (the "Lawsuit"). As discussed below, there is no duty to defend the City or any **ASSURED** in connection with the Lawsuit under the Policy. Moreover, any duty of Underwriters to indemnify the City for the **ULTIMATE NET LOSS**, if at all, may arise only upon resolution of the litigation. After you review this letter, we are happy to discuss the matter with you at your convenience.

---

[1]     Terms in bold and all capital letters are defined in the Policy.



Jose Abo
Claims Resolution Corporation, Inc.
January 13, 2023
Page 2 of 6

## I.      FACTUAL BACKGROUND

Based on the information provided to Underwriters to date, we understand the facts associated with this matter are as set forth in our September 30, 2020 letter and below. Our September 30 letter outlined Mr. Edwards' January 20, 2020 letter and the claims set forth in Mr. Edwards' "Tort Claim for Damages."  Those facts and allegations are incorporated herein by reference.  The facts set forth below are alleged in the September 29, 2020 Complaint Mr. Edwards filed.  Nothing in this letter is intended to suggest that any of the allegations either set forth below or in our September 30, 2020 letter have any legal or factual merit.

On September 29, 2020, Mr. Edwards (hereafter, "Plaintiff") filed his Complaint against the City, Michael Tilton, Johnathon Cincilla, Nicholas Mahan, Eric Avalos, and Anthony Kubish.  In the Complaint, Plaintiff alleges that on January 21, 2019, Defendant police officers swarmed and seized Plaintiff despite him being legally parked on a public road.  After removing Plaintiff from the vehicle, Plaintiff alleges that the Detective Tilton advised him that he was under arrest due to drugs being found in the car.  However, Plaintiff also alleges that none of the Defendant police officers showed Plaintiff any evidence of drugs.  Plaintiff was cited for various drug charges regarding possession of heroin.

Plaintiff alleges that the police officers then falsified the police report to justify their false arrest of Plaintiff and falsified affidavits to the court to support a criminal complaint.  Due to Plaintiff being on parole, the new drug charges resulted in him being jailed for 212 days.  Plaintiff alleges that, months later, a subpoena brought to light video footage of the arrest which demonstrated that the police had lied about the traffic violation that led to Plaintiff's arrest.  The video was delivered to the prosecution, who subsequently dropped all charges.  Plaintiff alleges that, to the extent that Defendants claim a defense of relying on information from an anonymous tip or confidential information, such information provides no justification for their conduct.

Plaintiff alleges that all Defendants, including the City and its policymakers, acted willfully, recklessly, and with deliberate disregard for Plaintiff's rights.  Plaintiff also alleges that Defendants' actions and omissions shock the conscience, and are fraudulent, dishonest, unlawful, malicious, conducted in bad faith, and intended to injure in a manner unjustified by any government interest. Plaintiff asserts that the City has a custom, policy, practice, and pattern of allowing its agents, including Defendants, to engage in the wrongful conduct alleged.  Plaintiff further asserts that the City and its policymakers acted deliberately indifferent to an unreasonable risk that the rights of persons with whom the City's police officers come into contact with would be deprived.

In his Complaint, Plaintiff asserts the following six causes of action against Defendants: (1) 42 U.S.C. § 1983 (Violation of Fourth and Sixth Amendments); (2) 42 U.S.C. § 1983 (Violation of Substantive Due Process Rights); (3) 42 U.S.C. § 1983 (*Monell* Liability); (4) Violation of New Jersey Civil Rights Act (N.J.S.A. 10:6-2(c); (5) Violation of New Jersey Civil Rights Act (N.J.S.A. 10:6-2(c); and (6) Malicious Prosecution (Common Law).



Jose Abo
Claims Resolution Corporation, Inc.
January 13, 2023
Page 3 of 6

By way of relief, Plaintiff demands a judgment requesting that the court declare Defendants violated Plaintiff's civil and substantive due process rights, that the City is liable for the violation of Plaintiff's rights, that Defendants violated Plaintiff's rights, privileges, and immunities protected by the United States and New Jersey Constitutions, an award of all damages, including but not limited to compensatory, nominal, and punitive damages, penalties permitted by N.J.S.A. 10:6-2(e), attorneys' fees, costs, and such other relief as the court deems just and proper.

## II.    UNDERWRITERS' POLICY

The Policy subscribed to by Underwriters was issued to the City for the **PERIOD OF INSURANCE** of March 1, 2018 to July 1, 2019 (pursuant to Endorsement No. 10). The Policy provides Law Enforcement Liability coverage on an **OCCURRENCE** basis.[2] The Policy's limit of liability for the Law Enforcement Liability Coverage Section (Section VIII) is $3,000,000 each **OCCURRENCE** and $6,000,000 Annual Aggregate of Liability, subject to a $500,000 **SELF INSURED RETENTION**, and a $500,000 Corridor Retention pursuant to Endorsement No. 6 to the Policy. The Policy does not impose a duty to defend on Underwriters, only a duty to indemnify.

