# <u>EXHIBIT 6</u>

2/16/2024 Plaintiff's Brief in Opposition to Motion to Intervene by Lloyd's

(Civil Rights Dkt. 71)

# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF NEW JERSEY

TYSHON EDWARDS,

        Plaintiff,

v.

CITY OF TRENTON,

        Defendant.

Civ. A. No. 20-13552- DEA

**Motion Date: March 4, 2024**

### Plaintiff's Brief in Opposition to Motion to Intervene By Certain Underwriters of Lloyd's of London

**LeVAN STAPLETON SEGAL COCHRAN LLC**
John S. Stapleton, ID 032622005
Four Greentree Centre
601 Route 73 N, Suite 303
Marlton, NJ 08053
856.259.3300
jstapleton@levanstapleton.com

**NASH PEREZ LLC**
Jeffrey L. Nash
330 Market Street
Camden, NJ 08102
856.246.1022
jnash@thenashlawgroup.com

*Attorneys for Plaintiff Tyshon Edwards*

# Table of Contents

I.    Introduction.................................................................................1

II.   Background...............................................................................2

III.  Argument ................................................................................3

      A.    Underwriters' Interests in this Liability Action are Only Contingent, and Such Interests are Not Impaired as Underwriters May Litigate Their Positions in a Separate Coverage Action. ...................................3

      B.    Underwriters' Motion to Intervene is Untimely. ..................................8

      C.    Underwriters' Motion Fails to Comply With Rule 24(c)...................14

      D.    Underwriters Had Yet Another Opportunity to Provide Coverage, But Did Not. .......................................................14

      E.    Nothing in Underwriters' Motion Counters the Reasonableness and Good Faith of the Settlement Agreement and Consent Judgment......15

IV.  Conclusion .................................................................17

# Table of Authorities

## Cases

*Castracane-Sedlac v. Mason*, No. CV 20-6080-KMW,
  2021 WL 4710513 (D.N.J. Oct. 8, 2021) ........................................................3, 8

*Cay Divers, Inc. v. Raven*,
  812 F.2d 866 (3d Cir. 1987) ...............................................................4

*CE Design Ltd. v. King Supply Co.*,
  791 F.3d 722 (7th Cir. 2015) ......................................................... 6, 10

*CPL (Linwood), LLC v. Rossetti Roofing, Inc.*,
  No. CV 09-6228-RMB-KMW, 2010 WL 11570374 (D.N.J. July 28, 2010) ....3, 8

*Deskevich v. Spirit Fabs, Inc.*,
  No. 4:20-CV-01387, 2021 WL 880429 (M.D. Pa. Mar. 9, 2021) ............... 4, 8, 10

*Harris v. Pernsley*,
  820 F.2d 592 (3d Cir. 1987) ...............................................................1

*IMO Indus. Inc. v. Transamerica Corp.*,
  437 N.J. Super. 577, 101 A.3d 1085 (App. Div. 2014) ........................................11

*In re Fine Paper Antitrust Litig.*,
  695 F.2d 494 (3d Cir. 1982) ...............................................................8, 9

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*,
  419 F.3d 216 (3d Cir. 2005) ...............................................................4

*Travelers Indem. Co. v. Dingwell*,
  884 F.2d 629 (1st Cir. 1989) ................................................... passim

## Rules

Fed. R. Civ. P. 24(a)(2) ...............................................................1

Fed. R. Civ. P. 24(c) ...............................................................14

Local Civ. Rule 7.1(f)(1) ...............................................................14

## I.    Introduction

The Motion to Intervene filed by Certain Underwriters of Lloyd's of London ("Underwriters"), Dkts. 67–68, should be denied.

Underwriters move to intervene as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure. Underwriter Br. at 2–3. They do not seek to intervene under Rule 24(a)(1) or Rule 24(b) regarding permissive intervention.

To intervene as of right under Rule 24(a)(2), Underwriters must satisfy *all* four of the following elements: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987).

