**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TYSHON EDWARDS, | : |
| | : |
| *Plaintiff*, | : |
| | : Case No. 3:24-cv-06029-ZNQ-JBD |
| v. | : |
| | : |
| CERTAIN UNDERWRITERS AT | : |
| LLOYD'S, LONDON, SUBSCRIBING TO | : |
| POLICY NO. PK1021612, LLOYD'S | : |
| SYNDICATE 2987, | : |
| | : |
| *Defendant*. | : |

<u>**REPLY IN SUPPORT OF MOTION TO**</u>
<u>**COMPEL ARBITRATION AND STAY PROCEEDINGS IN LIEU OF AN ANSWER**</u>

Defendant, Certain Underwriters at Lloyd's, London Subscribing to Policy No. PK1021612, Lloyd's Syndicate 2987 ("Underwriters"), by and through its undersigned counsel, submits this Reply in Support of its Motion to Compel Arbitration and Stay Proceedings in Lieu of an Answer.

**I.    ARGUMENT**

    **A.    The Policy Contains a Valid Agreement to Arbitrate.**

Edwards correctly notes that the Arbitration Provision in the Policy provides as follows:

> **Arbitration:** In the event the **ASSURED** and Underwriters are unable to agree as to the amount recoverable by the **ASSURED** from Underwriters under the terms and conditions of this Policy, each party shall name a competent and disinterested arbitrator, and the two so chosen shall, before proceeding further, appoint a competent and disinterested umpire. The arbitrators together shall calculate the indemnity due, and failing to agree shall submit their differences to the umpire.
>
> The award in writing, duly verified by any two, shall determine the points in question. Both parties shall pay the costs of their arbitrators and equally pro rate the cost of the umpire. The **ASSURED'S** portion of such fee does not accrue to the **ULTIMATE NET LOSS**.

The decision by the arbitrators shall be binding on Underwriters and the **ASSURED**, and that judgment may be entered in any court of competent jurisdiction.

[See **Exhibit 1** to Motion to Compel, at pg. 15 of 100].

Underwriters inadvertently misquoted the arbitration provision that is in the Policy at issue in its Motion.  The Arbitration Provision noted above is the correct provision from the Policy, and the above-quoted Arbitration Provision is the provision that should control here.  However, Underwriters' error in citing to an incorrect Arbitration Provision does not change the ultimate analysis here, which is that it is undisputed that the Policy itself contains a valid, enforceable provision that requires arbitration under the FAA.[1]

### B.    Edwards' Claims Fall within the Scope of the Policy's Arbitration Provision.

Notwithstanding, Edwards continues to assert that the determination of whether the assignment between the City and Edwards is "binding" upon Underwriters is an issue that cannot itself be subject to arbitration, as it goes to jurisdictional issues involving the arbitration panel

---

[1]    The provision Underwriters mistakenly cited states in relevant part that:

**ARBITRATION**: In the event the **ASSURED** and the Underwriters are unable to agree as to the amount necessary to rebuild, repair or replace the damaged or destroyed property or the actual amount of indemnity to be paid, each party shall name a competent and disinterested arbitrator, and the two so chosen shall, before proceeding further, appoint a competent and disinterested umpire. The arbitrators together shall calculate the indemnity due, and failing to agree, shall submit their differences to the umpire.  *** [*See* Doc. 10-1, at pg. 2 of 14].

The actual Arbitration Provision in the Policy is functionally identical, and states in relevant part that:

**Arbitration:** In the event the **ASSURED** and Underwriters are unable to agree as to the amount recoverable by the **ASSURED** from Underwriters under the terms and conditions of this Policy, each party shall name a competent and disinterested arbitrator, and the two so chosen shall, before proceeding further, appoint a competent and disinterested umpire.  The arbitrators together shall calculate the indemnity due, and failing to agree shall submit their differences to the umpire.  *** [*See* **Exhibit 1** (Doc. 10-2) to Underwriters' Motion to Compel, at pg. 15 of 100].

itself, citing *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 107 (3d Cir. 2000) (noting that allowing arbitrators to determine their own jurisdiction is not permitted).

