**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **TYSHON EDWARDS**, <br><br> Plaintiff, <br><br> v. <br><br> **CERTAIN UNDERWRITERS AT LLOYD'S LONDON, SUBSCRIBING TO POLICY NO. PK1021612, LLOYD'S SYNDICATE 2987**, <br><br> Defendant. | Civil Action No. 24-6029 (ZNQ) (JBD) <br><br> **OPINION** |

**QURAISHI, District Judge**

      **THIS MATTER** comes before the Court upon a Motion to Compel Arbitration and Stay Proceedings filed by Defendant, Certain Underwriters at Lloyd's London Subscribing to Policy No. PK1021612, Llyod's Syndicate 2987 ("Underwriters" or "Defendant").  (ECF No. 10.) Plaintiff Tyshon Edwards ("Plaintiff") instituted this action by filing a Complaint for declaratory judgment ("Compl.," ECF No. 1) against Defendant shortly after the approval of an underlying settlement agreement and entry of consent judgment between Plaintiff and the City of Trenton. The settlement conferred an assignment of Trenton's rights under its insurance policy (the "Policy") with Defendant to Plaintiff.  Defendant now seeks to challenge that assignment by way of arbitration.  Defendant filed a Memorandum in Support of its Motion.  ("Moving Br.," ECF No. 10-1).  Plaintiff filed an Opposition ("Opp'n Br.," ECF No. 17), to which Defendant submitted a reply.  ("Reply Br.," ECF No. 18.)

1

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1] For the reasons set forth below, the Court will **DENY** Defendant's Motion to Compel Arbitration and Stay Proceedings.

I. <u>BACKGROUND AND PROCEDURAL HISTORY</u>

This matter arises out of an underlying civil rights action brought by Plaintiff against the City of Trenton ("Trenton"). In 2020, Plaintiff sued Trenton and several police officers from the Trenton Police Department under 42 U.S.C. § 1983 alleging, among other things, Fourth and Sixth Amendment violations. (Compl. ¶¶ 12–13.) In January 2024, Plaintiff and Trenton executed a settlement agreement ("Settlement Agreement") and proposed consent judgment ("Consent Judgment"). (*Id.* ¶ 22.) The Court relays the following background information as set forth in the opinion which approved that agreement and entered the judgment, *Edwards v. City of Trenton*, Civ. No. 20-13552, 2024 WL 896358, at *1 (D.N.J. Feb. 4, 2024).

A. **SETTLEMENT AGREEMENT**

Under the terms of the Settlement Agreement, a Consent Judgment was entered against Trenton and in favor of Plaintiff for $5,000,000. (*Id.*) It was agreed to that $500,000 would be paid by Trenton with an assignment to Plaintiff of all of Trenton's rights against Defendant, Trenton's insurance carrier, including the right to pursue recovery from Defendant for the remaining $4,500,000.[2] (*Id.*) Plaintiff then filed a Motion for Approval of Settlement and for Entry of the Consent Judgment. (*Id.*) Defendant subsequently filed a Motion to Intervene,

---

[1] Hereinafter, all references to Rules refer to the Federal Rules of Civil Procedure unless otherwise noted.
[2] The Settlement Agreement provides that the Policy's limit of liability for Law Enforcement Liability Coverage "is $3,000,000.00 each Occurrence and $6,000,000.00 Annual Aggregate of Liability, subject to a $500,000.00 Self Insured Retention." (*See* ECF No. 1-4, "Settlement Agreement.") Additionally, pursuant to the Settlement Agreement, Plaintiff "covenants to not execute upon the Consent Judgment directly against Trenton beyond $500,000. (*Id.* ¶ 3.)

contending that: (1) Defendant is an interested party under Rule 24(a)(2) because "it has a cognizable legal interest . . . that is threatened by the proposed settlement"; and (2) the existing parties do not represent its interest in the underlying litigation; both Plaintiff and Trenton opposed Defendant's motion. (*Id.*)

On February 29, 2024, the Honorable Douglas E. Arpert, U.S.M.J. (the "Magistrate Judge"), granted Plaintiff's Motion for Approval and denied Defendant's Motion to Intervene. First, the Court found that Defendant's motion was procedurally deficient, but more importantly, Defendant failed to show, at a minimum, that it had "a sufficient interest in the underlying litigation to justify intervention." (*Id*. at *2.) Ultimately, the Court determined that Defendant's economic interest in "mitigating any judgment it may have to pay if the Policy is later found to obligate [Defendant] to indemnify Trenton" is insufficient. (*Id.*) To the extent that Defendant reserved its right to deny coverage under the Policy, the Court found that Defendant's interest is contingent because it depends on whether the Policy will ultimately cover Trenton's liabilities. (*Id*. at *3.)