Please note that the pertinent provisions of the Policy are set forth in our September 30, 2020 letter to you. Those provisions are incorporated herein by reference. Coverage under the Policy is also subject to additional certain terms and conditions beyond those set forth in this letter and in our September 30, 2020 letter.

Below, we provide you with Underwriters' supplemental coverage position based on the information currently available to Underwriters.

## III.   UNDERWRITERS' SUPPLEMENTAL COVERAGE POSITION

As an initial matter, we note that Paragraph 11 of the General Policy Conditions provides that Underwriters have no duty to defend under the Policy, only a duty to indemnify. As such, Underwriters will not provide a defense to any **ASSURED** in connection with the Lawsuit.

Second, pursuant to the Policy's Law Enforcement Liability Coverage Section (Section VIII), we note that Underwriters are obligated to indemnify the **ASSURED** for all sums which the **ASSURED** "is legally obligated to pay by reason of the liability imposed upon the **ASSURED** by law for damage, direct or consequential, and expenses, all as more fully defined by the term **ULTIMATE NET LOSS**, on account of **PERSONAL INJURY** or **BODILY INJURY** or **PROPERTY DAMAGE** or the loss of use thereof suffered or alleged to have been suffered by any person(s) or organization(s) resulting from **LAW ENFORCEMENT ACTIVITIES** . . . arising out

---

[2]      The Policy provides various coverage sections. This letter focuses on coverage issues pertaining to the Law Enforcement Liability Coverage Section only, as this appears to be the only potentially applicable coverage section. If you believe that other sections potentially apply, please let us know immediately.



Jose Abo
Claims Resolution Corporation, Inc.
January 13, 2023
Page 4 of 6

of an **OCCURRENCE** during the **PERIOD OF INSURANCE**."[3]  Moreover, we note that the Law Enforcement Liability Coverage Section contains Exclusion B., which provides, in relevant part, that there is no coverage for:

> B.    Any **CLAIM** or **SUIT** for **BODILY INJURY, PROPERTY DAMAGE,** or **PERSONAL INJURY,** including any award of attorney's fees and costs, resulting from:
>
> > (a)    Any knowing and intentional violation of any subsection of Title 42 of the U.S. Code, including but not limited to 42 U.S.C § 1981 thru 42 U.S.C. §1989 and 42 U.S.C. §1997; or
> >
> > (b)    Any knowing and intentional deprivation of any rights protected under the United States Constitution or the Constitution of any State, Territory, or Protectorate of the United States; or
> >
> > (c)    Any act which is not reasonably related to the execution and/or enforcement of the law; or
> >
> > (d)    Any act committed with the knowledge and intent to cause **BODILY INJURY, PROPERTY DAMAGE,** or **PERSONAL INJURY,** or which could reasonably be expected to cause **BODILY INJURY, PROPERTY DAMAGE,** or **PERSONAL INJURY** unless the act of the **ASSURED** was reasonably necessary to lawfully prevent injury to persons or damage to property.

Here, we note that Counts I through III of the Complaint each involve Section 1983 claims that allege that Defendants' actions and omissions "shock the conscience, and are fraudulent, dishonest, unlawful, malicious, conducted in bad faith, and intended to injure in a manner unjustified by any government interest, and/or were conducted with reckless disregard."  With respect to Count III, Plaintiff alleges that Defendants "acted deliberately indifferent to an unreasonable risk that the rights of persons with whom Trenton police come into contact would be deprived."  Similarly, Counts IV and V of the Complaint allege that the **ASSUREDS** violated Plaintiff's rights under the United States and New Jersey Constitutions, and the New Jersey Civil Rights Act.  Additionally, Count VI of the Complaint asserts that the legal proceedings brought against Plaintiff by Defendants "were instituted with malice, without probable cause, caused harm to Mr. Edwards, and were terminated in Mr. Edwards' favor."  Therefore, Underwriters must

---

[3]    The term **OCCURRENCE** means "an accident or happening or event or a continuous or repeated exposure to conditions with results in **BODILY INJURY**, **PROPERTY DAMAGE**, [or] **PERSONAL INJURY** . . . during the **PERIOD OF INSURANCE**."  As noted in our September 30, 2020 letter, it appears that this matter involves an **OCCURRENCE**.  That said, Underwriters must reserve their rights to deny coverage with respect to whether an **OCCURRENCE** is involved here, and whether the Policy's Law Enforcement Liability Coverage Section is triggered.