Underwriters' Motion fails to meet this standard. At most, it identifies a contingent interest that is insufficient to support intervention. Case law throughout the country, including this Court, expressly holds that an insurer that does not concede coverage and issues a reservation of rights (as Underwriters have done here) has only a contingent interest in a liability case against its insured that is insufficient to support intervention under Rule 24(a)(2). *See infra*, at 3–5. Further, under clear case law, this analysis does not change when an insured negotiates a consent judgment that limits the ability of the injured party to execute against the insured

and provides an assignment of rights to the injured party to execute against the insurer. *See infra*, at 5–7. As Underwriters are adamant that they reserve their rights to deny coverage, they have no basis to intervene. Nor will any interest Underwriters have be impaired under Rule 24(a)(2) as Underwriters may litigate their positions in a separate coverage action.

Underwriters' Motion should also be denied for the separate reason that the request to intervene is exceedingly untimely and prejudicial to the parties. Underwriters' Motion was filed nearly 3.5 years into the litigation, seeks to litigate new issues of coverage and relitigate issues of liability that the parties have compromised after great expenditure of resources and time with the substantial assistance of the Court, and has unduly delayed seeking to protect its supposed interests regarding an exposure about which it has known for years.

For these and other deficiencies identified below, Plaintiff respectfully submits that Underwriters' Motion to Intervene should be denied.

## II.    Background

Plaintiff respectfully incorporates the recitation of facts in Plaintiff's Motion for Approval of Settlement Agreement and Entry of Consent Judgment. *See* Dkt. 62. Additional facts responsive to Underwriters' Motion to Intervene are referenced in the Argument section below.

## III.    Argument

### A.    Underwriters' Interests in this Liability Action are Only Contingent, and Such Interests are Not Impaired as Underwriters May Litigate Their Positions in a Separate Coverage Action.

Underwriters appear to offer two interests supposedly supporting intervention: (i) that it may later have a duty to indemnify any consent judgment reached by Trenton; and (ii) that it would prefer to litigate its position that there is no coverage under the Policy. Underwriters Br. at 5–7.

Underwriters' Motion ignores the legion of caselaw holding that where an insurer contests coverage potentially owed to an insured (whether by a reservation of rights or otherwise), the insurer's interest in the liability phase of a case is too contingent and remote to support intervention. *See, e.g.*, *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 632–33, 639–40 (1st Cir. 1989) (affirming denial of insurers' motion to intervene to oppose entry of consent judgment between the insured and plaintiffs where insurers had issued reservations of rights); *Castracane-Sedlac v. Mason*, No. CV 20-6080-KMW, 2021 WL 4710513, at *3 (D.N.J. Oct. 8, 2021) (citing *Dingwell* approvingly and denying insurer motion to intervene where insurer reserved rights); *CPL (Linwood), LLC v. Rossetti Roofing, Inc.*, No. CV 09-6228-RMB-KMW, 2010 WL 11570374, at *2 (D.N.J. July 28, 2010) (same);

*Deskevich v. Spirit Fabs, Inc.*, No. 4:20-CV-01387, 2021 WL 880429, at *2 (M.D. Pa. Mar. 9, 2021) (same).[1]

This law "reflect[s] the well-established policy that an insurer who reserves the right to deny coverage cannot control the defense of a lawsuit brought against its insured by an injured party." *Dingwell*, 884 F.2d at 639 (citing *Cay Divers, Inc. v. Raven*, 812 F.2d 866, 870 (3d Cir. 1987) (holding that Lloyds' decision to "reserve[e] the right to contest coverage . . . renounced control of the litigation and thereby thrust the responsibility for the litigation wholly upon the insured and its counsel")).

Here, Underwriters' Motion concedes that it delivered a reservation of rights letter to Trenton and that it still reserves its rights to deny coverage. Underwriters' Br. at 6 ("Underwriters did not deny coverage but rather reserved its rights to deny

---

[1]    *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216 (3d Cir. 2005) (cited but not discussed in Underwriters' Brief at 3 & 5) affirmed the denial of intervention to injured parties that sought to intervene in a coverage dispute between the insured and insurer while the injured parties simultaneously litigated the tort action. *Cnty. Hall Ins. Co., Inc. v. Mountain View Transportation, LLC*, No. 22-2397, 2023 WL 4044605, at *2 (3d Cir. June 16, 2023) (cited in Underwriters' Brief at 8) similarly does not support intervention and the conflation of liability and coverage actions. In *County Hall Insurance*, the Third Circuit vacated a district court's denial of an injured plaintiff's motion to intervene in a coverage action because, while the appeal was pending, the *separate* tort action versus the insureds was resolved, and the plaintiff obtained a judgment against the insureds and an assignment of rights to pursue the carrier.