Edwards continues to ignore that Underwriters has not challenged that the City and Edwards actually entered into an assignment agreement (the "Assignment Agreement") as part of the settlement reached in the Underlying Lawsuit. Nor has Underwriters disputed in its Arbitration Demand that Edwards has now sought indemnity from Underwriters under the Policy as an "assignee" given that Assignment Agreement. Underwriters continues to acknowledge that an Assignment Agreement clearly exists here between the City and Edwards. But, Underwriters has asserted in its Arbitration Demand that coverage is precluded for the City under the Policy because the City "improperly assigned its claim for coverage under the Policy to Edwards, in violation of the Policy's terms and conditions regarding assignment." *See* **Exhibit 3**, ¶83. Because Underwriters was not asked to consent to the City assigning any rights to Edwards under the Policy, as required under Paragraph 3 of the General Policy Conditions to the Policy (the "Anti-Assignment Provision"), the City breached a condition precedent under the Policy, and the assignment therefore may be found by the arbitration panel to not actually bind Underwriters and afford coverage to Edwards ***even though*** there is again no despite that the City and Edwards itself clearly intended for the assignment to occur. That is not an issue of contract formation, but instead an issue as to whether the City's actions in forming the very contract at issue breached a term and condition of the Policy.

*Sandvik* itself shows the above is not a distinction without a difference. In *Sandvik*, one of the parties to a contract that contained an arbitration provision, Advent, asserted it could not be bound by the contract because the agent that signed the contract lacked authority to do so. Advent nevertheless moved to compel arbitration under an arbitration agreement in the contract.

The other party to the contract, Sandvik, objected and argued the existence of the contract at issue that contained the arbitration provision needed to be addressed by a court, and not by the arbitration panel itself.  The Third Circuit agreed, recognizing that "[a]llowing the District Court to pass on the question whether the arbitration agreement is valid when the party asserting the right to arbitrate denies the broader agreement comports with contract law principles."  *See Sandvik*, 220 F.3d at 107.  However, again, the Third Circuit also specifically recognized in *Sandvik* that under the *Prima Paint* doctrine, when a party seeks to "avoid" or "rescind" a contract – not challenge the very existence of a contract – that question remains arbitrable.  *See Sandvik*, 220 F.3d at 106-07 (citing *Prima Paint Corp. v. Flood & Conklin Manufacturing, Co.*, 388 U.S. 395 (1967)).  In other words, there is a difference between whether an underlying contract is merely voidable, which Underwriters argues is the case here, and whether it is void and never existed at all.  Here, Underwriters' argument is clearly that it has the right to "avoid" the Agreement given the City's breach of the Policy's Anti-Assignment Provision, meaning the Assignment Agreement is merely voidable, and not that the contract between the City and Edwards never properly existed at all, which would render it void *ab initio*.

Nor does *Field Intelligence Inc. v. Xylem Dewatering Solutions Inc.*, 49 F.4th 351 (3d Cir. 2022) warrant a different conclusion.  There, the Third Circuit determined the question of whether a 2013 contract with an arbitration clause was superseded by a 2017 contract between the same parties that did not have an arbitration clause was an issue that had to be determined by the court rather than by the arbitrators.  *See Id.* at 357.  Unlike the Assignment Agreement at issue here, the Third Circuit recognized in *Field Intelligence* that the supersession challenge placed "the parties' mutual assent directly at issue."  *Id.*  Here, there are no "formation" issues with respect to the Assignment Agreement that places the City's and Edwards' "mutual assent"

at issue.  The actual issue is instead whether the Policy's Anti-Assignment Provision precludes coverage for the City (and by extension Edwards as the City's assignee under the Agreement) given that the City did not secure Underwriters' consent before entering into the Assignment Agreement.  Again, the issue goes to whether Underwriters actually has an obligation to provide coverage under the Policy following the City's assignment of its rights to Edwards given the City's breach of the Anti-Assignment Provision, and not whether a contract was actually entered into between the City and Edwards that was intended to assign to Edwards any rights and obligations the City had under the Policy.  It did and does exist, and the actual parties to it clearly intended for it to bind the City and Edwards as the signatories to the Agreement.  *Compare Sandvik*, 220 F.3d at 106-07 ("Mindful of the doctrine announced in *Prima Paint,* which did not consider a situation in which the *existence* of the underlying contract was at issue, we draw a distinction between contracts that are asserted to be "void" or non-existent, as is contended here, and those that are merely "voidable," as was the contract at issue in *Prima Paint,* for purposes of evaluating whether the making of an arbitration agreement is in dispute"); *Continental Cas. Co. v. Staffing Concepts, Inc.*, 2011 WL 7459781(M.D. Fla. Dec. 20, 2011) (finding *Prima Paint* doctrine did not apply where question was whether assignment agreement ever existed because evidence suggested that the agreement had not been signed by the party).