Having denied Defendant's Motion to Intervene, the Magistrate Judge considered Plaintiff's Motion for Approval of Settlement and for Entry of Consent Judgment under the standard set forth in *Griggs v. Bertram*, 44 A.2d 163 (N.J. 1982). (*Id*.) In accordance with *Griggs*, "where two parties agree to settlement terms that may be enforceable against an insurer," the Court found that a $5,000,000 settlement was reasonable and there was no evidence that the parties negotiated in bad baith. (*Id*. at *4.) The Court therefore granted Plaintiff's motion.

As relevant here, paragraph 4 of the Settlement Agreement states,

> Assignment of Rights. To the fullest extent possible under the law, Trenton shall assign to Edwards all of Trenton's rights and claims under the Policy in any manner related to coverage for the Litigation and satisfaction of the Consent Judgment, including but not limited to claims regarding breach of contract and bad faith for, among other things, denying coverage under the Policy, refusing to settle, and

> refusing to indemnify Trenton ("Assignment"). Edwards shall have sole discretion regarding the prosecution, litigation, and resolution of all such assigned rights and claims; however, Trenton agrees to cooperate in good faith with Edwards regarding any such prosecution and litigation of the same. This Assignment shall not be effective unless and until the Consent Judgment is entered by the Court, but upon such entry of the Consent Judgment, the Assignment shall become immediately effective without need of any further event.

(Settlement Agreement ¶ 4.)

On March 25, 2024, Plaintiff sent Defendant a demand letter, seeking, as an "assignee," indemnification from Defendant in the amount of $2,500,000 which represented the "per Occurrence" limit under the Policy. (ECF No. 10-3.). In response, Defendant returned an arbitration demand on Plaintiff, pursuant to the Policy's arbitration provision, for a determination that Plaintiff is not a valid assignee of Trenton's rights under the Policy because Defendant did not consent to the assignment. (Compl. ¶ 41.) Plaintiff then filed a declaratory judgment action, seeking a declaration from the Court that (1) the validity of the assignment under the Policy to Plaintiff is a threshold question of arbitrability for the Court to determine, and (2) the assignment of interest under the Policy to Plaintiff is in fact valid and binding. (*See generally id.*) Defendant then filed the instant Motion to Compel Arbitration and Stay Proceedings. (ECF No. 10).

B.   **INSURANCE POLICY**

Relevant here, the Policy, which had a period of insurance from March 1, 2018, to March 1, 2019, ("Policy," ECF No. 10-2), imposed a duty on Defendant to indemnify Trenton and contains an arbitration provision. The arbitration provision provides:

> ARBITRATION: In the event the **ASSURED** and Underwriters are unable to agree as to the amount recoverable by the **ASSURED** from Underwriters under the terms and conditions of this Policy, each party shall name a competent and disinterested arbitrator, and the two so chosen shall, before proceeding further, appoint a competent and disinterested umpire. The arbitrators together shall calculate the

4

> indemnity due, and failing to agree, shall submit their differences to the umpire.
>
> The award in writing, duly verified by any two, shall determine the points in question. Both parties shall pay the cost of their arbitrators and equally pro rate the cost of the umpire. The **ASSURED'S** portion of such fee does not accrue to the **ULTIMATE NET LOSS**.
>
> The decision by the arbitrators shall be binding on Underwriters and the **ASSURED**, and that judgment may be entered in any court of competent jurisdiction.

(*Id.* at 14.)  Additionally, the Policy contains anti-assignment provisions which read: (1) "[t]he ASSURED shall make no commitment to pay or settle any CLAIMS, OCCURRENCES or SUITS where Underwriters liability under this Policy is involved without the prior written agreement of Underwriters.  Underwriters shall not withhold agreement without just cause," (*id.* at 15), and (2) "[a]ssignment of interest under this Policy does not bind Underwriters unless Underwriters consent is endorsed hereon," (*id.* at 14).

Lastly, Paragraph 11 of the General Policy Conditions provides that:

> **DUTIES**: Underwriters have no duty to investigate, handle, adjust, settle or defend any **CLAIM**, **OCCURRENCE**, proceeding or **SUIT** against the **NAMED ASSURED**, any **ASSURED**, or against any other person or organization for whom the **NAMED ASSURED** is, or may be found to be, legally liable; or whom asserts or claims a right of coverage under the policy. These duties shall be the responsibility of the **NAMED ASSURED**.
>
> Underwriters' duty under the policy shall be to indemnify the **NAMED ASSURED** for **ULTIMATE NET LOSS** in excess of the applicable **SELF INSURED RETENTION**, **MAINTENANCE DEDUCTIBLE**, or any other applicable deductible or deduction; and not more than the **Specific Excess Limit of Insurance**.