Jose Abo
Claims Resolution Corporation, Inc.
January 13, 2023
Page 5 of 6

reserve their rights, including the right to deny coverage for the Lawsuit, pursuant to Exclusion B. of the Law Enforcement Liability Coverage Section.

Third, Exclusion H. of the Law Enforcement Liability Coverage Section precludes coverage for "[a]ny **CLAIM** arising from **WRONGFUL ACTS** except as provided under this Section for Discrimination or Violation of Civil Rights arising out of **LAW ENFORCEMENT ACTIVITES**." To the extent the Lawsuit arises from **WRONGFUL ACTS** that do not constitute Discrimination or Violation of Civil Rights arising out of **LAW ENFORCEMENT ACTIVITES**, Underwriters reserve their rights to deny coverage under Exclusion H.

Fourth, we note that the term **ASSURED** includes not only the **NAMED ASSURED**, but also "any past, present or future officials; members of boards or commissions; and trustees, directors, officers, volunteers, or employees of the **NAMED ASSURED** while acting within the scope of their duties as such." Underwriters reserve the right to deny coverage to the extent than any purported **ASSUREDS** were not acting within the scope of their duties.

Fifth, General Policy Exclusion A. precludes coverage for any "[l]oss or damage caused by, or resulting from fraudulent or dishonest acts committed by the **ASSURED** whether working alone or with others, except as covered in **Coverage Section VII Crime**." Again, in his Complaint, Plaintiff alleges that Defendants' actions and omissions shock the conscience, and are fraudulent, dishonest, unlawful, malicious, conducted in bad faith, and were intended to injure Plaintiff in an unjustified manner. As such, Underwriters reserve the right to deny coverage under General Policy Exclusion A.

Sixth, Underwriters reserve their rights to deny coverage under the definition of **ULTIMATE NET LOSS** to the extent that any payment for any judgment or acts is deemed uninsurable by law, including punitive damages.

Seventh, to the extent it is later determined that there is any coverage under the Policy, Underwriters reserve rights on the basis that the Tort Claim and the Lawsuit involve both covered and uncovered matters, or covered and uncovered parties. Specifically, we understand that Plaintiff may have a separate theory of liability against the City that is not alleged in the Complaint. Accordingly, Underwriters must reserve their rights to an appropriate allocation under the terms of the Policy and New Jersey law.

Eighth, the Policy contains an "Other Insurance" provision at Condition 15 of the General Policy Conditions. To the extent, the City or any other **ASSURED** has any other insurance which may apply, Underwriters reserve their rights pursuant to Condition 15.

Please understand that there may be other Policy provisions that apply to this matter, and Underwriters do not waive and expressly reserve, their right to state additional issues/defenses that may affect coverage.



Jose Abo
Claims Resolution Corporation, Inc.
January 13, 2023
Page 6 of 6

## IV.     RESERVATION OF RIGHTS / REQUESTS FOR INFORMATION

For the reasons set forth above, Underwriters have no duty to defend the City or any other **ASSURED** in connection with the Lawsuit.  Also, there is no obligation to indemnify any **ASSURED** until the $500,000 **SELF INSURED RETENTION** and the $500,000 Corridor Retention has been satisfied.

We ask that the City keep us apprised of all developments in the Lawsuit.  To the extent you have not provided them, we reiterate the requests for information contained within our September 30, 2020 letter to you.  We also ask that you provide us with any additional transcripts of depositions of any of the parties to the Lawsuit.  (We note we have already received from you the transcripts of the depositions of Plaintiff and Detective Mahan.)  Please consider the foregoing requests to be standing requests and provide any additional information as it becomes available.  If you have any questions regarding any of the requests, please let us know so that we can arrange a call as soon as possible.

Underwriters do not waive any of their rights under the Policy, and by virtue of the matters discussed herein, Underwriters do not intend to waive any of their other coverage defenses, nor shall Underwriters be estopped from asserting any applicable defense.  This reservation includes, but is not limited to, the right to seek a judicial declaration of Underwriters' rights and defenses as expressed herein.  Underwriters continue to expressly reserve their rights to state additional reasons why coverage does not exist for this matter under the Policy and/or amend this letter to address additional coverage issues under the Policy.

If you have any questions or concerns regarding Underwriters' coverage position set forth above, please let us know.

Very truly yours,

David L. Koury

cc:     J. Brooks DiDonato, Esq. (via e-mail only)

Marc Board, Riverstone (via e-mail only)

3095681