4

coverage under certain provisions of the Policy").[2] Moreover, Underwriters disclaims and does not assert any duty or right to defend the action; instead, they repeatedly state any duty they have is solely to indemnify. *Id.*

The fact that an insured that has received a reservation of rights (or outright denial of coverage) from its insurer seeks to settle a liability action pursuant to a consent judgment that may be recoverable in whole or in part only against a non-party insurer does not suddenly solidify an insurer's contingent interest into one that supports intervention. As *Dingwell* explains:

> The manner in which the lawsuit between the insured and the injured party is resolved does not affect the preceding analysis. The insurers' interest remains contingent regardless of the fact that the settlement agreement provided that the resulting judgment could not be enforced against [defendant] personally. The alleged collusiveness of the settlement agreement may well be relevant in deciding whether the insured has breached its obligations under the policy or in deciding whether the consent judgment is binding on the insurer, but those substantive issues of insurance law are not before us today. The proper place to raise them, it seems to us, is during an action to determine whether the claim is covered by the policy or during an action to enforce the consent judgment against the insurer.

---

[2]     This statement brings Underwriters' candor into question. Despite asserting to the Court now that it "did not deny coverage," Underwriters expressly stated to Trenton's counsel on April 18, 2023: "As set forth in Underwriters' January 13, 2023 coverage position letter, Underwriters do not believe coverage exists for this matter." Dkt. 70, 2/16/2024 Certification of J. Brooks DiDonato ("DiDonato Cert."), Ex. B. Regardless, Underwriters' motion unmistakably asserts that it reserved rights, and therefore, squarely renders its interest in this matter as contingent and insufficient to support intervention.

*Dingwell*, 884 F.2d at 639–40.

Similarly, in a case of very similar procedural posture, the Seventh Circuit Court of Appeals expressly rejected an insurance carrier's argument that it should have been permitted to intervene. *CE Design Ltd. v. King Supply Co.*, 791 F.3d 722 (7th Cir. 2015) (Posner, J.). In *CE Design*, the insurers sought to intervene after the plaintiffs and insured signed a settlement agreement but before the district court approved it. *Id.* at 724. The settlement was for $20,000,000.00 of which only 1% could be executed against the insured, with the remainder subject to an assignment of claims against the insurers. *Id.* The Court held that the motion to intervene was untimely (as discussed more *infra*) and, even if it had been timely, the interest presented was contingent. Elaborating on this "alternative but more important holding," Judge Hamilton stated in concurrence:

> The premise of these insurers' motion to intervene, whether timely or not, is that insurers who might later be found to have breached their coverage contract need to intervene to protect themselves from a settlement they might be required to pay without having participated in the deal. The insurers say they are either entitled or should be permitted to join the underlying tort suit to try to derail a settlement that their insured has reached to try to save it from the worst consequences of the insurers' breach.
>
> The district court here correctly rejected that premise. Insurers gain an interest in an underlying tort suit—and require protection from a settlement in that case—if and only if they lose the coverage issue (typically in a separate suit) and are therefore on the hook to indemnify the insured.

*Id.* at 727–28 (Hamilton, J., concurring).

6

Underwriters' second and third supposed interests are the same: they seek to derail this litigation by litigating its coverage positions within this case. Underwriters' Br. at 6–7. Underwriters argue that they have an interest in "avoiding further litigation in the nature of an anticipated bad faith claim under the Policy" and because the settlement supposedly "seeks to bypass Underwriters and deprive it of its rights under the Policy to evaluate and, if necessary, dispute whether there is coverage for the City's alleged loss or seek declaratory judgment regarding its obligations under the Policy." *Id.*

In rejecting the same arguments in *Dingwell*, the First Circuit held, "The problem with the . . . potential interest—that there is no coverage or that whatever coverage exists has been waived—is that it is not related to the subject matter of the action between the [insured] and the [plaintiffs]. This lawsuit involves the apportionment of tort liability, not the respective rights and obligations of an insured and his insurers under their insurance policy." *Dingwell*, 884 F.2d at 640.