Nor is this a situation where Underwriters is attempting to "eat-cake-and-have-it-too." Underwriters was clearly never a party to the Assignment Agreement between the City and Edwards.  But, even though Underwriters was not a signatory to the agreement and was never asked to consent to its execution, there is nevertheless no real dispute that the City and Edwards entered into the contract and clearly intended for the City to assign all of its rights under the Policy to Edwards pursuant to the agreement.  Nor has there been any suggestion by

Underwriters (or anyone else) that the City's agent did not actually have authority to act for the City when the agent signing the Assignment Agreement. However, by virtue of the Agreement, Edwards then stepped into the shoes of the City as an assignee in relation to pursuing coverage under the Policy. *See Medtronic AVE, Inc. v. Advanced Cardiovascular Systems, Inc.*, 247 F.3d 44, 60 (3d Cir. 2001), quoting *Citibank, N.A. v. Tele/Resources, Inc.*, 724 F.2d 266, 269 (2d Cir.1983) ("'[a]n assignment does not modify the terms of the underlying contract. It is a separate agreement between the assignor and the assignee which merely transfers the assignor's contract rights, leaving them in full force and effect as to the party charged ***'.") That means Edwards ***is*** required to arbitrate its coverage dispute with Underwriters as a purported assignee of the City under the Policy, including with respect to whether any breach of the Anti-Assignment Provision has occurred, as the City would clearly have to arbitrate any dispute it had with Underwriters under the Policy as well.

The dispute between Edwards and Underwriters going forward is now simply whether the assignment can actually bind Underwriters to provide coverage to Edwards as an assignee given the City's breach of a condition of the Policy, and in turn whether such a breach now precludes coverage under the Policy. While Edwards asserts in this action that the Anti-Assignment Provision of the Policy should not apply under New Jersey law, that is ***not*** an issue that actually goes to the issue of whether the Assignment Agreement actually "exists," and whether the coverage disputes between the parties should be arbitrated, but instead goes to the ultimate merits of Underwriters' coverage position with respect to whether it can be bound to provide coverage by virtue of the City's actions in failing to secure Underwriters' consent before assigning its rights to another party.

In fact, the Assignment Agreement between the City and Edwards is a contract that Edwards would undoubtedly assert remains in full force and effect until it is decided Underwriters cannot be bound by the agreement by virtue of the application of the Anti-Assignment Provision.  Accordingly, the issue of whether the City actually breached a condition precedent by violating the Anti-Assignment Provision of the Policy is a question that should be left to the arbitrators, and not this Court.  *See Large v. Conseco Finance Servicing Corp.*, 292 F. 3d 49, 55-56 (1st Cir. 2002) (where it was undisputed that the agreement at issue actually existed, but was argued to be void and rescinded by the lender, the agreement was considered to remain in force until an arbitrator decided if the conditions to support rescission had been satisfied).[2]

In other words, Underwriters is not challenging whether the Assignment Agreement entered into between Edwards and the City actually exists between those parties.  Underwriters recognizes that the City *did* assign its rights to Edwards, and that Edwards now asserts that he is an assignee under the Policy given the existence of the Settlement Agreement Edwards reached with the City.  Instead, Underwriters has asserted that it has no duty to indemnify Edwards as an assignee of the City because the City breached the Policy's Anti-Assignment Provision.