(*Id.* at 17.)

With that background, the parties dispute the threshold issue of arbitrability. That is, the Complaint seeks a declaration from this Court that (1) the validity of Trenton's assignment to

5

Plaintiff is a threshold question for the Court to determine; and (2) the assignment is in fact valid and binding. (Compl. ¶ 53; Opp'n Br. at 89.) Defendant, in challenging any duty owed to plaintiff, argues that the assignment's validity should be decided by an arbitrator. (Moving Br. at 9–10, 11 (arguing that the issue over the application of the anti-assignment provision presents a jurisdictional question that should be decided by an arbitrator)). In its Motion, Defendant emphasizes that since all matters in dispute between Plaintiff and Defendant "relative to the Underlying Lawsuit arise out of rights and duties purportedly owed by Underwriters under the Policy containing the Arbitration Provision," Plaintiff as a purported assignee, is bound to arbitrate, rather than litigate, all matters at issue in the Complaint. (*Id.* at 5.) Plaintiff contends, however, that the Court should deny Defendant's Motion because (1) Defendant impermissibly attempts to compel Plaintiff to contractual arbitration while denying it has ever been bound by a contract with Plaintiff, and (2) the claims in the Complaint do not fall within the scope of the arbitration clause of the Policy. (Opp'n Br. at 11.)

## II.     LEGAL STANDARD

The Federal Arbitration Act ("FAA") "establishes a strong federal policy in favor of compelling arbitration over litigation." *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 396 (3d Cir. 2020) (quoting *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000)). Courts are authorized to compel arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. Under Section 3 of the FAA, parties may "apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 3).

Before deciding a motion to compel arbitration, a court must first decide whether to employ the motion to dismiss standard under Rule 12(b)(6) or the summary judgment standard under Rule 56. *See Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 767 (3d Cir. 2013).[3] The Rule 12(b)(6) standard applies when arbitrability is "apparent, based on the face of a complaint, and documents relied upon in the complaint." *Id.* at 764. However, a Rule 12(b)(6) standard would not be appropriate "[w]here the complaint does not establish with clarity that the parties have agreed to arbitrate, or when the party opposing arbitration has come forward with reliable evidence that it did not intend to be bound by an arbitration agreement," because "the motion cannot be resolved without consideration of evidence outside the pleadings, and, if necessary, further development of the factual record." *Noonan v. Comcast Corp*, Civ. No. 16-458, 2017 WL 4799795, at *4 (D.N.J. Oct. 24, 2017) (citations omitted). The parties do not address in their papers which standard applies. For the reasons set forth below, the Court concludes that a Rule 12(b)(6) motion to dismiss standard is appropriate.

Here, the Complaint reveals that Plaintiff, as an assignee of Trenton's rights, sought to be indemnified by Defendant under the Policy. Although the essence of the Complaint places the agreement to arbitrate at issue, "the affirmative defense of arbitrability" was apparent from the face of the complaint and the documents relied upon therein. (*See generally* Compl.) Plaintiff also attaches the Consent Judgment, Settlement Agreement, and underlying Policy to the Complaint. (*See id.*) Consequently, the Court can look to the incorporated documents to determine whether the parties have agreed to arbitrate this dispute. Accordingly, the Court will address the

---

[3] In the past, if the complaint and its supporting documents were unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then "the parties [were] entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question" under a Rule 56 summary judgment standard. *Guidotti*, 716 F.3d at 776. However, the Third Circuit in *Young v. Experian Information Solutions, Inc*, recently clarified its view, and held that "[i]n the absence of a factual dispute, there is nothing to discover and thus no need to delay a decision on the motion to compel." 119 F.4th 314, 320 (3d Cir. 2024).