Likewise, this action involves Plaintiff's claims of liability against the City of Trenton, not coverage obligations between Underwriters and Trenton. Underwriters are free to litigate such coverage positions in separate litigation and there is no dispute that they have an adequate forum to do so in the state and/or federal courts of New Jersey. But, just as this Court has expressly rejected other attempts by insurers to airdrop declaratory judgment coverage disputes into the middle of the

7

action regarding the insured's liability, the Court should reject Underwriters' attempt to do so here. *E.g.*, *Castracane-Sedlac*, 2021 WL 4710513, at *3 ("UFCC does not argue that it will be unable to resolve the coverage issues in a separate declaratory judgment action so it cannot argue that any alleged interest would be impaired by disposition of this action."); *CPL (Linwood), LLC*, 2010 WL 11570374, at *2 (same);[3] *see also Deskevich*, 2021 WL 880429, at *3 (rejecting an insurer's attempt to "intervene solely to show why it should be removed from the case" and stating it "would serve only to distract from the primary issues at hand," especially where "an adequate forum" exists for the insurer "to pursue its coverage dispute").

### B. Underwriters' Motion to Intervene is Untimely.

Even if Underwriters' alleged interests supported intervention (which they do not), Underwriters' Motion is untimely. "The timeliness of a motion to intervene is 'determined from all the circumstances' and, in the first instance, 'by the [trial] court in the exercise of its sound discretion.' We must affirm a denial of intervention based on lack of timeliness unless we find an abuse of discretion." *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982) (citations omitted). The Third

---

[3] Underwriters' argument that the Settlement Agreement and Consent Judgment impair Underwriters' rights and arguments regarding coverage is unsupported in its Motion and unsupportable in fact. Nothing in the Settlement Agreement or Consent Judgment purports to waive any rights for Underwriters. Indeed, Plaintiff's Motion for Approval specifically states, "To be clear, Plaintiff does not request the Court's determination of whether Underwriters wrongfully denied coverage to Trenton." Mot. for Approval, at 8.

Circuit has identified at least "three factors to aid evaluation of the timeliness issue—
'(1) How far the proceedings have gone when the movant seeks to intervene, (2)
[the] prejudice which resultant delay might cause to other parties, and (3) the reason
for the delay.'" *Id.* (citations omitted).

This action started in September 2020. *See* Dkt. 1. After approximately 3.5
years, the only parties to the litigation, with significant aid by the Court, have
compromised to execute a settlement agreement and proposed stipulated judgment
regarding liability. If the Court grants the Motion for Approval, this action stands to
conclude in a matter of days. Underwriters seek to intervene to undo the parties' and
the Court's extensive efforts so Underwriters may litigate issues of liability,
including apparently to litigate that Trenton engaged in intentional and fraudulent
conduct that supposedly would enable the Underwriters to justify a denial of
coverage. *See* Dkt. 68-1 (Underwriters' reservation of rights letter identifying
purported coverage issues).[4] The parties are clearly prejudiced by a sudden proposed
extension of this litigation to litigate new coverage issues (which may be litigated in
a separate coverage action regardless) and relitigate issues of liability, which have
been litigated for nearly 3.5 years.

---

[4]     If Underwriters were to succeed in demonstrating that Trenton engaged in
intentional and fraudulent conduct, that would *increase* the chances of an even
higher judgment. Such a position appears to be in direct conflict with and prejudicial
to Underwriters' insured, Trenton.

As *CE Design* holds, if Underwriters truly thought it had a protectable interest in this litigation, "[T]hey should have moved to intervene at the outset of the litigation, not nearly three years later, when the settlement had been negotiated and was about to be presented to the district court for approval. *At that late stage the only object of the intervention could be to block the settlement and put the . . . suit back to where it had been [three years ago]*. So gratuitous an extension of a multi-year litigation should not be encouraged." *CE Design Ltd.*, 791 F.3d at 726 (emphasis added); *see also Deskevich*, 2021 WL 880429, at *3 ("It seems to the Court that permitting West Bend to intervene solely to show why it should be removed from the case would serve only to distract from the primary issues at hand.")