Though Edwards suggests the dispute at issue here falls outside of the scope of the Policy's Arbitration Provision, the Provision itself makes clear that arbitration is required "[i]n the event the **ASSURED** and Underwriters are unable to agree as to the amount recoverable by

---

[2]    While Edwards dismisses the case as merely an unpublished decision, Underwriters again note a similar scenario was specifically addresses and analyzed under the *Prima Paint* doctrine in *Neff v. Portfolio Recovery Associates, LLC*, 2021 WL 4958690, at *4-5 (W.D. Penn. Oct. 26, 2021).  There, the question of whether assignment agreement was void under Pennsylvania law still had to be arbitrated under *Prima Paint* severability doctrine.  The Assignment Agreement between the City and Edwards remains in effect, and Edwards *is* an assignee of the City's rights under the Policy *unless* it is determined in the arbitration that the Assignment Agreement "does not bind" Underwriters because the City did not seek Underwriters' consent for the assignment.

the **ASSURED** from Underwriters under the terms and conditions of this Policy." As Edwards notes, the Assignment Agreement between the City and Edwards became an effective agreement between those two parties by its own terms when Judge Alpert entered the Consent Judgment based upon Edwards' Motion to Approve. [Doc. 1, ¶ 44.] Again, the Assignment agreement clearly exists, and no one is disputing that it exists. Instead, Underwriters has asserted that it is ultimately not bound to provide coverage to Edwards as an assignee, despite the existence of the Agreement, because the City breached a condition precedent to coverage under the Policy. That is a question regarding Underwriters' indemnity obligations, and ***not*** a jurisdictional issue for this Court to decide, even in light of *Sandvik*.

Nor was Underwriters required to draft the Arbitration Provision at issue differently simply because other syndicates issuing policies through the Lloyd's insurance market have utilized differently-phrased arbitration provisions. There is nothing ambiguous about the current Arbitration Provision where it makes clear that arbitration is to occur "[i]n the event the **ASSURED** and Underwriters are unable to agree as to the amount recoverable by the **ASSURED** from Underwriters under the terms and conditions of this Policy." The Anti-Arbitration Provision is simply a term and condition of the Policy, and is within the scope of what the Arbitration Provision is intended to address. How other arbitration provisions are phrased is irrelevant where the provision at issue is unambiguous here as to what the scope or arbitration is intended to be. *See Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J. 231, 238 (2008), quoting *Progressive Cas. Ins. v. Hurley*, 166 N.J. 260, 272-73 (2001) ("In the absence of an ambiguity, a court should not 'engage in a strained construction to support the imposition of liability' or write a better policy for the insured than the one purchased").

## II.    CONCLUSION

For all of the foregoing reasons, the Court should grant Underwriters' motion and issue an order: (1) compelling Plaintiff to arbitrate his claim in accordance with the Policy; and (2) staying this action in its entirety pending arbitration.

Dated:  August 27, 2024                    Respectfully submitted,

                                           /s/ Adrian T. Rohrer

                                           Adrian T. Rohrer (Admitted *Pro Hac Vice*)
                                           **BATES CAREY LLP**
                                           191 N. Wacker
                                           Suite 2400
                                           Chicago, IL 60606
                                           (312) 762-3100

                                           **BRIAN H. LEINHAUSER**
                                           ID 038102006
                                           Email: bleinhauser@macmainlaw.com

                                           **MacMAIN LEINHAUSER PC**
                                           433 W. Market Street
                                           Suite 200
                                           West Chester, PA 19382
                                           (484) 318-7106

                                           ATTORNEYS FOR CERTAIN UNDERWRITERS AT
                                           LLOYD'S, LONDON, SUBSCRIBING TO POLICY NO.
                                           PK1021612, LLOYD'S SYNDICATE 2987

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 27th day of August, 2024, the foregoing *Reply in Support of Underwriters' Motion to Dismiss or to Compel Arbitration and Stay Proceedings* was electronically filed with the Clerk of the Court using the CM/ECF system, and notice of this filing will be sent to the parties by operation of the Court's electronic filing system.

**MacMAIN LEINHAUSER PC**

Date: <u>August 27, 2024</u>                    By:     */s/ Brian H. Leinhauser*
Brian H. Leinhauser
NJ Attorney I.D. No. 038102006
433 W. Market Street, Suite 200
West Chester, PA 19382
*Attorney for Certain Underwriters at Lloyd's, London, Subscribing to Policy No. PK1021612, Lloyd's Syndicate 2987*