7

instant Motion under a Rule 12(b)(6) standard. *See Singh v. Uber Technologies Inc.*, 939 F.3d 210, 218 (3d Cir. 2019) ("The centerpiece of [*Guidotti*'s] framework is whether the existence of a valid agreement to arbitrate is apparent from the face of the complaint or incorporated documents"); *Sorathia v. Fidato Partners*, Civ. No. 19-4253, 2020 WL 5121473, at *3 (E.D. Pa. Aug. 31, 2020) (applying the Rule 12(b)(6) standard where defendants attached agreement containing arbitration clause to the motion to compel arbitration, plaintiff did not dispute receiving it, and "the crux of the dispute between the parties center[ed] on the scope and enforceability of that arbitration agreement"); *Doyle v. Ad Astra Recovery Services, Inc.*, Civ. No. 17-5233, 2018 WL 1169121, at *2 (D.N.J. Mar. 6, 2018) (determining that the motion to dismiss standard applied because, even though the plaintiff did not attach the agreement that contained the arbitration provision to the complaint, the plaintiff's claims derived from the agreement and the plaintiff did not argue that discovery was required to interpret the agreement).

## III.   DISCUSSION

The FAA permits the Court to compel arbitration only once it has determined that (1) "there is a valid agreement to arbitrate between the parties and, if so," (2) "the merits-based dispute in question falls within the scope of that valid agreement." *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 142 (3d Cir. 2022) (quoting *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014)). However, "when an arbitration provision, by 'clear and unmistakable evidence,' contains a valid delegation clause, the court's inquiry is limited to the first step: determining whether a valid agreement to arbitrate exists." *Smith v. Experian Info. Sols., Inc.*, Civ. No. 22-6471, 2023 WL 6057377, at *3 (D.N.J. Sept. 14, 2023); *see also Coulter v. Experian Info Sols, Inc.*, Civ. No. 20-1814, 2021 WL 735726, at *4 (E.D. Pa. Feb. 25, 2021). It is well settled that in these situations, a court must refer issues of scope to the arbitrator "even if the court thinks that the argument that

the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019); *Smith*, 2023 WL 6057377, at *3 (citing *Henry Schein, Inc.*, 586 U.S. at 68).

### A.   Whether there is a valid agreement between Trenton and Defendant

Applying these standards, the Court must now determine, first, whether a valid arbitration agreement exists. Notably, all parties acknowledge that the Policy, an insurance contract between Defendant and Trenton, contains an arbitration provision and that Plaintiff is an assignee of Trenton's rights under the Policy. Defendant argues that, because the underlying Policy is a valid insurance contract between itself and Trenton, the arbitration provision within the contract is therefore valid and enforceable. (Moving Br. at 6–7.) Plaintiff contends that the issue raised in his Complaint is of the validity of the assignment to Plaintiff. (Opp'n Br. at 16.) Defendant responds that he does not dispute that the Settlement Agreement approved by the Magistrate Judge included an assignment from Trenton to Plaintiff. Instead, Defendant contends that the validity of the assignment does not challenge the formation of the Policy and, even if it did, that is an issue for the arbitrator to decide. (Moving Br. at 13.)

Although Defendant strenuously challenges the assignment's validity on the grounds that it did not consent to the assignment, there is no dispute that the underlying insurance Policy itself is valid. Accordingly, the Court finds that there exists a valid arbitration agreement between Trenton and Defendant.

Defendant would have the Court end the inquiry here and proceed to find that the dispute, i.e., the assignment's validity and whether an invalid assignment precludes coverage, falls within the arbitration provision's scope and must be resolved by an arbitrator. Plaintiff, however, asks the Court to pause and consider the implications of Defendant's position. That is, Defendant argues that it is essentially not bound to cover the judgment as entered by the Court because it

9

deems the assignment invalid, but yet somehow relies on the very assignment to convince the Court that it must compel arbitration. Plaintiff argues that the validity of the assignment is a question of "mutual assent" that is an issue for the Court to determine in the first instance. (Opp'n Br. at 15–16) ("the Court cannot be satisfied that the making of the agreement for arbitration . . . is not in issue.").

The Court agrees with Plaintiff and concludes that to determine whether there is a valid arbitration agreement between Plaintiff and Defendant, the validity of the underlying assignment must be reached.[4] Importantly, the arbitration provision at issue in the Policy is limited in scope and does not contain a general delegation clause, or any language delegating the enforceability of the assignment provision to an arbitrator. *See Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 188 (3d Cir. 2010) ("In sum, the [plaintiffs] have failed to adduce clear and unmistakable evidence that the parties intended to arbitrate questions concerning the validity of the arbitration agreement, which is fatal to their argument that the District Court should have referred such a question of arbitrability to the arbitrator.").