Underwriters' argument that whatever reason they had to seek to intervene only ripened when they were served with Plaintiff's Motion for Approval is without merit. As an initial matter, Underwriters has always been able to conduct its own exposure analysis of the litigation. Indeed, Underwriters' first reservation of rights letter of September 30, 2020 (issued the day after the Complaint was filed), specifically noted Plaintiff's notice of tort claim identifying damages as in excess of $20,000,000.00. *See* DiDonato Cert., Ex. A.

Further, Underwriters has long been aware that, during the course of litigation, any settlement or adverse verdict would implicate Underwriters' liability under the

Policy.[5] For example, on July 13, 2023, counsel for Underwriters, Mr. Koury, participated in a settlement conference conducted by the Court, which was initially delayed at his request. While Underwriters offered no assistance toward settlement at the conference, Underwriters were on notice that any resolution of this action would implicate the Policy. Underwriters did not seek to intervene.

On August 17, 2023, Plaintiff communicated a written demand directly to Underwriters to settle within the Policy limits at $2,800,000.00 and such demand was capable of immediate acceptance. Plaintiff renewed the demand on September 22, 2023, when counsel for Underwriters claimed he never received the first letter.[6] Underwriters never accepted the offer (or even counteroffered). Again, Underwriters did not intervene. Underwriters' Motion ignores these facts, although the time-

---

[5]     Underwriters' argument that it only ever considered its liability implicated by a resolution above $1 million misapprehends its own Policy. The first $500,000.00 paid by Defendants in defense costs and/or a judgment fully erodes the Self Insured Retention. The other $500,000.00 that Underwriters argue is Trenton's responsibility (which is disputed) is a Corridor Deductible. Under New Jersey law, as a deductible, Underwriters "has the liability and defense risk from the beginning" of that level. *IMO Indus. Inc. v. Transamerica Corp.*, 437 N.J. Super. 577, 622, 101 A.3d 1085, 1111 (App. Div. 2014) ("A SIR differs from a deductible in that a SIR is an amount that an insured retains and covers before insurance coverage begins to apply. . . . In contrast, a deductible is an amount that an insurer subtracts from a policy amount, reducing the amount of insurance. With a deductible, the insurer has the liability and defense risk from the beginning and then deducts the deductible amount from the insured coverage.").

[6]     Rejection of a time-limited demand within Policy limits may expand a recalcitrant carrier's potential liability to the portions of a subsequent judgment in excess of such limits. In any coverage litigation, Underwriters, of course, will have the right to argue its liability is limited to its Policy limits.

limited demand letters are noted in the Motion for Approval and the Settlement

Agreement.

Further, on December 5, 2023, Mr. DiDonato specifically informed Mr.

Koury of Trenton's intention to settle the action in a manner that would exhaust the

Self Insured Retention and involve liability to Underwriters under the Policy:

> Certain Underwriters at Lloyd's of London ("Underwriters") that
> subscribe to Policy No. PK1021618 (the "Policy"), issued to the
> City of Trenton, NJ (the "City"), has denied coverage to the City
> regarding the above-referenced litigation, including refusing to
> defend or indemnify the City. At other times, Underwriters has
> purported to reserve all rights and defenses under said policy. At
> no[] time has it ever offered to provide the coverage owed under
> that Policy.
>
> In light of same, the City has no obligation to inform
> Underwriters regarding the status of the matter. Nevertheless,
> this letter is to inform you that the City intends to settle the
> litigation with Plaintiff and that the Ultimate Net Loss resulting
> from the settlement will exhaust the Self Insured Retention and
> will involve liability to Underwriters under the Policy and for
> Underwriters' bad faith denial of coverage.
>
> If Underwriters wishes to finally participate in the settlement at
> this time, I encourage you to immediately contact Plaintiff's
> counsel, Mr. John Stapleton, directly at
> jstapleton@levanstapleton.com and (856) 272-3603.[7]

DiDonato Cert., Ex. F. Mr. Koury did not respond to Mr. DiDonato, and

Underwriters did not seek to intervene. *Id.* The Underwriters' Motion ignores this