### B.  Whether the assignment from Trenton to Plaintiff is valid

The anti-assignment clauses in the Policy state that "Assignment of interest under this Policy does not bind Underwriters unless Underwriters consent is endorsed hereon." (Policy at 14.) Additionally, the policy states that "[t]his Certificate shall not be assigned either in whole or

---

[4] This Court is aware of Third Circuit precedent that has opined on the correctness of considering the validity of an assignment when determining whether a valid arbitration agreement exists. In *Zirpoli*, the Third Circuit held that deciding the validity of an assignment under step one would be to prematurely determine the merits of a dispute. 48 F.4th at 143. There, the Third Circuit considered a motion to compel arbitration in the context of an arbitration agreement that delegated questions of arbitrability to an arbitrator. *Id.* It determined that to answer whether an assignment was valid "hides the fact that prematurely answering this question makes asking the 'who decides' question pointless." *Id.* Distinguishing the present case from *Zirpoli*, there is no delegation provision contained in the arbitration clause at issue, and Defendant does not argue, nor can he, that the parties agreed to arbitrate issues of validity or enforceability. Therefore, the parties here did not "clearly and unmistakably" intend to delegate the issue of arbitrability or enforceability of the contract to an arbitrator, as was the case in *Zirpoli*. This Court therefore does not risk rendering the "who decides" question pointless because that question is not raised by the facts of this case.

in part without the written consent of the Correspondent endorsed hereon," (*id.* at 2), and that "[t]he **ASSURED** shall make no commitment to pay or settle any **CLAIMS, OCCURRENCES** or **SUITS** where Underwriters liability under this Policy is involved without the prior written agreement of Underwriters.  Underwriters shall not withhold agreement without just cause." (*Id.* at 15.)

Defendant argues that the language in the Policy is clear and that because it did not consent to Trenton's assignment of rights to Plaintiff or the settlement, the assignment was invalid. (Moving Br. at 1.)  Plaintiff argues that the assignment is valid despite Defendant's lack of consent. (Opp'n Br. at 8–9.)  The Court will therefore determine whether the anti-assignment provision nullifies Trenton's assignment to Plaintiff.

The New Jersey Supreme Court has held that an anti-assignment clause in an insurance policy cannot restrict a policyholder's ability to assign a post-loss claim.  *Givaudan Fragrances Corp. v. Aetna Cas. & Sur. Co.*, 151 A.3d 576, 585 (N.J. 2017).  The New Jersey Supreme Court noted that "[t]he majority rule in the United States is that a provision that prohibits the assignment of an insurance policy, or that requires the insurer's consent to such an assignment, is void as applied to an assignment made after a loss covered by the policy has occurred." *Id.* at 586 (citing 3 *Couch on Insurance* § 35:8 (3d ed. 2016)).  There is no doubt that this rule "is an exception to the general principle that parties to a contract may freely limit assignment of their contractual rights." *Id.*

With that background, this Court concludes that the assignment from Trenton to Plaintiff, although made without Defendant's consent, was a post-loss assignment of a claim, and therefore, the anti-assignment clause is not a barrier to Plaintiff.  Under an occurrence policy, like the one here, "the relevant event giving rise to coverage is the loss event, not the entry of a judgment fixing

11

the amount of damage for that loss." *Id.* at 591. Here, the relevant event giving rise to coverage is the civil rights violations suffered by Plaintiff which occurred prior to the assignment but during the coverage period between March 1, 2018 and March 1, 2019. The risk of having to provide coverage that was contractually undertaken by the insurer occurred prior to the assignment, thereby making this a post-loss assignment of a claim.

Accordingly, the Court finds that the anti-assignment provision does not nullify the assignment of rights from Trenton to Plaintiff. Because the Court finds that there is a valid assignment from Trenton to Plaintiff, Plaintiff stands in for Trenton and is privy to the underlying Policy. In other words, there is a valid, binding agreement between Plaintiff and Defendant which includes Defendant's duty to indemnify Plaintiff. Pursuant to the arbitration provision, the Court takes no position as to the amount Plaintiff may be owed under the Policy as that is left to mutually agreed upon arbitrators to decide. The Court simply holds today that this Court can address the validity and application of the anti-assignment provision, and that the assignment from Trenton to Plaintiff is valid.

Given the Court's conclusions, it will DENY Defendant's Motion to Compel Arbitration and Stay Proceedings.

## IV.    CONCLUSION

For the reasons stated above, the Court will **DENY** Defendant's Motion to Compel Arbitration and Stay Proceedings. An appropriate Order will follow.


Date: January 29, 2025

                                                     s/ Zahid N. Quraishi  
                                                     **ZAHID N. QURAISHI**  
                                                     **UNITED STATES DISTRICT JUDGE**