---

[7]     The undersigned, John Stapleton, certifies that he was not contacted by Mr.
Koury on December 5, 2023, or anytime thereafter.

fact, although it too is identified in the Motion for Approval and the Settlement Agreement.[8]

Underwriters' Motion obliquely refers to a communication from Mr. Koury to Mr. DiDonato in January 2024 stating that Mr. Koury wanted to discuss coverage issues, as if this were the first instance Underwriters considered the possibility that its insured might assign rights to Plaintiff. Underwriters' Br. at 1. Underwriters do not attach the communications, or any affidavit or declaration. What Underwriters do not tell the Court is that Mr. Koury contacted Mr. DiDonato by email on January 9, 2024. Mr. DiDonato responded that same day, and among other things, specifically informed Mr. Koury "to feel free to call." DiDonato Cert., Ex. E. Mr. Koury did not call Mr. DiDonato. *See* Dkt. 70 at 4.

In sum, even if Underwriters had a protectable interest in this liability action, Underwriters' Motion is exceptionally untimely as it was not filed until nearly 3.5 years into the litigation, seeks to litigate new issues of coverage and relitigate issues of liability that the parties have compromised after great expenditure of resources and time with the substantial assistance of the Court, and has unduly delayed seeking to protect its supposed interests regarding an exposure about which it has known for years.

---

[8]     Well before December 5, 2023, Mr. DiDonato also informed Mr. Koury of the possibility that Trenton might explore a settlement with Plaintiff that would include an assignment of rights. DiDonato Cert., Ex. D.

### C. Underwriters' Motion Fails to Comply With Rule 24(c).

Under Rule 24(c) of the Federal Rules of Civil Procedure, "The motion [to intervene] must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c); *see also* Local Civ. Rule 7.1(f)(1).

Underwriters' Motion attaches no such pleading.

### D. Underwriters Had Yet Another Opportunity to Provide Coverage, But Did Not.

Plaintiff served the Motion for Approval upon non-party Underwriters, but that by no means justifies Underwriters' intervention. First, as acknowledged in *Dingwell*, where an insurer "admits that the claim is covered by the policy in question," its interest will no longer be too contingent and intervention may be justified.[9] But, here, Underwriters is on full notice of the Settlement Agreement and Consent Judgment, and it still declined to concede coverage. Second, Underwriters' counsel has claimed at times that he has not received communications sent to him. Service of the Motion for Approval by certified mail dispels any subsequent

---

[9] "There can be no dispute that an insurer has a direct interest in a lawsuit brought by an injured party against its insured *when the insurer admits that the claim is covered by the policy in question*. When the insurer offers to defend the insured but reserves the right to deny coverage, however, the insurer's interest in the liability phase of the proceeding is contingent on the resolution of the coverage issue." *Id.* at 638 (emphasis added).

argument by Underwriters that it had no prior notice of the Settlement Agreement or Consent Judgment before they became effective.[10]

### E. Nothing in Underwriters' Motion Counters the Reasonableness and Good Faith of the Settlement Agreement and Consent Judgment.

As a final matter, Plaintiff addresses certain implications of Underwriters' Motion that the proposed Settlement Agreement and Consent Judgment is unreasonable or lacking in good faith between the parties that executed it.

First, despite impliedly calling into question the proposed resolution reached by the parties with substantial assistance by the Court after nearly 3.5 years of litigation, Underwriters' Motion conspicuously offers no proposed resolution or value of the matter for the Court's consideration.

Second, Underwriters' Motion seeks to argue that it has the right to deny coverage on the grounds of certain Policy exclusions, such as intentional and fraudulent conduct. *E.g.*, Underwriter Br. at 6–7 & Ex. A at 3–5. However, the presence of such conduct would only *increase* the damages exposure for tort liability. By way of example only, if, as they propose to do, Underwriters intervened in this action, blocked the Settlement Agreement and Consent Judgment, and then

---

[10]    Underwriters misstate the effect of provisions in the Policy regarding any rights to consent to settlements or the assignment of rights by the insured. Regardless, Underwriters will have the ability to argue its interpretations of such Policy terms in any coverage action.

15

demonstrated to a jury that Defendant engaged in intentional or fraudulent conduct to the point that Policy exclusions applied, a jury could then very well award Plaintiff not just $5,000,000.00 (or more) in compensatory damages, but also punitive damages that multiply upon that sum. This argument by Underwriters does not undercut—*it reinforces*—the reasonableness of the proposed Settlement Agreement and Consent Judgment.

Third, while Plaintiff refutes Underwriters' Motion's unsworn, unsupported, incomplete, and misleading statements of prior settlement discussions, the fact is that even the firmest of offers are extinguished when they are rejected. Facts and circumstances change, assessments are updated. The Court, Plaintiff, and Trenton all invited Underwriters' participation in settlement discussions, with Trenton essentially begging for Underwriters to contribute in any form while expressly emphasizing the peril in which failure to settle would put both Trenton and Underwriters. Underwriters are clear now, as they have been clear before, they have zero interest in participating in a settlement. Underwriters were free to reject any and all attempts to compromise, but to claim Plaintiff is thereafter limited in recovery by prior attempts to compromise is not credible.

Fourth, the Settlement Agreement and Consent Judgment is a true compromise. Plaintiff initially sought Trenton's consent to a higher judgment of

$9,500,000.00 million.[11] After negotiating, Plaintiff and Trenton agreed upon $5,000,000.00 as a fair valuation. Plaintiff and Trenton both accepted the terms as a compromise and as the best each could obtain from the other to resolve this liability case at this juncture.[12]

## IV. Conclusion

For foregoing reasons, Plaintiff respectfully submits that the Court should deny Underwriters' Motion to Intervene.

Respectfully submitted,

**LeVAN STAPLETON SEGAL COCHRAN LLC**

February 16, 2024

By: /s/ *John S. Stapleton*
       John S. Stapleton, ID 032622005

---

[11]    As shown in the analysis previously provided to the Court, all parties, and Underwriters, a $9.5 million consent judgment would have been 52% of the per-day-incarcerated rate paid by Trenton's neighbor, Hamilton Township, in a settlement in 2020. $5.0 million is just 27% of the rate Hamilton paid. When adjusting for the substantial inflation the United States has experienced since 2020 (approximately 19%), the percentage drops even lower.

[12]    Underwriters misconstrues the Settlement Agreement. For example, they argue the Settlement Agreement "attempts to compel Underwriters to waive the Corridor Deductible." Underwriters Mot. at 6. Far from it, the Settlement Agreement notes that if Plaintiff fails to demonstrate that the Corridor Deductible is inapplicable or unenforceable then Plaintiff's ability to recover on the Consent Judgment automatically is limited by an additional $500,000.00, thus still operating as a deductible under New Jersey law. *E.g.*, *IMO Indus. Inc.*, 101 A.3d at 1111 ("With a deductible, the insurer has the liability and defense risk from the beginning and then deducts the deductible amount from the insured coverage"). Regardless, if Underwriters still think there is an issue with this provision, they are free to litigate it in a separate coverage action.

Four Greentree Centre
601 Route 73 N, Suite 303
Marlton, NJ 08053
856.259.3300
jstapleton@levanstapleton.com

**NASH PEREZ LLC**

By: /s/ *Jeffrey L. Nash*
    Jeffrey L. Nash
330 Market Street
Camden, NJ 08102
856.246.1022
jnash@thenashlawgroup.com

*Attorneys for Plaintiff Tyshon Edwards*

## Certificate of Service

I, John S. Stapleton, certify that on this date, I caused the foregoing document be served upon all counsel of record through the Court's ECF system. In addition, I caused a copy of the foregoing document to be served upon the following by electronic mail:

### Via Email

Brian H. Leinhauser
MacMain Law Group, LLC
433 W. Market Street
Suite 200
West Chester, PA 19382
bleinhauser@macmainlaw.com

Adrian T. Rohrer
David L. Koury
BatesCarey LLP
191 N. Wacker, Suite 2400
Chicago, IL 60606
Direct 312.762.3226
arohrer@batescarey.com
dkoury@batescarey.com

*Counsel for Underwriters*

February 16, 2024                    *John S. Stapleton*
                                      John S. Stapleton